# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | **CASE NO. 4:26-cv-06544** |
| **EVEREST NATIONAL INSURANCE** | § | |
| **COMPANY** | § | |
| *Defendant.* | § | |

**INDEX OF DOCUMENTS FILED IN STATE COURT ACTION**

| Doc No. | Date | Description |
|---|---|---|
| 1 | 6/22/26 | Plaintiff's Original Petition |
| 2 | 6/29/26 | Plaintiff's First Amended Petition |
| 3 | 6/29/26 | Executed Citation |
| 4 | 7/15/26 | Service Return |
| 5 | 8/10/26 | Defendant's Original Answer and Affirmative Defenses |
| 6 | 8/11/26 | Docket Sheet |

# EXHIBIT "1"

6/19/2026 3:21 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 116379014
By: Talitha McCarty
Filed: 6/22/2026 12:00 AM

CAUSE NO. _____

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **OF HARRIS COUNTY, TEXAS** |
| | § | |
| **EVEREST NATIONAL INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| **Defendant.** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiff Thomas Winfield ("Plaintiff") files this original petition complaining of Defendant Everest National Insurance Company ("Everest") and would respectfully show as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Based upon this Petition, this case should be controlled by a discovery control plan Level 2 pursuant to the Texas Rules of Civil Procedure, Rule 190.3. This is not an expedited action; Plaintiffs have suffered and sustained pecuniary losses of more than $250,000.

### II.    PARTIES

2.    Plaintiff is an individual residing in Nashville, Tennessee. Plaintiff is the rightful assignee of a claim held by Moises Morales III and Morales Law.

3.    Defendant Everest National Insurance Company is located at 100 Everest Way, Warren, New Jersey 07059. Defendant may be served at its registered agent's address of: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Certified Document Number: 127306395 - Page 1 of 9

1

### III.     JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition arose, in whole or in part, in Texas and the amount in controversy exceeds the minimum jurisdictional limits of this Court.

5.      This Court has personal jurisdiction over Defendant because the acts and/or omissions complained of herein occurred in Texas, each Defendant does business in Texas and/or committed a tort, in whole or in part in Texas.

6.      Venue is properly laid in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code Section 15.002 because that is the county where all or a substantial part of the events or omissions giving rise to the claim occurred or where the Defendants have their principal office or residence.

### IV.     INTRODUCTION AND FACTUAL BACKGROUND

7.      Plaintiff Thomas Winfield engaged Morales Law to prosecute claims against John Babcock related to injuries resulting from a motor vehicle accident that occurred on September 26, 2023. Morales represented Plaintiff in the case styled Cause No. 2023-71174; *Thomas Winfield vs Ron Hoover Marine Center and John Babcock*; In the 61st Judicial District Court of Harris County, Texas.

8.       On behalf of Winfield, Morales filed a lawsuit against Ron Hoover Marine Center and John Babcock for personal injuries.[1] Plaintiff later retained Gallo Uwalaka Personal Injury Attorneys, PLLC ("Gallo Uwalaka") to represent him for the same accident.

---

[1] *See Exhibit A.* (Petition filed by Morales on October 12, 2023 at 6:16 pm).

2

Certified Document Number: 127306395 - Page 2 of 9

9. On November 20, 2023, Mr. Morales filed a notice of non-suit **with prejudice** which became effective as soon as it was filed.[2] Thus, unbeknownst to Plaintiff's new firm, Mr. Morales dismissed all of Plaintiff's claims permanently. According the Court's docket, the Order was effective November 20, 2023. This mistake would have been correctable but-for subsequent acts and omissions of negligence by Morales. The court still had plenary power over the non-suit for 30 days. Morales had 30 days to either appeal or ask for a modification within the Court's plenary powers. Morales had weeks to learn of the mistake and review what had been filed after the filing was accepted by the clerk.

10. When Morales had learned of his mistakes, he filed a claim with Everest. By filing an insurance claim and admitting that mistakes were made, Morales was trying to do the right thing to ensure the loss to the client was covered. Attorneys make mistakes too and that is exactly what malpractice coverage is for.

11. However, Everest refuses to cover the incident because according to them, the "Policy Period" begins November 29, 2023, which is nine days after the notice of non-suit.

12. Plaintiff does not accept Everest's position regarding the Policy Period, but even if the dates are correct, many omissions after that date are independent acts or omissions which breach the duty of care an attorney owes a client.

13. Morales should have reviewed the filings in the coming weeks after the November 20 non-suit to determine if an error was made or if an appeal of any order was necessary. The deadline to make these reviews and decisions would be well after November 29, in late December of that same year.

---

[2] *See Exhibit B*. (Non-Suit with Prejudice).

Certified Document Number: 127306395 - Page 3 of 9

14.     By late December, Morales should have determined that relief from the judgment was necessary.

15.     Morales should have appealed within 30 days of the order granting non-suit.

16.     Morales should have filed motion for new trial or a motion to alter or amend the judgment granting the non-suit within the requisite 30-day period.

17.     All of these omissions were set in stone in late December of 2023, well after November 29, 2023. All these acts by themselves constitute a breach of the duty an attorney owes a client.

18.     Morales eventually filed a Motion to Reconsider Dismissal of Cause No. 2023-711174.[3] The Motion was passed by the Court for lack of plenary power.[4] In a final attempt to reinstate the case, Morales also filed this Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order[5], however said motion was also denied.[6] These acts were each negligent because they were untimely.

19.     Consequently, a new petition that was filed on behalf of Winfield by the Gallo Uwalaka Personal Injury Firm was dismissed and Plaintiff was unable to prosecute his claims due to Morales' mistakes. A Stower's Demand was sent out to the Defendant's in the underlying case, however, the insurance rejected the demand stating the claims had been dismissed with prejudice. The Stower's Demand sought a settlement for policy limits, which in the case was $1,000,000.00. However, because the claims were dismissed with prejudice, Plaintiff's new attorneys were not able to negotiate and obtain a settlement of any kind for Plaintiff.

---

[3] *See Exhibit C*. (Morales Motion to Reconsider Dismissal).
[4] *See Exhibit D*. (Order Denying Motion to Reconsider).
[5] *See Exhibit E* (Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc).
[6] *See Exhibit F (*Order Denying Motion to Correct).

4

Certified Document Number: 127306395 - Page 4 of 9

20.     Morales admits his mistake and error.  However, when he approached his insurance company Everist, Everist denied coverage entirely for the error / omission of Morales.

21.     Therefore, in order to make Plaintiff whole, Morales entered into a written assignment of his contractual claim against Everist to Plaintiff.  **Exhibit G**.

22.     Everist claims that the entirety of the claims must be denied because some potential errors or omissions occurred before the alleged "Policy Period."  However, this is incorrect because each error and omission is a separate cause of action and insurable event.  Each act was a different act or omission that occurred in a different context on a different date.  The fact that they all happened to the same victim does not mean they are a single act.  Each by itself is grounds for liability.  All of them are admitted by Morales and none are disputed by Morales.

## V.    CAUSE OF ACTIONS

23.     Therefore, it has become necessary to bring this suit to collect a legal and equitable debt of money damages owing to Plaintiff due to the Defendants' failure to insure, which constitutes breach of contract and bad faith.

### A.  **Breach of Contract**

24.     Plaintiff re-alleges the allegations set forth in the preceding paragraphs.

25.     As stated above, Plaintiff Thomas Winfield engaged Morales and Morales Law to prosecute claims related to injuries resulting from a motor vehicle accident that occurred on September 26, 2023. Thus, Plaintiff and Defendants established an attorney-client relationship.

26.     Morales does not dispute that he made a professional mistake amounting to malpractice, nor does he dispute that some errors were committed after the date insurance became effective.

5

27. Morales admits that he failed to timely file a motion to correct a mistaken filing. Morales admits that he failed to review filings to determine if any corrections were necessary. Morales admits that these mistakes breached the standard of care owed to the client, and that a malpractice claim should property be submitted to the insurer in order to protect the client.

28. Morales did in fact submit a claim to the insurer under a valid and binding contract attached as **Exhibit H**.

### B.  Bad Faith

29. Plaintiff re-alleges the allegations set forth in the preceding paragraphs.

30. Texas recognizes bad faith in both the common law and by statute under Chapter 541 of the Texas Insurance Code.

31. Because there is no reason to dispute the admitted acts or omissions occurring during the coverage period and giving rise to a claim for liability, the denial by Defendant was made in bad faith.

32. As such, the denial was not part of good faith and fair dealing. The denial placed the interests of the insurer over the insured.

33. The failure to consider undisputed and undenied acts or omissions *after* an insuring period is a refusal to investigate and refusal to provide a reasonable explanation. Instead, it is an attempt to deceptively interpret coverage language to escape coverage in what should obviously be a covered event. This is the entire reason lawyers have malpractice insurance.

34. Also, malpractice insurance payments are in the best interest of the public and the marketplace as well. Events of loss based on mistake and malpractice concentrate risk on the unfortunate victims, whereas when claims are paid out the risk of professional services is shared with the premium-paying public.

Certified Document Number: 127306395 - Page 6 of 9

## VI.    ATTORNEY FEES

35.    Plaintiff made timely demand upon Defendants.   **Exhibit I**. However, to date, Defendants have failed to comply with Plaintiff's demand. As such, Plaintiff has been forced to retain the services of Labor Advocate Law Firm to bring suit against Defendants and to obtain all other relief available under appliable law. Accordingly, pursuant to Chapters 37 and 38 of the Texas Civil Practice and Remedies Code and other applicable law, Plaintiff is therefore entitled to recover its reasonable and necessary attorney's fees incurred.

## VII.    DAMAGES

36.    Regarding the causes of action and conduct alleged above, Plaintiff has sustained actual, consequential or special damages of approximately $1,000.000.00 that were proximately caused by Defendants' conduct and that are within the jurisdictional limit of this Court. These damages consist of policy limits available in the underlying Defendants' insurance policy. Further, Plaintiff had incurred over $57,000.00 in medical treatment, he also suffered emotional distress, pain and suffering, disfigurement from the burns caused by the accident, and loss of enjoyment of life. But for Defendant Morales and Morales Law's conduct, Plaintiff would have been able to obtain a favorable settlement or verdict. However, due to Defendants' conduct Plaintiff's claims were permanently dismissed, and Plaintiff was unable to recover any kind of settlement for his injuries.

## VIII.    DISCOVERY AND TOLLING RULES/AGREEMENT

37.    To the extent necessary, Plaintiff affirmatively plead the discovery rule and the *Hughes* tolling rule to any defense of limitations asserted by Defendants. Under the *Hughes* tolling rule, the statute of limitations on the malpractice claim is tolled until all appeals on the underlying claim are exhausted or the litigation is finally concluded.

Certified Document Number: 127306395 - Page 7 of 9

## IX.    JURY DEMAND

38.    Plaintiff desires to have a jury decide this case and makes this formal request pursuant to Texas Rule of Civil Procedure 216. This request is filed more than thirty days before this case has been scheduled for trial and all fees have been paid.

## X.    NOTICE OF INTENT TO USE PRODUCED DOCUMENTS

39.    Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, each party is hereby given notice of Plaintiffs' intent to use any and all documents produced by any and all parties at any pretrial hearing, deposition, proceeding, the trial of this matter, or any combination thereof.

## PRAYER

WHEREFORE, Plaintiff prays that after trial herein, that judgment be entered against Defendants as prayed for, that costs of court be taxed against Defendants, that Plaintiff be given prejudgment as well as post judgment interest, and for such other and further relief, at law and in equity to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

**LABOR ADVOCATE LAW FIRM**

/s/       *Jack J. Nichols*
By: Jack J. Nichols
**Lead Counsel: Cynthia Castanon**
Texas State Bar No. 24093492
Jack J. Nichols
Texas State Bar No. 24123945
4900 Fournace, Suite 500-C30
Bellaire, Texas 77401
Telephone: 713-952-2500
Electronic Service:
eservice@laboradvocatelaw.com

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 127306395 - Page 8 of 9

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Eservice LALF on behalf of Cynthia Castanon
Bar No. 24093492
eservice@laboradvocatelaw.com
Envelope ID: 116379014
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 6/22/2026 10:44 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| eservice LALF | | eservice@laboradvocatelaw.com | 6/19/2026 3:21:03 PM | SENT |



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   August 10, 2026

Certified Document Number:        127306395 Total Pages:  9

*Marilyn Burgess*

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

10/12/2023 6:16 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 80551653
By: Akpobari Pobari
Filed: 10/12/2023 6:16 PM

# EXHIBIT A

2023-71054 / Court: 157

## CAUSE NO. _____

| | | |
|---|---|---|
| THOMAS WINFIELD | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| vs. | § | ____ JUDICIAL DISTRICT |
| | § | |
| RON HOOVER A.K.A. RON | § | |
| HOOVER MARINE CENTERS | § | HARRIS COUNTY, TEXAS |
| AND | | |
| JOHN BABCOCK | | |
| *Defendants* | | |

### PLAINTIFF'S ORIGINAL PETITION

Plaintiff, Thomas Winfield, files this Original Petition against Defendants, Ron Hoover

A.K.A Ron Hoover Marine Centers and John Babcock and shows the Court as follows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

1.Plaintiff intends to conduct discovery under TRCP 169 and 190.2 because the suit

involves monetary relief totaling $1,000,000.00, including court costs, prejudgment interest and

attorney's fees.

### II.
### PARTIES AND SERVICE

Plaintiff, Thomas Winfield, is an Individual who resides in Harris County, Texas.

Ron Hoover A.K.A. Ron Hoover Marine Centers, is a limited liability company with its

principal office and corporate headquarters located in Aransas County, Texas. Defendants may be

served with process by serving its registered agent for service, Jennifer Tillinghast, at 1510 W

Market St., Rockport, Texas 78387 or wherever they may be found and Plaintiff request a citation

be issued for this Defendant at this time.

Defendant, John Babcock (hereinafter, "Defendant") is an individual whose last known address 10755 Ocelot Lane; Houston, Texas 77034. Defendant may be served at this address or wherever he may be found. Plaintiff request a citation be issued for this Defendant at this time.

## III.
## JURISDICTION AND VENUE

3.1     Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3) because Defendant, John Babcock and Plaintiff, Thomas Winfield maintain their residence in Harris County.

3.2     Pursuant to Texas Rule of Civil Procedure 47, Plaintiff specifies that he is seeking monetary relief totaling $1,000,000.00, including court costs, prejudgment interest and attorney's fees.   Further, the amounts of the Plaintiff's damages are in excess of the jurisdictional minimums of this Court.  Many elements of damage, including pain, suffering and mental anguish in the past and future, past and future physical impairment, and future lost earning capacity, cannot be determined with mathematical precision.  Furthermore, the determination of many of these elements is peculiarly within the province of the jury. Plaintiff does not at this time seek any certain amounts of damages for any of these particular elements of damage but would instead rely upon the collective wisdom of the jury to determine an amount that would fairly and reasonably compensate her.  However, Plaintiff

2

reserves the right to either file a trial amendment or an amended pleading on this issue should subsequent evidence show this figure to be too high or too low.

3.3     The Court has jurisdiction over the controversy because the suit arises under the laws of the State of Texas, and because Plaintiff suffered damages within the jurisdictional limits of the Court.

**IV.**
**FACTS**

4.1     On or about September 26, 2023, Plaintiff was traveling Northbound on lane number one the block of the Gulf Freeway Service Road when Defendant, John Babcock in his work truck for Ron Hoover A.K.A. Ron Hoover Marine Centers struck Plaintiff's vehicle causing bodily injuries. Furthermore, Defendant, John Babcock was issued a citation; determined at fault for failure to yield right of way.

**V.**
**NEGLIGENCE CLAIMS AGAINST DEFENDANT**

Defendants had a duty to exercise a degree of care that reasonably careful person would use to avoid harm to others under circumstances similar to those described herein.

Plaintiff's injuries were proximately caused by Defendants' negligent, careless and reckless disregard of said duty.

3

The negligent, careless and reckless disregard of Defendants consisted of, but is not limited to, the following acts and omissions:

a.  In that Defendant, John Babcock failed to keep such distance away from Plaintiff's motor vehicle as a person using ordinary prudent care would have done;

b.  In that Defendant, John Babcock failed to keep a proper lookout for Plaintiff's safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances;

c.  In that Defendant, John Babcock failed to turn his motor vehicle in an effort to avoid the collision complained of;

d.  In that Defendant, John Babcock failed to stop his motor vehicle in an effort to avoid the collision complained of;

e.  In that Defendant, John Babcock was operating his motor vehicle at a rate of speed which was greater than that would have been operated by a person of ordinary prudence under the same or similar circumstances;

f.  In that Defendant, John Babcock failed to apply his brakes to his motor vehicle in a timely and prudent manner in order to avoid the collision in question; and

g.  In that Defendant, John Babcock failed to operate a motor vehicle as a person using ordinary prudent care would have done.

h.  In that Defendant, John Babcock failed to yield right of way striking Plaintiff's vehicle.

4

Each of these acts and omissions, singularly or in combination with others, constituted negligence and negligence per se.  Such acts and omissions proximately caused the occurrence made the basis of this suit and the resulting serious bodily injuries and permanent damages suffered by Plaintiff.

## VI.

## DAMAGES

As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff was caused to suffer serious bodily injuries, and to incur the following damages for which Plaintiff seeks monetary relief:

A. Reasonable medical care and expenses in the past;

B. Physical pain and suffering in the past;

C. Physical pain and suffering in the future;

D. Physical impairment in the past;

E. Physical impairment which will, in all reasonable probability, be incurred in the future;

F. Mental anguish in the past; and

G. Mental anguish in the future.

5

## VII.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII.

## REQUIRED DISCLOSURE

Pursuant to Texas Rule of Civil Procedure 194(a), each Defendants are required to disclose, within thirty (30) days of the filing of the first answer, the information or material described in Rule 194.2(b)1-12.  Any Defendant that is served or otherwise joined after the filing of the first answer must make their initial disclosures within thirty (30) days after being served or joined.

## IX.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff have and recover:

(a)  Actual and statutory damages;

(b)  Pre-judgment interest at the highest legal rate;

6

Unofficial Copy Office of Marilyn Burgess District Clerk

(c) Taxable costs of Court, to include Plaintiff's reasonable and necessary attorney's fees;

(d) Post-judgment interest at the highest legal rate; and

(e) Such other and further relief to which Plaintiff may be justly entitled, at law or in equity.

Respectfully submitted,

MORALES LAW FIRM

/S/ MOISES MORALES
BY: _____
Moises Morales III
Texas State Bar Number: 24098137
Email: morses@moraleslawfirm.net
Email: litigation@moisesmoraleslaw.com
4201 Main Street, Suite 200-247
Houston, Texas 77002
Tel: 832-494-5282
Fax: 832-202-2747
ATTORNEYS FOR PLAINTIFF

7

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 80551653
Filing Code Description: Petition
Filing Description: Petition ($350.00)
Status as of 10/13/2023 7:40 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 10/12/2023 6:16:15 PM | SENT |

**EXHIBIT B**

11/20/2023 11:58 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81813014
By: Tiffany Jefferson
Filed: 11/20/2023 11:58 AM

## 2026-41505 / Court: 157

### CAUSE NO. 2023-71174

| | | |
|---|---|---|
| **THOMAS WINFIELD**<br>*Plaintiff* | § § § | **IN THE DISTRICT COURT OF** |
| **VS.** | § § § | **HARRIS COUNTY, TEXAS** |
| **RON HOOVER A.K.A RON HOOVER MARINE CENTERS AND JOHN BABCOCK**<br>*Defendant* | § § § | **61ST JUDICIAL DISTRICT** |

### PLAINTIFF'S NOTICE OF NON-SUIT

COMES NOW, Thomas Winfield, Plaintiff in the above-styled matter, and hereby gives notice to the Court that, pursuant to TEX. R. CIV. P. 162, Plaintiff hereby non-suits all claims and causes of action against Defendants, Ron Hoover A.K.A. Ron Hoover Marine Centers and John Babcock, with prejudice to refiling of the same, effective immediately upon the filing of this Notice. Each party shall bear their own costs of court.

No Order is required for a Non-Suit to be effective, pursuant to *Epps v. Fowler,* 351 S.W.3d 862, 868 (Tex. 2011). This filing hereby ends the above claims, without need of a signed Order.

Respectfully submitted,

**MORALES LAW FIRM**

By:    */s/ Moises Morales*
Moises Morales III
State Bar No. 24098137
4201 Main Street, Suite 200-247
Houston, Texas 77002
Tel:    (832) 245-5597
Fax:    (832) 202-2747
ECF:  litigation@moisesmoraleslaw.com

**ATTORNEYS FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on the 17th day of November, 2023.

*VIA E-service:*
Wesson H. Tribble
State Bar No. 20213960
wtribble@tribblelawfirm.com
Christopher M. Ervin
State Bar No. 24040872 cervin@tribblelawfirm.com
6371 Richmond Ave
Houston, Texas 77057
Telephone: (713) 622-0444
Facsimile: (713) 622-0555
**ATTORNEY FOR DEFENDANTS, RON HOOVER MARINE, INC. A.K.A. RON HOOVER RV AND MARINE CENTERS and JOHN BABCOCK**


*/s/ Moises Morales*
Moises Morales

Unofficial Copy Office of Marilyn Burgess District Clerk

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 81813014
Filing Code Description: Notice
Filing Description: PLAINTIFF&#8217;S NOTICE OF NON-SUIT
Status as of 11/20/2023 12:11 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 11/20/2023 11:58:09 AM | SENT |
| Moises Morales | | litigation@moisesmoraleslaw.com | 11/20/2023 11:58:09 AM | SENT |
| Moises MoralesIII | | moises@moisesmoraleslaw.com | 11/20/2023 11:58:09 AM | SENT |
| Moises Morales | | moises@moraleslawfirm.net | 11/20/2023 11:58:09 AM | SENT |
| Christopher Ervin | | cervin@tribblelawfirm.com | 11/20/2023 11:58:09 AM | SENT |
| Sana Mehmood | | smehmood@tribblelawfirm.com | 11/20/2023 11:58:09 AM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 11/20/2023 11:58:09 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

8/23/2024 5:08 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 91283433
By: Tiffany Jefferson
Filed: 8/23/2024 5:08 PM

## 2026-41505 / Court: 157

### CAUSE NO. 2023-711174

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **61ST JUDICIAL DISTRICT** |
| | § | |
| **RON HOOVER A.K.A RON** | § | |
| **HOOVER MARINE CENTERS AND** | § | **HARRIS COUNTY, TEXAS** |
| **JOHN BABCOCK** | | |
| *Defendants* | | |

### MOTION TO RECONSIDER DISMISSAL

**TO THE HONORABEL JUDGE OF THIS COURT:**

Now Comes, Attorney, Moises Morales, III, hereby submits this Motion to Reconsider the Court's order dated November 20, 2023, which granted the Notice of Non-Suit with Prejudice. This Motion is filed to request that the Court reconsider and amend the order to reflect a Notice to Non-Suit without Prejudice.

### I. INTRODUCTION

On November 20, 2023, Attorney Moises Morales inadvertently filed a Notice of Non-Suit "with prejudice of filing the same." This was never the intention. Mr. Morales intended to file the Notice of Nonsuit "without" prejudice of filing the same. This was a clearly a clerical error as the Collision made basis of the suit had only occurred less than 2 months prior and the Plaintiff was probably still treating for his injuries at that time. This Motion is filed to correct that mistake and we respectfully request that the Court reconsider its dismissal based on the grounds outlined below.

### II. GROUNDS FOR RECONSIDERATION

1. **Clerical Error**

The filing of a Motion to Non-Suit with Prejudice was a clerical error. My intention

Unofficial Copy Office of Marilyn Burgess District Clerk

was to request a Non-suit without Prejudice, which would allow for the possibility of refiling the case in the future. The mistaken request for dismissal with prejudice was not aligned with my litigation strategy and was submitted due to failure to review the document prior to submission and clerical error.

## 2. Interest of Justice

Granting a non-suit without prejudice is consistent with the interests of justice. Allowing the dismissal without prejudice will not preclude the Plaintiff from pursuing the case in the future should new evidence or circumstances arise. This aligns with the principle of fairness and the appropriate management of legal claims. Fairness and the interest of justice has always been at the heart of the judiciary.

## 3. Absence of Prejudice to the Defendant

The Defendant will not suffer undue prejudice if the Court grants this motion to amend the previous order. A dismissal without prejudice does not affect the Defendant's substantive rights and allows for an equitable resolution of the case if the Plaintiff decides to refile.

## III. LEGAL STANDARD FOR RECONSIDERATION

Under Texas Rule of Civil Procedure 316, the Court has authority to correct clerical errors in their judgments or orders and does not impose a time limit for making such corrections. The Court retains jurisdiction to amend clerical errors in the original order at any time.

Under Texas Rule of Civil Procedure 329b, the court has the authority to modify, correct, or reform its judgment upon motion if a clerical error or inadvertent mistake is identified. In this case, reconsideration is warranted due to the clerical error in the initial filing. This rule also implicitly supports the Court has jurisdiction to amend the order.

2

## IV. REQUEST FOR RELIEF

Based on the grounds outlined above, I respectfully request that the Court:

1.  Reconsider and vacate the order dated November 20, 2023, granting the Motion to Non-Suit With Prejudice.

2.  Amend the order to reflect a Motion to Non-Suit Without Prejudice.

3.  Provide any further relief that the Court deems just and appropriate.

## IV. CONCLUSION

I respectfully submit that correcting this clerical error and granting the Motion to Non-Suit Without Prejudice will serve the interests of justice and ensure fair handling of the case. I request that the Court grant the Amended Order on the day of Notice of Submission on September 2, 2024, at 8:00 a.m. for this Motion and allow an opportunity to present further arguments if necessary.

Respectfully submitted,

**MOISES MORALES LAW**

By:     /s/ Moises Morales
        Moises Morales III
        State Bar No. 24098137
        4201 Main Street, Ste. 200-247
        Houston, Texas 77002
        Tel:     (832) 245-5597
        Fax:     (832) 202-2747
        ECF:  litigation@moisesmoraleslaw.com

3

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in compliance with Rules 21 of the Texas Rules of Civil Procedure on the 23rd day of August, 2024.

/s/ *Moises Morales*
Moises Morales

4

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 91283433
Filing Code Description: Motion (No Fee)
Filing Description: MOTION TO RECONSIDER DISMISSAL
Status as of 8/26/2024 8:13 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 8/23/2024 5:08:36 PM | SENT |
| Moises Morales | | litigation@moisesmoraleslaw.com | 8/23/2024 5:08:36 PM | SENT |
| Moises MoralesIII | | moises@moisesmoraleslaw.com | 8/23/2024 5:08:36 PM | SENT |
| Moises Morales | | moises@moraleslawfirm.net | 8/23/2024 5:08:36 PM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |
| Trey Hardin | | mhardin@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |
| Tiffany Peters | | tpeters@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

9/18/2024 10:01 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92155376
By: Tiffany Jefferson
Filed: 9/18/2024 10:01 AM

## 2026-41505 / Court: 157

**CAUSE NO.  2023-71174**

Pgs-1

ENPTY

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **HARRIS  COUNTY, T E X A S** |
| | § | |
| **RON HOOVER A.K.A RON** | § | |
| **HOOVER MARINE CENTERS** | § | **61st  JUDICIAL  DISTRICT** |
| **AND JOHN BABCOCK** | | |

### <u>ORDER DENYING MOISES MORALES' MOTION TO CORRECT<br>A CLERICAL OMISSION/MISTAKE NUNC PRO TUNC IN A PREVIOUS ORDER</u>

On this day, came on to be considered the above and foregoing, Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order, and Defendant's response, filed herein. Having considered the foregoing, the arguments of counsel, and the applicable law, this Honorable Court is of the opinion that Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order is DENIED.

SIGNED this _____ day of _____, 2024.

Signed:
9/24/2024

_____
JUDGE PRESIDING

Unofficial Copy Office of Marilyn Burgess District Clerk

9/6/2024 10:00 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 91717196
By: Kathy Givens
Filed: 9/6/2024 10:00 AM

# EXHIBIT E

## 2026-41505 / Court: 157

### CAUSE NO. 2023 - 711174

| | | |
|---|---|---|
| **THOMAS WINFIELD** <br> *Plaintiff* | § <br> § <br> § | **IN THE DISTRICT COURT** |
| **vs.** | § <br> § <br> § | **61ST JUDICIAL DISTRICT** |
| **RON HOOVER A.K.A RON** <br> **HOOVER MARINE CENTERS AND** <br> **JOHN BABCOCK** <br> *Defendants* | § <br> § | **HARRIS COUNTY, TEXAS** |

### MOTION TO CORRECT A CLERICAL OMISSION/MISTAKE *NUNC PRO TUNC* IN A PREVIOUS ORDER

Comes now Moises Morales III, in the above-captioned cause, and respectfully moves that this Court grant an order authorizing the Clerk to enter on the minutes of this Court an Order *nunc pro tunc,* and as grounds for this Motion will show the following:

1.      On November 20, 2023, Attorney Moises Morales inadvertently filed a Notice of Non-Suit "with prejudice of filing the same." This was never the intention. Mr. Morales intended to file the Notice of Nonsuit "without" prejudice of filing the same. This was a clearly a clerical error as the Collision made basis of the suit had only occurred less than 2 months prior and the Plaintiff was probably still treating for his injuries at that time. This Motion is filed to correct that clerical mistake. Because of a clerical error, the following omission was made in the Order: Moises Morales inadvertently filed a Notice of Nonsuit "with prejudice" when the nonsuit should have read "without prejudice."

2.      If the matter set forth above is not included in the Order of this Court, the relief intended cannot be secured.

Wherefore, Plaintiff respectfully moves the Court to correct the Notice of Nonsuit to reflect the Nonsuit language that should have "without prejudice of filing the same."

*- Signature on next page -*

Unofficial Copy Office of Marilyn Burgess District Clerk

Respectfully submitted,

**MOISES MORALES LAW**

By:      /s/ Moises Morales
         Moises Morales III
         State Bar No. 24098137
         4201 Main Street, Ste. 200-247
         Houston, Texas 77002
         Tel:    (832) 245-5597
         Fax:    (832) 202-2747
         ECF:litigation@moisesmoraleslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in compliance with Rules 21 of the Texas Rules of Civil Procedure on the 6th day of September, 2024.

/s/ Moises Morales
Moises Morales

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 91717196
Filing Code Description: Motion (No Fee)
Filing Description: Motion to Correct Clerical Omission Nunc Pro Tunc
Status as of 9/6/2024 10:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 9/6/2024 10:00:58 AM | SENT |
| Moises Morales | | litigation@moisesmoraleslaw.com | 9/6/2024 10:00:58 AM | SENT |
| Moises MoralesIII | | moises@moisesmoraleslaw.com | 9/6/2024 10:00:58 AM | SENT |
| Moises Morales | | moises@moraleslawfirm.net | 9/6/2024 10:00:58 AM | SENT |
| Trey Hardin | | mhardin@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Tiffany Peters | | tpeters@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Wesson Tribble | | wtribble@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Brenda Engelhardt | | bengelhardt@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

9/18/2024 10:01 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92155376
By: Tiffany Jefferson
Filed: 9/18/2024 10:01 AM

## 2026-41505 / Court: 157

**CAUSE NO.  2023-71174**

Pgs-1

ENPTY

| | | |
|---|---|---|
| THOMAS WINFIELD | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS  COUNTY, T E X A S |
| | § | |
| RON HOOVER A.K.A RON | § | |
| HOOVER MARINE CENTERS | § | 61st  JUDICIAL  DISTRICT |
| AND JOHN BABCOCK | § | |

### ORDER DENYING MOISES MORALES' MOTION TO CORRECT A CLERICAL OMISSION/MISTAKE NUNC PRO TUNC IN A PREVIOUS ORDER

On this day, came on to be considered the above and foregoing, Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order, and Defendant's response, filed herein. Having considered the foregoing, the arguments of counsel, and the applicable law, this Honorable Court is of the opinion that Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order is DENIED.

SIGNED this _____ day of _____, 2024.

Signed:
9/24/2024

_____
JUDGE PRESIDING

Unofficial Copy Office of Marilyn Burgess District Clerk

# 2026-41505 / Court: 157

## ASSIGNMENT OF CLAIM

This Assignment of Claim (the "Assignment") is entered into as of _____(the "Effective Date"), by and between Moises Morales III, an individual, and The Moises Morales Law Firm, a Texas law firm with its principal office at 4201 Main Street, Ste. 249, Houston, Texas 77002 (collectively, the "Assignors"), and Thomas Winfield, an individual residing in Nashville, Tennessee (the "Assignee").

### RECITALS

**WHEREAS**, the Assignors represented the Assignee in connection with certain personal injury claims arising from a motor vehicle accident that occurred on or about September 26, 2023 (the "Underlying Accident");

**WHEREAS**, disputes arose regarding the Assignors' representation of the Assignee, leading to potential claims by the Assignee against the Assignors for legal malpractice and related causes of action (the "Malpractice Claims");

**WHEREAS**, the parties have entered into a separate Settlement and Mutual Release Agreement dated as of even date herewith (the "Settlement Agreement"), pursuant to which the Malpractice Claims are being settled;

**WHEREAS**, the Assignors may have claims against Everest National Insurance Company or its affiliates (collectively, "Everest"), including but not limited to claims for insurance coverage, indemnity, bad faith, breach of contract, violations of the Texas Insurance Code, or other related claims arising from or related to Everest's handling, denial, or failure to provide coverage for the Malpractice Claims or any liability arising therefrom (collectively, the "Everest Claims");

**WHEREAS**, as partial consideration for the settlement of the Malpractice Claims, the Assignors desire to assign all of their right, title, and interest in the Everest Claims to the Assignee, in accordance with Texas law, including but not limited to Texas Property Code § 12.014 and common law principles governing assignments;

**WHEREAS**, this Assignment is intended to be an absolute and irrevocable transfer of the Everest Claims, enabling the Assignee to pursue and enforce the Everest Claims in his own name and for his own benefit, subject to the terms of the Settlement Agreement regarding application of proceeds;

**NOW, THEREFORE**, in consideration of the mutual promises contained in the Settlement Agreement, the releases therein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1. Assignment**. The Assignors hereby absolutely, irrevocably, and unconditionally assign, transfer, convey, and set over to the Assignee all of the Assignors' right, title, interest, and standing in and to the Everest Claims, including without limitation:

a. Any and all causes of action, demands, rights, remedies, and claims for damages, including compensatory, punitive, exemplary, statutory, or other damages;

1

b. Any rights to insurance proceeds, indemnity, or reimbursement under any applicable insurance policies issued by Everest;

c. Any claims for breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code (including Chapters 541 and 542), or other statutory or common law claims related to insurance handling;

d. All accrued interest, costs, expenses, attorneys' fees, and other recoveries permissible under law;

e. The right to file suit, negotiate, settle, compromise, or otherwise pursue the Everest Claims in the Assignee's own name, as if the Assignee were the original owner thereof. This Assignment is made without recourse and is intended to be a present, absolute transfer of all interests in the Everest Claims, vesting in the Assignee full authority to enforce the Everest Claims as the real party in interest, pursuant to Texas Rule of Civil Procedure 39 and applicable law.

2. **Consideration**. This Assignment is made in partial consideration for the Assignee's agreement to settle and release the Malpractice Claims as set forth in the Settlement Agreement. The parties acknowledge that this consideration is adequate and sufficient under Texas law.

3. **No Warranties or Representations**. The Assignors make no warranties or representations, express or implied, regarding the validity, enforceability, value, or merits of the Everest Claims, the existence or amount of any insurance coverage, or the likelihood of recovery. The Assignee accepts this Assignment "as is" and assumes all risks associated with pursuing the Everest Claims.

4. **Cooperation**. The Assignors agree to cooperate reasonably with the Assignee in the pursuit of the Everest Claims, including but not limited to: (a) providing relevant documents, records, and information in their possession or control; (b) executing any necessary affidavits, declarations, or instruments to effectuate this Assignment; (c) making themselves available for interviews, depositions, or testimony as reasonably requested; and (d) not taking any action that would interfere with or prejudice the Assignee's pursuit of the Everest Claims. The Assignee shall reimburse the Assignors for any reasonable out-of-pocket expenses incurred in providing such cooperation.

5. **Application of Proceeds**. Any proceeds recovered from the Everest Claims shall be applied in accordance with the terms of the Settlement Agreement and the Promissory Note executed pursuant thereto, including deduction of the Assignee's reasonable attorneys' fees and expenses incurred in pursuing the Everest Claims.

6. **Governing Law and Venue**. This Assignment shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of laws principles. Any dispute between Assignor and Assignee arising from this Assignment shall be resolved in accordance with the dispute resolution provisions of the Settlement Agreement, including mandatory mediation at the Texas Justice Center prior to litigation. Venue for any litigation shall be exclusively in the state or federal courts located in Harris County, Texas.

2

**7. Entire Agreement**. This Assignment, together with the Settlement Agreement, constitutes the entire understanding between the parties regarding the Everest Claims and supersedes all prior agreements or understandings. This Assignment may not be modified except in a writing signed by all parties.

**8. Severability**. If any provision of this Assignment is held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

**9. Authority**. Each party represents and warrants that it has full authority to enter into this Assignment and that the individual signing on its behalf is duly authorized.

**10. Counterparts and Electronic Signatures**. This Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Electronic signatures shall be binding as originals.

**IN WITNESS WHEREOF**, the parties have executed this Assignment as of the Effective Date.

**ASSIGNORS:**

_____
Moises Morales III, Individually

THE MOISES MORALES LAW FIRM

By: _____
Moises Morales III, Owner and Authorized Signatory

**ASSIGNEE:**

_____
Thomas Winfield

Unofficial Copy Office of Marilyn Burgess District Clerk

3

## ACKNOWLEDGMENT FOR ASSIGNORS

STATE OF TEXAS      §
                           §
COUNTY OF HARRIS     §

This instrument was acknowledged before me on __1/21/26__ (date) by Moises

Morales III, individually and as Owner and Authorized Signatory of The Moises Morales Law

Firm.

_____
Notary Public, State of Texas
Printed Name: __Mona Miles__
My Commission Expires: __2/01/2028__
(Notarial Seal)

Unofficial Copy Office of Marilyn Burgess District Clerk

4

**docusign**

## Certificate Of Completion

Envelope Id: 7F73522B-DE6A-45D6-9C67-72462052EC69                                          Status: Completed
Subject: 26_01_21 Winfield Assignment of Claim [morales signed].pdf
Source Envelope:
Document Pages: 4                        Signatures: 1                          Envelope Originator:
Certificate Pages: 1                     Initials: 0                            Thomas Winfield
AutoNav: Enabled                                                                tjwinfield1995@gmail.com
EnvelopeId Stamping: Disabled                                                   IP Address: 73.136.175.5
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

## Record Tracking

Status: Original                         Holder: Thomas Winfield               Location: DocuSign
        1/28/2026 11:02:35 AM                    tjwinfield1995@gmail.com

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Thomas Winfield<br>tjwinfield1995@gmail.com<br>Security Level: Email, Account Authentication (None) | *Mum* | Sent: 1/28/2026 11:02:36 AM<br>Viewed: 1/28/2026 11:02:40 AM<br>Signed: 1/28/2026 11:04:29 AM<br>Freeform Signing |
| | Signature Adoption: Drawn on Device<br>Using IP Address: 73.136.175.5<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via Docusign | | |

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 1/28/2026 11:02:36 AM |
| Certified Delivered | Security Checked | 1/28/2026 11:02:40 AM |
| Signing Complete | Security Checked | 1/28/2026 11:04:29 AM |
| Completed | Security Checked | 1/28/2026 11:04:29 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

Unofficial Copy Office of Marilyn Burgess District Clerk

**EXHIBIT H**

# EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY POLICY

2026-41505 / Court: 157

## DECLARATIONS



THIS IS A CLAIMS-MADE POLICY AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER PURSUANT TO THE TERMS HEREIN.  CLAIM EXPENSES SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS AND MAY COMPLETELY EXHAUST THE POLICY LIMITS.

PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

| NAMED INSURED AND ADDRESS | INSURER |
|---|---|
| ITEM 1<br>Morales Law Firm<br>4201 Main St<br>Ste. 200-247<br>Houston, TX 77002 | (hereinafter, "Insurer")<br>Everest National Insurance Company<br>100 Everest Way<br>Warren, NJ 07059 |
| POLICY NUMBER | PRODUCER |
| EML0050315-231 | Embroker Insurance Services, LLC<br>5214F Diamond Heights Blvd.<br>San Francisco, CA 94131 |

ITEM 2      POLICY PERIOD:      FROM  11/29/2023  TO  11/29/2024
12:01 A.M. LOCAL TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE

ITEM 3      AGGREGATE LIMIT OF LIABILITY

**A.** for the Policy Period (including Claim Expenses): $1,000,000
**B.** Each Claim (including Claim Expenses):  $1,000,000

ITEM 4      DEDUCTIBLE: $2,500

ITEM 5      COVERAGE EXTENSIONS

If any of the coverages described below are left blank or "N/A" is indicated, such coverage and any reference thereto is deleted from the Policy.

| COVERAGES | SUBLIMIT OF LIABILITY |
|---|---|
| **A.**  CRISIS EVENT EXPENSES | $25,000 |
| **B.**  DISCIPLINARY PROCEEDINGS EXPENSES<br>   **1. Each Disciplinary Proceeding**<br>   **2. All Disciplinary Proceeding Expenses** | <br>$25,000<br>$50,000 |
| **C.**  SECURITY INCIDENT RESPONSE EXPENSES<br>   **1. Each Security Incident**<br>   **2. All Security Incident Response Expenses** | <br>$25,000<br>$25,000 |
| **D.**  SUBPOENA COMPLIANCE EXPENSES | $25,000 |

*Unofficial Copy - Office of Marilyn Burgess District Clerk*

LPL-CWF001A-1 0319               ©Everest Reinsurance Company, 2019               Page | 1

**E.  LITIGATION PARTICIPATION EXPENSES**

| | |
|---|---|
| **1.  Per Day Litigation Participation Expenses** | $500 |
| **2. Per Claim Litigation Participation Expenses** | $25,000 |
| **3.  All Litigation Participation Expenses** | $50,000 |

**ITEM 6**     POLICY PREMIUM:  $2,332.00

TOTAL PREMIUM WITH TAXES & ASSESSMENTS: $2,332.00

**ITEM 7**     EXTENDED REPORTING PERIOD:

| **Additional Period:** | **Additional Premium:** |
|---|---|
| One (1) year | 100% of the Annualized Premium in ITEM 6 Above |
| Two (2) years | 150% of the Annualized Premium in ITEM 6 Above |
| Three (3) years | 200% of the Annualized Premium in ITEM 6 Above |
| Five (5) years | 250% of the Annualized Premium in ITEM 6 Above |

**ITEM 8**     RETROACTIVE DATE: 11/29/2023

**ITEM 9**     NOTICE TO INSURER:

Notice of Claims or Potential Claims:
Email: EverestInsuranceClaims@EverestRe.com
Fax: 1-866-283-4856
Telephone (toll free): 1-866-323-4501
Mail: Everest Insurance®
Attn: Lawyers' Professional Claims
100 Everest Way
Warren, NJ 07059

All Other Notices:
Email: Serviceteam@embroker.com
Telephone: 1-844-436-2765
Mail: Embroker Insurance Services LLC
5214F Diamond Heights Blvd.
Unit #1261
San Francisco, CA 94131

**ITEM 10**     FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE DATE THIS POLICY IS ISSUED:   See attached Schedule of Forms/Endorsements

**THIS DECLARATIONS PAGE, TOGETHER WITH THE APPLICATION, LAWYERS PROFESSIONAL LIABILITY POLICY AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.**

Unofficial Copy Office of Marilyn Burgess District Clerk

# SCHEDULE OF FORMS/ENDORSEMENTS

*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

| Form Name | Form Number | Endorsement No. |
|---|---|---|
| LAWYERS PROFESSIONAL LIABILITY POLICY DECLARATIONS | LPL-CWF001A-1 0319 | |
| LAWYERS PROFESSIONAL LIABILITY POLICY | LPL-CWF100A-1 0319 | |
| (TEXAS) CANCELLATION AND NONRENEWAL | EIL-TXF100A-1 0118 | 1 |
| TEXAS IMPORTANT NOTICE | EN-IL-5-TX-07-23 | 2 |
| (TEXAS) AMENDATORY | LPL-TXF200A-1 0319 | 3 |
| (TEXAS) EXTENDED REPORTING PERIOD | LPL-TXF202A-1 0319 | 4 |
| INDIVIDUAL INSURED RETROACTIVE DATE ENDORSEMENT | LPL-CWF316A-1 0319 | 5 |
| INSURING AGREEMENT AMENDED ENDORSEMENT | LPL-CWF317A-1 0319 | 6 |
| DEFENSE COUNSEL ENDORSEMENT | LPL-CWF341A-1 0319 | 7 |
| AMEND PREDECESSOR DEFINITION ENDORSEMENT | LPL-CWF347A-1 0622 | 8 |
| RELIANCE UPON OTHER APPLICATION ENDORSEMENT | LPL-CWF327B-1 0622 | 9 |
| ADVISORY NOTICE REGARDING TRADE OR ECONOMIC SANCTIONS | EIL-CWN010A-1 1020 | |

Unofficial Copy Office of Marilyn Burgess District Clerk

# EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY POLICY

**THIS IS A CLAIMS-MADE POLICY AND COVERS CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER PURSUANT TO THE TERMS HEREIN. AMOUNTS INCURRED AS CLAIM EXPENSES SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS INCLUDING JUDGMENTS AND SETTLEMENTS AND MAY COMPLETELY EXHAUST THE POLICY LIMITS.  PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance upon all information provided to and statements made to the Insurer, including those statements in the Application, which is made part hereof and deemed attached hereto in connection with the underwriting of this Policy, and subject to all terms, conditions and limitations of this Policy, including those in the Declarations, which is made part hereof, the Insurer and the Named Insured, on behalf of all Insureds, agree as follows:

**All definitions are in Section XX – DEFINITIONS below.**

## SECTION I – INSURING AGREEMENT

The Insurer shall pay on behalf of the Insured, all Loss in excess of the Deductible, resulting from any Claim first made against the Insured during the Policy Period and reported during the Policy Period or Extended Reporting Period, if exercised, arising out of a Wrongful Act committed on or after the Retroactive Date.

## SECTION II – COVERAGE EXTENSIONS

The Insurer shall reimburse the Insured for all  Expenses incurred by the Insured as referenced in Sections A-E below, subject to the respective Sublimits for each such Expense as set forth in ITEM 5 of the Declarations which shall be in addition to and not part of the Aggregate Limit of Liability referenced in ITEM 3.A of the Declarations. The Insurer shall have no duty to defend any Insured in connection with any Expense Event referenced in this Section.

### A.  CRISIS EVENT EXPENSES

The Insurer will reimburse the Insured for all Crisis Event Expenses incurred as a result of all Crisis Events that first occur during the Policy Period, subject to the Sublimit of Liability referenced in ITEM 5.A of the Declarations.

### B.  DISCIPLINARY PROCEEDINGS EXPENSES

The Insurer will reimburse the Insured for all Disciplinary Proceeding Expenses incurred in connection with all Disciplinary Proceedings first commenced against an Insured during the Policy Period, subject to the Sublimits of Liability referenced in ITEM 5.B of the Declarations. The Insurer shall not pay and there shall be no coverage for any fines, judgments, awards or settlements in connection with any Disciplinary Proceeding.

### C.  SECURITY INCIDENT RESPONSE EXPENSES

The Insurer shall reimburse the Named Insured for any Security Incident Response Expenses incurred in connection with all Security Incidents first commenced against an Insured during the Policy Period, subject to the Sublimits of Liability referenced in ITEM 5.C of the Declarations.

### D.  SUBPOENA COMPLIANCE EXPENSES

If the Insured gives the Insurer notice of a subpoena for documents or testimony arising out of Professional Services performed by such Insured, first received by the Insured during the Policy Period, the Insurer shall pay reasonable attorneys' fees and expenses associated with the response to such subpoena, subject to the Sublimit of Liability referenced in ITEM 5.D of the Declarations.

At the Insured's request, and upon the Insurer's receipt of a copy of the subpoena, the Insurer shall assign an attorney to provide advice regarding the production of documents, to prepare the Insured for sworn testimony and represent the Insured at their deposition, provided that: (i) the subpoena arises out of a lawsuit to which the Insured is not a party, and (ii) the Insured has not been engaged to provide advice or testimony in connection with the lawsuit. Coverage provided hereunder shall not include coverage for any Disciplinary Proceeding.

E.  **LITIGATION PARTICIPATION EXPENSES**

Upon the Insurer's request, the Insureds shall attend all Litigation Events relative to the defense of a Claim. The Insurer shall reimburse such Insureds for all Litigation Participation Expenses incurred in connection with such Litigation Events, subject to the Sublimits referenced in ITEM 5.E of the Declarations.

## SECTION III – EXCLUSIONS

This Policy does not apply to any Claim or Expense Event:

A.  **BENEFICIARY/DISTRIBUTEE**

based upon, arising out of or attributable to, or in consequence of any Loss sustained by an Insured in its capacity as a beneficiary or distributee of any trust or estate.

B.  **BODILY INJURY/PROPERTY DAMAGE**

based upon, arising out of or attributable to any Bodily Injury or Property Damage, provided this exclusion does not apply to Bodily Injury or Property Damage resulting from the Insured's rendering or failure to render Professional Services.

C.  **CAPACITY**

based upon, arising out of or attributable to an Insured's services or capacity as an officer, director, partner, trustee, manager, owner, or employee of a corporation, partnership, association, trust or fund, including a pension, welfare, profit sharing, mutual or investment fund or trust, or any other business enterprise or charitable organization of any kind other than the Named Insured, provided this exclusion shall not apply to Professional Services provided by the Insured to such other entity.

D.  **CONDUCT**

based upon, arising out of or attributable to:

1.  the gaining of any profit, remuneration, advantage to which the Insured was not legally entitled;

2.  any intentional, criminal, dishonest, malicious or deliberately fraudulent act, error or omission by and Insured;

If established by a final, non-appealable adjudication of the Claim in any judicial, administrative or alternative dispute resolution proceeding.

For purposes of determining the applicability of this exclusion, no fact pertaining to, knowledge possessed by or conduct of a natural person Insured shall be imputed to any other natural person Insured.

E.  **CONFIDENTIAL/PERSONAL INFORMATION**

based upon, arising out of or attributable to the access to or disclosure of any person or organization's confidential or personal information, including but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information or the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data; provided, however, this exclusion does not apply: (i) to the extent of coverage

otherwise provided by Section II.C of the Policy, or (ii) to a Claim arising out of Professional Services provided by an Insured to a client of the Named Insured.

**F. CONTRACT**

based upon, arising out of or attributable to any actual or alleged liability of the Insured pursuant to any written or oral contract or agreement, including any indemnification agreement, warranty, guarantee or promise, provided that this exclusion does not apply to the extent the Insured would have been liable in the absence of such contract or agreement.

**G. CONTROLLED ENTERPRISE**

based upon, arising out of or attributable to any Professional Services rendered or that should have been rendered by an Insured to any Controlled Enterprise.

**H. DESTRUCTION, DIMINUTION OR LOSS OF ASSETS**

based upon, arising out of or attributable to any loss or destruction, or any diminution in the value of any asset in the Insured's care, custody or control, or out of the misappropriation of or failure to give an account of, or failure to produce upon legitimate demand, any asset in the Insured's care, custody or control, including the commingling of funds.

**I. ERISA**

based upon, arising out of or attributable to an Insured's actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or the Pension Protection Act of 2006, including any amendments, or any rules, regulations or orders issued thereto, or any similar provisions of any federal, state or local law.

**J. INSURED V. INSURED**

brought by or on behalf of an Insured against another Insured unless such Claim arises out of Professional Services by an Insured to such other Insured as a client of the Named Insured.

**K. INTELLECTUAL PROPERTY**

based upon, arising out of or attributable to any actual or alleged violation of any intellectual property rights or law, including but not limited to, the infringement of any copyright, title, slogan, patent, trademark, certification mark, service mark, service name, trade dress, trade secret, or misappropriation of trade secrets or ideas, provided this exclusion does not apply to a Claim arising out of Professional Services provided by an Insured to a client of the Named Insured.

**L. PRIOR KNOWLEDGE**

based upon, arising out of or attributable to any fact, circumstance, situation or Wrongful Act, to which any Insured had knowledge as of the inception of the first lawyers professional liability policy issued by the Insurer to the Named Insured and continuously renewed and maintained in effect prior to the inception date of this Policy, as referenced in ITEM 2 of the Declarations, that was reasonably likely to give rise to a Claim or Expense Event that would fall within the scope of coverage provided by this Policy.

**M. PRIOR NOTICE**

based upon, arising out of or attributable to any fact, circumstance, situation, Wrongful Act which has been the subject of any notice given prior to the inception of this Policy under any lawyer's professional liability or other equivalent insurance policy to this Policy.

### N.  PUBLIC OFFICIAL/GOVERNMENT EMPLOYEE

based upon, arising out of or attributable to an Insured's services or capacity as a public official or employee of a governmental body, subdivision or agency.

## SECTION IV – NOTICE

A.  As a condition precedent to their rights under the Policy, the Insureds shall give to the Insurer written notice of any Claim made against any Insured as soon as practicable, but in no event later than: (i) sixty (60) days after the end of the Policy Period, or (ii) the expiration of the applicable Extended Reporting Period, if exercised.

B.  With respect to coverage under SECTION II-COVERAGE EXTENSIONS, the Insured shall provide written notice to the Insurer of any Expense Event as soon as practicable but no later than the expiration of the Policy Period or Extended Reporting Period, if exercised.   Notice to the Insurer of any Expense Event shall constitute a notice of circumstance pursuant to Section IV.C below, and any Claim subsequently made against any Insured arising out of such Expense Event shall be deemed under this Policy to be a Claim made during the Policy Period in which such specific Expense Event was first reported to the Insurer.

C.  If during the Policy Period an Insured becomes aware of any Wrongful Act or circumstance that might reasonably be expected to result in a Claim against any Insured, and gives written notice to the Insurer of such potential Claim during the Policy Period including:

1.  a description of the specific Wrongful Act or circumstance, including all relevant dates;

2.  the names of the claimants and Insureds, to the extent known, involved in the potential Claim;

3.  particulars as to the reasons for anticipating a Claim, including the manner in which the Insured first became aware of the specific Wrongful Act or circumstance;

then any Claim subsequently made against any Insured arising out of such Wrongful Act or circumstance shall be deemed under this Policy to be a Claim made during the Policy Period in which such specific circumstance or Wrongful Act was first reported to the Insurer.

D.  Except as otherwise provided in this Policy, all notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party. Notice to the Insureds may be given to the Named Insured at the address shown in ITEM 1 of the Declarations. Notice to the Insurer shall be given to the respective address shown ITEM 9 of the Declarations.  Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal.

## SECTION V - DEFENSE, INVESTIGATION, & CONSENT TO SETTLE

A.  **Defense of Claims**

The Insurer has the right and duty to defend any Claim made against an Insured to which this Policy applies, even if the allegations of the Claim are groundless, false or fraudulent.   However, the Insurer shall have no duty to defend any Insured against any Claim to which this insurance does not apply. The Insurer shall not appoint defense counsel in connection with any Claim without the consent of the Named Insured, such consent not to be unreasonably withheld or delayed.

The Insurer shall not be obligated to pay any Loss, or to undertake or continue the defense of any Claim, after the applicable Limit of Liability has been exhausted by the payment of Loss or a settlement agreed to by the Insurer, or after the applicable Limit of Liability has been deposited with, or becomes subject to control of, a court of competent jurisdiction. The duty to defend also terminates when all potentially covered Claims are dismissed or withdrawn.

Unofficial Copy Office of Marilyn Burgess District Clerk

If a Claim is subject to arbitration or mediation, the Insurer or defense counsel assigned by the Insurer shall be entitled to exercise all of the Insured's rights in the choice of arbitrators or mediators and in the conduct of the arbitration or mediation proceeding.

**B.   Pre-Claim Assistance**

If the Insured gives notice of a potential Claim pursuant to Section IV.C of the Policy, the Insurer may, at its sole discretion, pay any costs and expenses it incurs to investigate the potential Claim.  Such payment is not subject to a Deductible and shall be in addition to and not part of, the Aggregate Limit of Liability referenced in ITEM 3.A of the Declarations. Once such potential Claim becomes a Claim, all Loss incurred thereafter in connection with such Claim, shall be subject to a Deductible and shall be part of and not in addition to, the Aggregate Limit of Liability stated in ITEM 3.A of the Declarations.

**C.   Consent to Settle**

Except as provided in paragraph **D** below, the Insurer will not settle any Claim without the consent of the Insured, such consent not to be unreasonably withheld or delayed. As a condition precedent to coverage under this Policy, the Insured shall not admit liability for or settle any Claim, incur any Expenses or Claim Expenses, without the Insurer's prior written consent, such consent not to be unreasonably withheld.  The Insurer shall have the right to investigate and conduct negotiations and, with the written consent of the Named Insured, effect settlement of any Claim as the Insurer deems reasonable. The Insurer shall not be liable for any settlement, Loss or assumed obligations for which it has not given its prior written consent.

**D.**   If the Insurer recommends a settlement of a Claim within the Policy's applicable Limit of Liability which is acceptable to the claimant, and the Insureds refuse to consent to such settlement, then the Insurer's liability on account of such Claim shall not exceed the total sum of:

**1.**   the amount for which the Claim could have settled such Claim, plus Claim Expenses incurred up to the date of the Insured's refusal to consent to such settlement; and

**2.**   fifty percent (50%) of Loss incurred in connection with such Claim in excess of the amount referenced in paragraph 1 above.  The remaining fifty percent (50%) shall be borne by the Insured at its own risk and remain uninsured;

provided, however in no event shall the Insurer's liability exceed the applicable Limit of Liability set forth in ITEM 3.A and/or ITEM 3.B of the Declarations.

**E.   Collaborative Defense**

The Insured's Deductible as provided in ITEM 4 of the Declarations will be reduced by fifty percent (50%) for any Claim if:

**1.**   such Claim is settled or resolved as:

   a)   evidenced by a written settlement agreement; and

   b)   within 365 days of the date the Claim is reported to the Insurer pursuant to the terms and conditions of Section IV, and for an amount, acceptable to the Insurer; or

**2.**   such Claim is settled as a result of arbitration or mediation;

provided, however, the amount of the Deductible reduction shall not exceed $25,000 for any such Claim.

**F.   Cooperation**

The Insured shall cooperate with the Insurer. The Insured shall execute or cause to be executed all papers and render all assistance as is requested by the Insurer.  The Insured agrees not to take any action which in any way prejudices or increases the Insurer's exposure under the Policy.

Upon the Insurer's request, the Insured shall assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the

Insured. The Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

## SECTION VI – LIMIT OF LIABILITY & DEDUCTIBLE

### A. Limit of Liability

1. The most the Insurer will pay for all Loss for all Claims covered by this Policy is the Aggregate Limit of Liability stated in ITEM 3.A of the Declarations. The most the Insurer will pay for all Loss for each Claim is the Each Claim Limit of Liability stated in ITEM 3.B of the Declarations.

2. The most the Insurer will pay for each respective Expense referenced in SECTION II-COVERAGE EXTENSIONS, is the respective Sublimit set forth in ITEMS 5.A-E of the Declarations, for each such Expense regardless of the number of payments sought, claimants or Insureds involved, or Expense Events that occur. Such amounts shall be in addition to and not part of the Aggregate Limit of Liability referenced in ITEM 3.A of the Policy.

3. Once the Aggregate Limit of Liability as shown in ITEM 3.A of the Declarations is exhausted by the Insurer's payment of Loss, the Insurer will have no further obligations of any kind under this Policy, and all such obligations, including with respect to any coverage provided under SECTION II, shall be completely fulfilled and extinguished. The Insurer is entitled to pay Loss as it becomes due and payable by the Insureds, without consideration of other future payment obligations.

4. The Aggregate Limit of Liability for any Extended Reporting Period, if exercised, shall be part of and not in addition to the Aggregate Limit of Liability as set forth in ITEM 3.A of the Declarations.

### B. Claim Expenses

Claim Expenses are part of and not in addition to the Limits of Liability as set forth in ITEM 3 of the Declarations and the payment by the Insurer of Claim Expenses reduces such Limits of Liability.

### C. Deductible

The Deductible stated in ITEM 4 of the Declarations shall apply separately to each Claim. The Insurer shall be liable only for Loss incurred by the Insured in excess of such Deductible. Any payment of a Deductible in connection with a Claim shall not reduce any other applicable Deductible for any other Claim (that is not a Related Claim). A Deductible shall be satisfied by monetary payments of Loss by the Named Insured or upon the Named Insured's failure to pay, jointly and severally by all Insureds. Any Deductible shall be paid within thirty (30) days of written demand by the Insurer. All other rights, duties, and obligations under the Policy shall remain the same regardless of whether or not the applicable Deductible has been satisfied.

### D. Multiple Insureds, Claims and Claimants

The Limits of Liability shown in ITEM 3 of the Declarations is the most the Insurer will pay as Loss regardless of the number of Insureds, Claims or claimants. All Related Claims shall be deemed a single Claim and only one Deductible shall apply to such single Claim. Such single Claim shall be deemed to be first made on the date the earliest of such Related Claims is first made against any Insured regardless of whether such date is before or during the Policy Period. The Insured shall provide notice to the Insurer of any subsequent Related Claim pursuant to Section IV.A above. This Policy shall not cover any Loss incurred in connection with any subsequent Related Claim before such subsequent Related Claim is reported to the Insurer in accordance with Section IV.A of the Policy.

## SECTION VII – EXTENDED REPORTING PERIOD

### A. Automatic Extended Reporting Period

If the Named Insured or Insurer cancels or non-renews this Policy, other than for non-payment of premium, the Insured shall have an Automatic Extended Reporting Period of ninety (90) days to commence

immediately after the expiration of the Policy, to report to the Insurer any Claim first made against any Insured during the Policy Period but only for Wrongful Acts taking place on or after the Retroactive Date and prior to the effective date of the cancellation or non-renewal.

**B.  Optional Extended Reporting Period**

1.  If the Insurer or the Named Insured cancels or non-renews this Policy, other than for non-payment of premium, then the Named Insured shall have the right, upon payment of the additional premium as set forth in ITEM 7 of the Declarations, to purchase an Extended Reporting Period as set forth as set forth in ITEM 7 of the Declarations, immediately following the effective date of such termination or non-renewal but only with respect to any Claim first made against any Insured during the Policy Period and reported in writing to the Insurer during the Extended Reporting Period, and only for Wrongful Acts taking place on or after the Retroactive Date and prior to the effective date of the cancellation or non-renewal.

2.  This right of extension will lapse unless written notice of such election, together with payment of the additional premium, is given by the Insureds to the Insurer within sixty (60) days following the effective date of cancellation or nonrenewal. The Extended Reporting Period is not cancellable by the Insurer and the entire additional premium for the Extended Reporting Period will be deemed fully earned at inception of the Extended Reporting Period.

3.  The first ninety (90) days of the **Optional Extended Reporting Period** shall run concurrent with the Automatic Extended Reporting Period referenced in Section VII.A above.

**C.  Non-Practicing Extended Reporting Period**

If an Insured as defined in Section XX.M.2 retires, or otherwise voluntarily ceases, permanently and totally, the Private Practice Of Law during the Policy Period, then such Insured shall have the right, upon payment of the additional premium as set forth in ITEM 7 of the Declarations, to purchase an Extended Reporting Period as set forth as set forth in ITEM 7 of the Declarations, to commence upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy or any optional Extended Reporting Period, but only for Wrongful Acts taking place on or after the Retroactive Date and prior to the effective date of the retirement or cessation.

This right of extension will lapse unless written notice of such election, together with payment of the additional premium, is given by the Insured to the Insurer within sixty (60) days following the effective date of retirement or cessation. The entire additional premium for the non-practicing Extended Reporting Period will be deemed fully earned at inception of the Extended Reporting Period; provided there shall be no additional premium for any Extended Reporting Period elected up to three (3) years if the Insured retires or ceases the Private Practice of Law during the Policy Period and has been insured by the Insurer under a primary lawyers professional liability policy for at least three (3) consecutive years.

This Extended Reporting Period is provided until such Insured resumes the Private Practice of Law or until the death of such Insured in which case paragraph **D** below applies.

**D.  Upon Death or Disability Extended Reporting Period**

If a natural person Insured dies or becomes Totally and Permanently Disabled during the Policy Period, then upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy, or any optional Extended Reporting Period, such Insured shall be provided with a death or disability Extended Reporting Period as provided below:

1.  In the event of death, the estate, heirs, executors or administrators of such Insured must provide the Insurer with written proof of the date of death. This Extended Reporting Period is provided to the estate, heirs, executors and administrators of such Insured until the executor or administrator of the estate of such Insured is discharged, but only with respect to any Wrongful Act of such Insured committed in their capacity as such.

2. If an Insured becomes Totally and Permanently Disabled, such Insured or Insured's legal guardian must provide the Insurer with written proof that such Insured is Totally and Permanently Disabled, including the date the disability commenced, certified by the Insured's physician.  The Insurer retains the right to contest the certification made by the Insured's physician.

No additional premium will be charged for any death or disability Extended Reporting Period.

E. **All Extended Reporting Period Options**

1. As a condition precedent to the right to purchase an Extended Reporting Period, the total premium that is due shall be paid within sixty (60) days of the effective date the cancellation or non-renewal.

2. No Extended Reporting Period is available to any Insured who is disbarred, suspended or resigns from the Private Practice of Law in lieu of suspension, in any state where the Insured has a license or right to practice law.

3. There shall be no coverage for any Claims otherwise subject to coverage under this Section VII.A-D, if there is any other insurance in effect that would apply to such Claims.

4. No Extended Reporting Period is renewable.

5. The Limit of Liability applicable to any Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period and the fact that the coverage provided by this Policy may be extended by the purchase of the Extended Reporting Period shall not in any way renew, replenish or increase the Aggregate Limit of Liability stated in ITEM 3.A of the Declarations nor change the scope of coverage available under this Policy.

6. An offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this extension of coverage.

7. All notices and premium payments made under this section shall be submitted to the Insurer by the Named Insured.

## SECTION VIII - FIRM CHANGES

If during the Policy Period there is a change of more than fifty percent (50%) of the Named Insured's total lawyer population (as of the effective date of the Policy Period), the Named Insured shall notify the Insurer of within sixty (60) days of such change.

**Acquisition of the Named Insured**

If, during the Policy Period, either of the following events occur:

1. the acquisition of the Named Insured, or of all or substantially all of its assets, by another entity; or

2. the merger or consolidation of the Named Insured into or with another entity such that the Named Insured is not the surviving entity;

then coverage under this Policy will continue in full force and effect until termination of this Policy, but only with respect to a Claim for a Wrongful Act or Interrelated Wrongful Acts taking place prior to such merger or acquisition.  As of the effective date of the merger of acquisition, coverage under this Policy will cease with respect to Claims for a Wrongful Act or Interrelated Wrongful Acts taking place after such merger or acquisition. This Policy may not be cancelled after the effective time of such merger or acquisition, and the entire premium for this Policy shall be deemed fully earned as of such time.

## SECTION IX - OTHER INSURANCE

If Loss resulting from any Claim is insured under any other valid and collectible lawyers professional liability, cyber liability or similar insurance to the insurance provided under this Policy, then this Policy shall apply only excess to the deductible, retention, if applicable, and limit of liability of such other insurance whether such other

insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this Policy.

## SECTION X - SUBROGATION

In the event of any payment under this Policy, the Insurer shall be subrogated to all of the Insured's rights of recovery against any person or organization, including any rights the Insured may have against any other Insured who personally participated or personally acquiesced in or remained passive after having knowledge of any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act, error or omission. The Insured shall do whatever is necessary to secure and collect upon such right.  The Insured shall do nothing to prejudice such rights.

## SECTION XI - BANKRUPTCY

Bankruptcy or insolvency of the Named Insured or any Insured shall not relieve the Insurer of any of its obligations under this Policy, nor deprive the Insured of any of its rights or defenses under this Policy.

## SECTION XII - REIMBURSEMENT OF THE INSURER

If the Insurer pays any Loss in excess of the applicable Limits of Liability (other than with respect to coverage provided under SECTION II-COVERAGE EXTENSIONS), or within the amount of any applicable Deductible, each Insured shall be liable to the Insurer for any and all such amounts, and, upon demand, shall pay such amounts within sixty (60) days of the Insurer's request.  If it is negotiated or determined that any Claim Expenses are not covered under this Policy, each Insured agrees to repay the Insurer the amount of such Claim Expenses within sixty (60) days of the Insurer's request.

## SECTION XIII - NAMED INSURED - SOLE AGENT

The Named Insured shall be the sole agent of all Insureds hereunder for the purpose of effecting or accepting any amendments to or cancellation of this Policy, for the purpose of receiving such notices as may be required by law and/or any provision(s) of this Policy, for the completing of any Application and the making of any representations, for the payment of any premium and the receipt of any return premium that may become due under this Policy, for the payment of any Deductible obligations that may become due under this Policy, and the exercising or declining to exercise any right under this Policy, including declining or exercising any Extended Reporting Period.

## SECTION XIV – TERRITORY, VALUATION AND CURRENCY

This Policy applies to Claims made or Wrongful Acts occurring anywhere in the world where permissible by law. If a judgment, settlement or amount of Loss under this Policy is stated in currency other than United States dollars, payment under this Policy will be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other Loss becomes payable.

## SECTION XV - ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this Policy shall be effective unless made by the Insurer via a written endorsement to this Policy. The titles and headings to the various sections, subsections and endorsements of this Policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## SECTION XVI - NO ACTION AGAINST THE INSURER

No action shall lie against the Insurer unless, as a condition precedent, there shall have been full compliance with all of the terms and conditions of this Policy. No person or organization shall have the right under this Policy to join the Insurer as a party to any action against any Insured to determine the liability of the Insured, nor shall the Insurer be impleaded by the Insureds or their legal representatives in any such action.

## SECTION XVII - CANCELLATION & NONRENEWAL

A.  The Named Insured may cancel this Policy by mailing or delivering advance written notice of cancellation to the Insurer.

B.  The Insurer may cancel only for non-payment of premium. In such event, the Insurer shall mail or deliver written notice of cancellation to the Named Insured at least:

    1.  Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

    2.  Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

C.  If this Policy is cancelled, as referenced in paragraphs A or B above, the Insurer shall send to the Named Insured a partial premium refund, computed pro rata.

D.  Any notice of cancellation shall state the effective date of cancellation. The Policy Period shall end on the effective date of the cancellation.

E.  If the Insurer decides to non-renews this Policy, the Insurer will mail or deliver to the Named Insured written notice of non-renewal at least 60 days prior to the end of the Policy Period.

F.  The Insurer shall send all notices required under this Section to the Named Insured at the address in ITEM 1 of the Declarations, and by mail or electronic mail to this Policy's broker of record, if any.  Proof of mailing will be sufficient proof of notice.

## SECTION XVIII – STATE AMENDATORY INCONSISTENCY

It is agreed that to the extent there is an inconsistency between any terms and/or conditions of the Policy or any endorsement thereto, and any state amendatory endorsement attached to this Policy, then to the extent permitted by law, the Insurer will apply those terms and conditions that are more favorable to the Insured.

## SECTION XIX - ENTIRE CONTRACT

By acceptance of this Policy, all Insured(s) agree that all statements made and information furnished to the Insurer are true, accurate and complete and that this Policy has been issued in reliance upon the truth and accuracy of such statements and information, subject to all of the terms and conditions of this Policy.

 

**SECTION XX – DEFINITIONS**

A. **Application** means all materials and information, including all signed applications and any materials submitted therewith or incorporated therein, submitted by or on behalf of the **Insureds** to the Insurer in connection with the underwriting of this Policy.

B. **Bodily Injury** means physical injury, sickness or disease sustained by a person, including death, mental anguish or emotional distress resulting therefrom.

C. **Claim** means any:

1. written demand against any **Insured** for monetary, non-monetary or injunctive relief, including a demand that the **Insured** toll or waive a statute of limitations, and a written demand or request for arbitration, mediation or other alternative dispute resolution, which shall be deemed first made upon the **Insured's** receipt of such demand; and

2. civil proceeding against an **Insured** including any appeal therefrom, commenced by and which shall be deemed first made upon the service upon, or receipt by, an **Insured** of a complaint or similar pleading;

for a **Wrongful Act.**

D. **Claim Expenses** mean reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, including but not limited to the premium for appeal bond, attachment bond or similar bond but without any obligation by the Insurer to apply for or furnish any such bonds. **Claim Expenses** do not include salaries, wages or expenses of any **Insured** including but not limited to, partners, principals, officers, directors, members or employees of the **Insured**.

E. **Controlled Enterprise** means any entity other than the **Named Insured**, that at the time of the **Wrongful Act** or **Expense Event**;

a. is a publically traded entity and 5% or more of its issued and outstanding securities or voting rights to elect or appoint a board of directors or an equivalent governing body is owned or controlled, individually or collectively, by one or more **Insured**, or any natural person **Insured's** spouse or domestic partner;

b. is not a publically traded entity and 25% or more of the legal, beneficial or equitable ownership of such enterprise is owned or controlled, individually or collectively, by one or more of the **Insureds** or any natural person **Insured's** spouse or domestic partner;

**Controlled Enterprise** does not include any business enterprise in which the ownership, control, or management by an **Insured** is exclusively in a fiduciary capacity as an administrator, conservator, executor, trustee, guardian, receiver, or committee, or in a similar fiduciary capacity incidental to the practice of law by a **Named Insured**.

F. **Crisis Event** means:

1. the death, departure or debilitating illness of the sole proprietor, managing partner, or any practice group leader of the **Named Insured**;

2. an incident of workplace violence at the offices of the **Named Insured** referenced in ITEM 1 of the Declarations; or

3. the filing of an involuntary bankruptcy petition against the **Named Insured**.

G. **Crisis Event Expenses** means reasonable fees incurred by the **Named Insured** and consented to by the Insurer, for necessary consulting services provided by a public relations firm in response to a **Crisis Event**.

H. **Disciplinary Proceeding** means a formal investigation or proceeding regarding an **Insured's** adherence to professional standards of conduct before a court, state licensing board, peer review committee, bar association or other regulatory body.

Disciplinary Proceeding does not include any: (i) criminal proceedings or proceedings or hearings to determine the reasonableness of, or right or entitlement to, any fees or charges by any Insured, or (ii) any subpoena otherwise covered under Section II.D of the Policy.

I.    Disciplinary Proceeding Expenses means reasonable and necessary fees, costs and expenses incurred for legal work performed by attorneys other than any Insured, in connection with Disciplinary Proceedings.

J.    Expenses means Crisis Event Expenses, Disciplinary Proceeding Expenses, Security Incident Response Expenses, Litigation Participation Expenses, and reasonable attorney fees and expenses incurred in connection with the response to a subpoena, as referenced in SECTION II.D, above.

K.    Expense Event means any Crisis Event, Disciplinary Proceeding, Security Incident, Litigation Event or the Insured's receipt of a subpoena covered under Section II.D, above.

L.    Extended Reporting Period means the period of coverage as shown in ITEM 7 of the Declarations.

M.    Insured means:

1.    the Named Insured shown in the Declarations or any Predecessor;

2.    any past, present or future partner, officer, director, shareholder, attorney, or member of the Named Insured but only with respect to Professional Services rendered on behalf of the Named Insured or any Predecessor;

**3.**    an attorney acting as "Of Counsel" but only while performing Professional Services on behalf of the Named Insured;

4.    all non-lawyer employees, interns, volunteers or independent contractors but only with respect to liability arising from and in the course of their services on behalf of the Named Insured or any Predecessor; and

**5.**    the estates, heirs, executors, administrators, assigns and legal representatives of a natural person Insured in the event of such Insured's death, incapacity, insolvency or bankruptcy, but only in their capacity as such, and only to the extent that such Insured would otherwise be provided coverage under the Policy.

N.    Interrelated Wrongful Acts means any and all Wrongful Acts that have as a common nexus any fact, circumstance, event, transaction, cause or series of causally or logically connected facts, circumstances, events, transactions or causes.

O.    Litigation Events means all mediations, settlement conferences, arbitration proceedings, hearings, depositions and trials relative to the defense of any Claim.

P.    Litigation Participation Expenses means any actual loss of earnings and reasonable expenses incurred by an Insured in connection with a Litigation Event.

Q.    Loss means those amounts any Insured becomes legally obligated to pay as a result of a Claim, including but not limited to damages (including punitive, exemplary and multiple damages), judgments, settlements, Claim Expenses and any award of pre-judgment and post-judgment interest with respects to covered damages, judgments or settlements.  Solely with respect to coverage under SECTION II, Loss shall include Expenses.

The insurability of punitive, exemplary or multiple damages shall be determined under the internal laws of any jurisdiction most favorable to the Insureds, including the jurisdiction in which the Named Insured, the Insurer, this Policy or such Claim is located.

Loss does not include:

1.    the multiplied portion of multiplied awards;

2.    fines, penalties, taxes or sanctions imposed by law, other than as referenced above;

3.  any amount for which an Insured is absolved from payment by reason of any covenant, agreement, court order, or bankruptcy of any Insured;

4.  the return, reduction, restitution, withdrawal, forgiveness, waiver or offset of any legal fees, costs, expenses or receivables, paid to, incurred, charged or chargeable by, an Insured;

5.  the cost of correcting, re-performing or completing, any Professional Services by an Insured;

6.  the cost of complying with any injunctive or other non-monetary relief;

7.  amounts which are uninsurable by law.

R.  Named Insured means the entity referenced in ITEM 1 of the Declarations.

S.  Personal Injury means injury arising out of one or more of the following offenses:

1.  false arrest, unlawful detention, imprisonment, malicious prosecution, wrongful eviction, wrongful entry or trespassing; or

2.  invasion, infringement, interference with an individual's right to privacy or publicity, including but not limited to public disclosure of private facts  and intrusion or commercial approbation of name or likeness;

3.  libel, slander or public disclosure of other defamatory or disparaging material;

Personal Injury does not mean any oral or written publication, in any manner, which arises out of advertising broadcasting or telecasting activities conducted by, or on behalf of, the Insured.

T.  Policy Period means the period of time set forth in ITEM 2 of the Declarations, subject to its earlier cancellation or termination.

U.  Predecessor means any individual or entity engaged in Professional Services and identified in the Application that, prior to the inception of this Policy Period, the Named Insured became the successor in interest to greater than fifty-percent (50%) of such entity or individual's financial assets and liabilities.

V.  Private Practice of Law means the practice of law performed by an Insured for a fee, including hourly, contingent or lump sum, as a sole practitioner or as a partner, officer, director, stockholder-employee, associate, manager, member or employee, of a law firm, or any agreement to act as an independent contractor or "Of Counsel" to a law firm.  Private Practice of Law does not include the practice of law by an Insured on a pro bono basis.

W.  Professional Services means services provided to others by an Insured in their capacity as such:

1.  as a licensed attorney in good standing or notary public;

2.  as a mediator, arbitrator, or other neutral fact finder;

3.  as a title agent pursuant to a written agreement with a licensed title insurance company, and provided that such title insurance company is not an Insured under this Policy;

4.  as an administrator, conservator, executor, guardian, trustee, receiver, or in any similar court appointed fiduciary capacity, provided such services are performed in connection with and incidental to Professional Services provided by the Named Insured;

5.  as an author, but only for the publication or presentation of legal research papers and legal writing materials or the presenter of legal seminars or materials, but only where such services are performed without compensation or for compensation less than $10,000;

6.  as a member of a bar association or other ethics, peer review, accreditation, licensing or similar board, committee or organization;

7.  as a licensed attorney on a pro bono basis that is approved in writing in advance by the Named Insured or any Predecessor;

8. as a lobbyist or government affairs advisor;

Professional Services do not include:

**(a)** the providing or failure to provide any financial or investment advice or financial management; or

**(b)** services rendered as a real estate or insurance agent or broker or as a promoter, seller, and/or solicitor of securities, real estate or other investments.

X. Property Damage means:

1. physical injury to tangible property, including any resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that has not been physically injured. All such loss of use shall be deemed to occur at the time such loss of use first manifests itself;

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means facts or programs stored as or on, created or used on, or transmitted to or from computer software including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Y.** Related Claims means all Claims for Wrongful Acts or Interrelated Wrongful Acts, which in whole or part, allege, arise out of, are based upon, or are in consequence of, the same or related facts, circumstances, situations, transactions or events, or series of related facts, circumstances, situations, transactions or events, regardless of whether the Claim or Claims alleging such acts involves the same or different claimants, causes of action or are brought in the same or different jurisdictions.

**Z.** Retroactive Date means the date specified in ITEM 8 of the Declarations.

AA. Security Incident means the unauthorized access of, or use of, data containing private or confidential information in connection with the performance of Professional Services which results in the violation of any law or regulation pertaining to the protection of such confidential information.

**BB.** Security Incident Response Expenses means any expenses incurred by the Insured to: 1) hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or 2) comply with state or local privacy laws requiring that notification and credit monitoring services are to be provided to individuals when the security, confidentiality or integrity of their personal information has been compromised.

CC. Totally and Permanently Disabled means that the Insured has become so disabled as to be wholly unable to provide any Professional Services in such Insured's capacity and such disability has existed continuously for not less than six (6) months and is expected to be continuous and permanent. Totally and Permanently Disabled shall not include any condition which:

1. is a result of war or acts of war, whether or not declared;

2. occurred during active service in the armed forces of any country; or

3. results from:

    a. intentionally self-inflicted Injuries; or

    b. attempted suicide, whether or not sane; or the abuse or misuse of an addictive substance.

DD. Wrongful Act means any actual or alleged act, error, omission or breach of duty by an Insured in the rendering or failure to render Professional Services. Wrongful Act also means any actual or alleged Personal Injury by an Insured committed in the rendering or failure to render Professional Services.

**Endorsement No. 1**

## (TEXAS) CANCELLATION AND NONRENEWAL    EVEREST

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the Policy:

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The **CANCELLATION AND NONRENEWAL** Section of the Policy is amended to read in its entirety as follows:

**CANCELLATION AND NONRENEWAL**

The Named Insured may cancel this Policy or any Coverage Part, if applicable, by mailing or delivering to the Insurer advance written notice of cancellation. The Insurer may cancel this Policy, or any Coverage Part, if applicable, only for nonpayment of premium. In such event, the Insurer shall mail or deliver to the Named Insured written notice of cancellation at least twenty (20) days before the effective date of such cancellation, but such cancellation shall not become effective if the Insureds pay such premium in full during such twenty (20) day period. Under the provisions of the Texas Insurance Code, the Insurer will not cancel this Policy solely because the policyholder is an elected official.

Any notice of cancellation will state the effective date of cancellation and reason for cancellation. The Policy Period will end on that date. If this Policy is cancelled, the Insurer will send to the Named Insured the premium refund, computed pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund. The Insurer may decide not to renew this Policy except, that under the provisions of the Texas Insurance Code, the Insurer will not refuse to renew this Policy solely because the policyholder is an elected official. If the Insurer decides not to renew this Policy, the Insurer will mail or deliver to the Named Insured written notice of non-renewal at least sixty (60) days before the expiration date. If notice is mailed or delivered less than sixty (60) days before the expiration date, this Policy will remain in effect until the sixty-first (61st) day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew. Notice of non-renewal will state the reason for non-renewal.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

EIL-TXF100A-1 0118              ©Everest Reinsurance Company, 2019              Page | 1

# TEXAS IMPORTANT NOTICE

## Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company. If you don't, you may lose your right to appeal.

**Everest National Insurance Company**

To get information or file a complaint with your insurance company:

> **Call:  Customer Service at 1-800-438-4375**
>
> **Toll-free:  1-800-438-4375**
>
> Email:  consumercomplaint@everestre.com
>
> Mail:  **Everest National Insurance Company**
>
> 100 Everest Way
>
> Warren, NJ 07059

**The Texas Department of Insurance**

To get help with an insurance question or file a complaint with the state:

> Call with a question:  1-800-252-3439
>
> File a complaint:  www.tdi.texas.gov
>
> Email:  ConsumerProtection@tdi.texas.gov
>
> Mail:  Consumer Protection, MC: CO-CP, Texas Department of Insurance, P.O. Box 12030, Austin, TX 78711-2030

## ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Unofficial Copy Office of Marilyn Burgess District Clerk

EN IL 5 TX 07 23                Copyright Everest Reinsurance Company, 2023                Page 1 of 2

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros. Si no lo hace, podría perder su derecho para apelar.

## Everest National Insurance Company

Para obtener información o para presentar una queja ante su compañía de seguros:

**Llame a: Customer Service** al **1-800-438-4375**

**Teléfono gratuito: 1-800-438-4375**

Correo electrónico: consumercomplaint@everestre.com

Dirección postal: **Everest National Insurance Company**

100 Everest Way

Warren, NJ 07059

## El Departamento de Seguros de Texas

Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

Llame con sus preguntas al: 1-800-252-3439

Presente una queja en: www.tdi.texas.gov

Correo electrónico: ConsumerProtection@tdi.texas.gov

Dirección postal: Consumer Protection, MC: CO-CP, Texas Department of Insurance,

P.O. Box 12030, Austin, TX 78711-2030

Unofficial Copy Office of Marilyn Burgess District Clerk

## (TEXAS) AMENDATORY



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that **SECTION V – DEFENSE AND SETTLEMENT** is amended to include the following:

The Insurer will notify the Named Insured in writing of:

1. An initial offer to compromise or settle a Claim made or suit brought against any Insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a Claim made or suit brought against any Insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**.

_____
Authorized Representative

**Endorsement No. 4**



## (TEXAS) EXTENDED REPORTING PERIOD

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the Policy.

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

**SECTION VII – EXTENDED REPORTING PERIOD** is deleted and replaced by the following:

**SECTION VII – EXTENDED REPORTING PERIOD**

A.    **Automatic Extended Reporting Period**

An Automatic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the Policy Period and lasts for sixty (60) days with respect to any Claim arising from a Wrongful Act not previously reported to the Insurer. The Automatic Extended Reporting Period applies only to a Wrongful Act which occurred after the Retroactive Date and before the end of the Policy Period provided a Claim for such Wrongful Act is first made during the Automatic Extended Reporting Period.

The Automatic Extended Reporting Period does not apply to Claims that are covered under any subsequent insurance the Named Insured purchases, or that would be covered but for exhaustion of the amount of insurance applicable to such Claims. The Automatic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

The Automatic Extended Reporting Period does not extend the Policy Period or change the scope of coverage provided.

However, if the Optional Extended Reporting Period in paragraph B. below is purchased, the automatic Extended Reporting Period does not apply.

B.    **Optional Extended Reporting Period**

3.   If the Insurer or the Named Insured cancels or non-renews this policy, then the Named Insured shall have the right, upon payment of the additional premium as set forth in ITEM 7 of the Declarations, to purchase an extension of the coverage granted by this Policy with respect to any Claim first made against any Insured during the Policy Period and reported in writing to the Insurer during the Extended Reporting Period as set forth in ITEM 7 of the Declarations, but only with respect to any Wrongful Act taking place on or after the Retroactive Date and prior to the effective date of the cancellation or non-renewal.

4.   This right of extension will lapse unless written notice of such election, together with payment of the additional premium, is given by the Insureds to the Insurer within sixty (60) days following the effective date of cancellation or nonrenewal. The Extended Reporting Period is not cancellable by the Insurer and the entire additional premium for the Extended Reporting Period will be deemed fully earned at inception of the Extended Reporting Period.

E.    **Non-Practicing Extended Reporting Period**

If an Insured retires, or otherwise voluntarily ceases, permanently and totally, the Private Practice Of Law during the Policy Period and has been continuously insured by any lawyers professional liability carrier for at least three consecutive years, then such Insured shall be provided with an Extended Reporting Period commencing upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy or any Optional Extended Reporting Period.

This Extended Reporting Period is provided until such Insured resumes the Private Practice Of Law or until the death of such Insured in which case paragraph D below applies.

F.    **Upon Death or Disability Extended Reporting Period**

If a natural person Insured dies or becomes Totally and Permanently Disabled during the Policy Period, then upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy, or any optional Extended Reporting Period, such Insured shall be provided with a death or disability Extended Reporting Period as provided below:

**1.** In the event of death, the estate, heirs, executors or administrators of such Insured must provide the Insurer with written proof of the date of death.  This Extended Reporting Period is provided to the estate, heirs, executors and administrators of such Insured until the executor or administrator of the estate of such Insured is discharged, but only with respect to any Wrongful Act of such Insured committed in their capacity as such.

**2.** If an Insured becomes Totally and Permanently Disabled, such Insured or Insured's legal guardian must provide the Insurer with written proof that such Insured is Totally and Permanently Disabled, including the date the disability commenced, certified by the Insured's physician.  We retain the right to contest the certification made by the Insured's physician.

No additional premium will be charged for any death or disability Extended Reporting Period.

G.    **All Extended Reporting Period Options**

8.As a condition precedent to the right to purchase the **Optional** Extended Reporting Period, the total premium for this Policy must have been timely paid.

9.No Extended Reporting Period shall be available when any Insured's license or right to practice his or her profession is revoked or suspended by, or surrendered at the request of, any regulatory or judicial authority.

10.No Extended Reporting Period is renewable.

11.The Limit of Liability applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period and the fact that the coverage provided by this Policy may be extended by the purchase of the Extended Reporting Period shall not in any way renew, replenish or increase the aggregate Limit of Liability stated in ITEM 3 of the Declarations nor change the scope of coverage available under this Policy.

12.An offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this extension of coverage.

13.All notices and premium payments made under this section shall be submitted to the Insurer by the Named Insured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



**Endorsement No. 5**

## INDIVIDUAL INSURED RETROACTIVE DATE
## ENDORSEMENT



*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The following EXCLUSION shall be added to Section III:

This Policy does not apply to any Claim or Expense Event based upon, arising out of or attributable to, directly or indirectly, in whole or in part, any Wrongful Act actually or allegedly committed by an **Individual Insured** referenced in the **Schedule** below, prior to the corresponding **Retroactive Date** referenced therein.

### SCHEDULE

**INDIVIDUAL INSURED(S):**                    **RETROACTIVE DATE:**

Moises Morales                                                    11/29/2023

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Unofficial Copy Office of Marilyn Burgess District Clerk

**Endorsement No. 6**



## INSURING AGREEMENT AMENDED ENDORSEMENT

*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

**SECTION I** – **INSURING AGREEMENT** shall be replaced with the following:

The Insurer shall pay on behalf of the Insured, all Loss in excess of the Deductible, resulting from any Claim first made against the Insured during the Policy Period and reported during the Policy Period or Extended Reporting Period, if exercised, arising out of a Wrongful Act committed after the Retroactive Date, provided that:

(i)  as of the inception of the first lawyers professional liability policy issued by the Insurer to the Named Insured (and continuously renewed and maintained in effect prior to the inception date of this Policy, as referenced in ITEM 2 of the Declarations), no Insured had knowledge of any fact, circumstance, situation or Wrongful Act, that was reasonably likely to give rise to a Claim or Expense Event that would fall within the scope of coverage provided by this Policy; and

(ii)  no Insured gave notice of such Claim or Wrongful Act or a Related Claim, Interrelated Wrongful Act, or Expense Event to any prior insurer.

The EXCLUSIONS in Section III.L and III.M are deleted.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



**Endorsement No. 7**

## DEFENSE COUNSEL ENDORSEMENT



*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following Policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The first paragraph of Section V.A shall be replaced with the following:

A.      **Defense of Claims**

The Insurer has the sole right and duty to defend any Claim made against an Insured to which this Policy applies, even if the allegations of the Claim are groundless, false or fraudulent.   The Insurer has the sole right to appoint defense counsel and to investigate any Claim or potential Claim.   However, the Insurer shall have no duty to defend any Insured against any Claim to which this insurance does not apply.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**.

Unofficial Copy Office of Marilyn Burgess District Clerk

**Endorsement No. 8**

## AMEND PREDECESSOR DEFINITION ENDORSEMENT



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that**:**

**SECTION XX.U.** Predecessor, is replaced with the following:

U. Predecessor means any individual or entity engaged in Professional Services that, prior to the inception of this Policy Period, the Named Insured became the successor in interest to greater than fifty-percent (50%) of such entity or individual's financial assets and liabilities.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Unofficial Copy Office of Marilyn Burgess District Clerk

LPL-CWF347A-1 0622          ©Everest Reinsurance Company, 2022

**Endorsement No. 9**

## RELIANCE UPON OTHER APPLICATION
## ENDORSEMENT



*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The Insurer has relied upon the statements and representations made by Morales Law Firm in the Competitor, Agent or Broker's Application as accurate and complete as of the date of signature on the Competitor, Agent or Broker's Application. The Insureds extend any statements and representations made in the Competitor, Agent or Broker's Application to the Insurer of this Policy and also represent that the statements and representations made in the Competitor, Agent or Broker's Application were accurate and complete as of the date of signature on the Competitor, Agent or Broker's Application. All such statements and representations shall be deemed material to the risk assumed by the Insurer of this Policy and are the basis of and are to be considered as incorporated into and constituting part of this Policy.

Competitor, Agent or Broker's Application means the application of Morales Law Firm to Everest National Insurance Company, for coverage under Lawyers Professional Liability Policy, for the Policy Period of 11/29/2023 - 11/29/2024, signed on 10/30/2023.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

_____
Authorized Representative

Unofficial Copy Office of Marilyn Burgess District Clerk

# ADVISORY NOTICE REGARDING
# TRADE OR ECONOMIC SANCTIONS

No coverage is provided by this Notice nor can it be construed to replace any provisions of the policy. Please read the policy and review the Declarations page, if applicable, for complete information on the coverages provided.

This Notice provides information concerning possible impact on insurance coverage due to any applicable trade or economic sanctions law or regulation, including but not limited to, trade or economic sanctions laws or regulations of the United Nations, European Union, Switzerland, United Kingdom, Canada or the United States Treasury Department's Office of Foreign Assets Control.

 **Please read this Notice carefully.**

If it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated any applicable trade or economic sanctions laws or regulations, including but not limited to those of the United Nations, European Union, Switzerland, United Kingdom, Canada or the United States Treasury Department's Office of Foreign Assets Control, this insurance will be considered a blocked or fro-zen contract and all provisions of this insurance are immediately subject to restrictions. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from the applicable regulator. Other limitations on the premiums and payments also apply.

EIL-CWN010A-1 1020    ©Everest Reinsurance Company, 2020



## IN WITNESS

IN WITNESS WHEREOF, this policy is signed by officer of the Company shown on the declarations page of this policy.

For: Everest National Insurance Company

President

Secretary

© Everest Reinsurance Company, 2019



**EXHIBIT 1**

**LABOR ADVOCATE**
— LAW FIRM —

2026-41505 / Court: 157

November 25, 2025

Everest National Insurance Company
100 Everest Way
Warren, NJ 07059
EverestInsuranceClaims@EverestRe.com
Via U.S. Mail and email to EverestInsuranceClaims@EverestRe.com

Your Insured: Moises Morales III
Date of Loss: December 19, 2023
File No. 13-4339

>    Re:    **Demand Arising From Cause No. 2023-71174;** *Thomas Winfield v. Ron Hoover A.K.A. Ron Hoover Marine Centers and John Babcock, 61st Judicial District Court, Harris County, Texas*

Dear Adjuster:

Please be advised that our firm has been retained to represent the interests of Mr. Winfield for injuries sustained as a result of your insured's malpractice. We ask that all future correspondence or verbal communication be directed to our office and that there be no direct contact with our client in this matter. Please be advised our office does not grant recorded statements. If you have obtained a recorded statement of our client prior to our representation, we ask that a copy of the original tape or a transcribed copy of that statement be forwarded to our office on an immediate basis.

The evidence is abundantly clear that numerous acts of negligence occurred after November 29, 2023, the date you claim is the day coverage begins. For example, your insured negligently failed to file a motion to reconsider on December 19, 2023. Further, a motion for new trial should have been filed on or before December 19, 2023. Either of these actions would have preserved the trial court's plenary power. Then, a notice of appeal of the judgment with prejudice should have been filed by December 19, 2023 to preserve appeal. Finally, a bill of error should have been filed before the case was refiled on January 22, 2024 by new counsel Gallo Uwalaka Personal Injury Attorneys, PLLC.

Labor Advocate Law Firm                          4900 Fournace Place Suite 500-C30
ccastanon@laboradvocatelaw.com                              Bellaire, TX 77401
www.LaborAdvocateLaw.com                              713-588-LALF (5253)



Prior to that filing, but after November 29, 2023, Mr. Morales should have discovered and communicated the erroneous filing to Gallo Uwalaka. We believe other negligent acts and omissions occurred after November 29, 2023. Each one of these acts or omissions, by itself, constitutes malpractice and negligence.[1]

We would also advise that it is our intention to obtain an assignment of Mr. Morales' first party claim against your agency and pursue it directly to assure our client's prompt and likely recovery. Therefore, if you continue to deny coverage, we intend to separately pursue it and seek attorney's fees. Your insured has graciously and truthfully admitted to liability. Therefore, given the negligent acts and omissions that occurred after November 29, 2023, continued denial would give rise to a bad faith claim, in addition to a traditional breach of contract claim.

During the pendency of this claim there will undoubtedly be medical and, perhaps, psychological information and documentation that you and your company will receive regarding our client. We expect, and require, that all information and all documentation will be kept strictly confidential and will not be revealed to anyone without express written and notarized permission from our client.

Respectfully,

Cynthia Castanon

CC:    Client
       Moises Morales, III

Unofficial Copy Office of Marilyn Burgess District Clerk

---

[1] Out of abundance of caution, we have agreed with your insured to extend a theoretical statute of limitations for the act occurring on November 20, 2023, but that should not in any way be construed as the only date negligent acts occurred.

Labor Advocate Law Firm                                          4900 Fournace Place Suite 500-C30
ccastanon@laboradvocatelaw.com                                              Bellaire, TX 77401
www.LaborAdvocateLaw.com                                                   713-588-LALF (5253)

# EXHIBIT "2"

6/29/2026 4:03 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 116735091
By: Iris Collins
Filed: 6/29/2026 4:03 PM

## CAUSE NO. 2026-41505

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **OF HARRIS COUNTY, TEXAS** |
| | § | |
| **EVEREST NATIONAL INSURANCE COMPANY** | § | |
| | § | |
| | § | |
| **Defendant.** | § | **157TH JUDICIAL DISTRICT** |

**PLAINTIFFS' FIRST AMENDED PETITION**

Plaintiff Thomas Winfield ("Plaintiff") files this original petition complaining of Defendant Everest National Insurance Company ("Everest") and would respectfully show as follows:

**I.     DISCOVERY CONTROL PLAN**

1.     Based upon this Petition, this case should be controlled by a discovery control plan Level 2 pursuant to the Texas Rules of Civil Procedure, Rule 190.3. This is not an expedited action; Plaintiffs have suffered and sustained pecuniary losses of more than $250,000.

**II.     PARTIES**

2.     Plaintiff is an individual residing in Nashville, Tennessee.  Plaintiff is the rightful assignee of a claim held by Moises Morales III and Morales Law a company registered in Texas.

3.     Defendant Everest National Insurance Company, ("Everest") is a New Jersey insurance company with its mailing address of PO Box 830 Liberty Corner, NJ 07938-0830. Everest National Insurance Company has registered with the Texas Department of Insurance to do business in this state and has established Corporation Service at 211 E 7th Street, Suite 620, Austin, Texas 78701-3218 as its agent for service of process.

Certified Document Number: 127446877 - Page 1 of 9

1

### III.   JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition arose, in whole or in part, in Texas and the amount in controversy exceeds the minimum jurisdictional limits of this Court.

5.      This Court has personal jurisdiction over Defendant because the acts and/or omissions complained of herein occurred in Texas, each Defendant does business in Texas and/or committed a tort, in whole or in part in Texas.

6.      Venue is properly laid in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code Section 15.002 because that is the county where all or a substantial part of the events or omissions giving rise to the claim occurred or where the Defendants have their principal office or residence.

### IV.   INTRODUCTION AND FACTUAL BACKGROUND

7.      Plaintiff Thomas Winfield engaged Morales Law to prosecute claims against John Babcock related to injuries resulting from a motor vehicle accident that occurred on September 26, 2023. Morales represented Plaintiff in the case styled Cause No. 2023-71174; *Thomas Winfield vs Ron Hoover Marine Center and John Babcock*; In the 61st Judicial District Court of Harris County, Texas.

8.       On behalf of Winfield, Morales filed a lawsuit against Ron Hoover Marine Center and John Babcock for personal injuries.[1] Plaintiff later retained Gallo Uwalaka Personal Injury Attorneys, PLLC ("Gallo Uwalaka") to represent him for the same accident.

---

[1] *See Exhibit A*. (Petition filed by Morales on October 12, 2023 at 6:16 pm).

9.      On November 20, 2023, Mr. Morales filed a notice of non-suit **with prejudice** which became effective as soon as it was filed.[2] Thus, unbeknownst to Plaintiff's new firm, Mr. Morales dismissed all of Plaintiff's claims permanently.   According the Court's docket, the Order was effective November 20, 2023.  This mistake would have been correctable but-for subsequent acts and omissions of negligence by Morales. The court still had plenary power over the non-suit for 30 days.  Morales had 30 days to either appeal or ask for a modification within the Court's plenary powers.  Morales had weeks to learn of the mistake and review what had been filed after the filing was accepted by the clerk.

10.     When Morales had learned of his mistakes, he filed a claim with Everest.  By filing an insurance claim and admitting that mistakes were made, Morales was trying to do the right thing to ensure the loss to the client was covered.  Attorneys make mistakes too and that is exactly what malpractice coverage is for.

11.     However, Everest refuses to cover the incident because according to them, the "Policy Period" begins November 29, 2023, which is nine days after the notice of non-suit.

12.     Plaintiff does not accept Everest's position regarding the Policy Period, but even if the dates are correct, many omissions after that date are independent acts or omissions which breach the duty of care an attorney owes a client.

13.     Morales should have reviewed the filings in the coming weeks after the November 20 non-suit to determine if an error was made or if an appeal of any order was necessary.   The deadline to make these reviews and decisions would be well after November 29, in late December of that same year.

---

[2] **See Exhibit B**. (Non-Suit with Prejudice).

Certified Document Number: 127446877 - Page 3 of 9

14.     By late December, Morales should have determined that relief from the judgment was necessary.

15.     Morales should have appealed within 30 days of the order granting non-suit.

16.     Morales should have filed motion for new trial or a motion to alter or amend the judgment granting the non-suit within the requisite 30-day period.

17.     All of these omissions were set in stone in late December of 2023, well after November 29, 2023.   All these acts by themselves constitute a breach of the duty an attorney owes a client.

18.     Morales eventually filed a Motion to Reconsider Dismissal of Cause No. 2023-711174.[3]  The Motion was passed by the Court for lack of plenary power.[4] In a final attempt to reinstate the case, Morales also filed this Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order[5], however said motion was also denied.[6]  These acts were each negligent because they were untimely.

19.     Consequently, a new petition that was filed on behalf of Winfield by the Gallo Uwalaka Personal Injury Firm was dismissed and Plaintiff was unable to prosecute his claims due to Morales' mistakes. A Stower's Demand was sent out to the Defendant's in the underlying case, however, the insurance rejected the demand stating the claims had been dismissed with prejudice. The Stower's Demand sought a settlement for policy limits, which in the case was $1,000,000.00. However, because the claims were dismissed with prejudice, Plaintiff's new attorneys were not able to negotiate and obtain a settlement of any kind for Plaintiff.

---

[3] *See Exhibit C*. (Morales Motion to Reconsider Dismissal).
[4] *See Exhibit D*. (Order Denying Motion to Reconsider).
[5] *See Exhibit E* (Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc).
[6] *See Exhibit F (*Order Denying Motion to Correct).

4

Certified Document Number: 127446877 - Page 4 of 9

20.     Morales admits his mistake and error.  However, when he approached his insurance company Everist, Everist denied coverage entirely for the error / omission of Morales.

21.     Therefore, in order to make Plaintiff whole, Morales entered into a written assignment of his contractual claim against Everist to Plaintiff.  **Exhibit G**.

22.     Everist claims that the entirety of the claims must be denied because some potential errors or omissions occurred before the alleged "Policy Period."  However, this is incorrect because each error and omission is a separate cause of action and insurable event.  Each act was a different act or omission that occurred in a different context on a different date.  The fact that they all happened to the same victim does not mean they are a single act.  Each by itself is grounds for liability.  All of them are admitted by Morales and none are disputed by Morales.

## V.     CAUSE OF ACTIONS

23.     Therefore, it has become necessary to bring this suit to collect a legal and equitable debt of money damages owing to Plaintiff due to the Defendants' failure to insure, which constitutes breach of contract and bad faith.

### A.  **Breach of Contract**

24.     Plaintiff re-alleges the allegations set forth in the preceding paragraphs.

25.     As stated above, Plaintiff Thomas Winfield engaged Morales and Morales Law to prosecute claims related to injuries resulting from a motor vehicle accident that occurred on September 26, 2023. Thus, Plaintiff and Defendants established an attorney-client relationship.

26.     Morales does not dispute that he made a professional mistake amounting to malpractice, nor does he dispute that some errors were committed after the date insurance became effective.

Certified Document Number: 127446877 - Page 5 of 9

27.    Morales admits that he failed to timely file a motion to correct a mistaken filing. Morales admits that he failed to review filings to determine if any corrections were necessary. Morales admits that these mistakes breached the standard of care owed to the client, and that a malpractice claim should property be submitted to the insurer in order to protect the client.

28.    Morales did in fact submit a claim to the insurer under a valid and binding contract attached as **Exhibit H**.

### B. <u>Bad Faith</u>

29.    Plaintiff re-alleges the allegations set forth in the preceding paragraphs.

30.    Texas recognizes bad faith in both the common law and by statute under Chapter 541 of the Texas Insurance Code.

31.    Because there is no reason to dispute the admitted acts or omissions occurring during the coverage period and giving rise to a claim for liability, the denial by Defendant was made in bad faith.

32.    As such, the denial was not part of good faith and fair dealing. The denial placed the interests of the insurer over the insured.

33.    The failure to consider undisputed and undenied acts or omissions *after* an insuring period is a refusal to investigate and refusal to provide a reasonable explanation. Instead, it is an attempt to deceptively interpret coverage language to escape coverage in what should obviously be a covered event. This is the entire reason lawyers have malpractice insurance.

34.    Also, malpractice insurance payments are in the best interest of the public and the marketplace as well. Events of loss based on mistake and malpractice concentrate risk on the unfortunate victims, whereas when claims are paid out the risk of professional services is shared with the premium-paying public.

Certified Document Number: 127446877 - Page 6 of 9

6

## VI.    ATTORNEY FEES

35.    Plaintiff made timely demand upon Defendants.    **Exhibit I**. However, to date, Defendants have failed to comply with Plaintiff's demand. As such, Plaintiff has been forced to retain the services of Labor Advocate Law Firm to bring suit against Defendants and to obtain all other relief available under appliable law. Accordingly, pursuant to Chapters 37 and 38 of the Texas Civil Practice and Remedies Code and other applicable law, Plaintiff is therefore entitled to recover its reasonable and necessary attorney's fees incurred.

## VII.    DAMAGES

36.    Regarding the causes of action and conduct alleged above, Plaintiff has sustained actual, consequential or special damages of approximately $1,000.000.00 that were proximately caused by Defendants' conduct and that are within the jurisdictional limit of this Court. These damages consist of policy limits available in the underlying Defendants' insurance policy. Further, Plaintiff had incurred over $57,000.00 in medical treatment, he also suffered emotional distress, pain and suffering, disfigurement from the burns caused by the accident, and loss of enjoyment of life. But for Defendant Morales and Morales Law's conduct, Plaintiff would have been able to obtain a favorable settlement or verdict. However, due to Defendants' conduct Plaintiff's claims were permanently dismissed, and Plaintiff was unable to recover any kind of settlement for his injuries.

## VIII.    DISCOVERY AND TOLLING RULES/AGREEMENT

37.    To the extent necessary, Plaintiff affirmatively plead the discovery rule and the *Hughes* tolling rule to any defense of limitations asserted by Defendants. Under the *Hughes* tolling rule, the statute of limitations on the malpractice claim is tolled until all appeals on the underlying claim are exhausted or the litigation is finally concluded.

Certified Document Number: 127446877 - Page 7 of 9

## IX.    JURY DEMAND

38.    Plaintiff desires to have a jury decide this case and makes this formal request pursuant to Texas Rule of Civil Procedure 216. This request is filed more than thirty days before this case has been scheduled for trial and all fees have been paid.

## X.    NOTICE OF INTENT TO USE PRODUCED DOCUMENTS

39.    Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, each party is hereby given notice of Plaintiffs' intent to use any and all documents produced by any and all parties at any pretrial hearing, deposition, proceeding, the trial of this matter, or any combination thereof.

## PRAYER

WHEREFORE, Plaintiff prays that after trial herein, that judgment be entered against Defendants as prayed for, that costs of court be taxed against Defendants, that Plaintiff be given prejudgment as well as post judgment interest, and for such other and further relief, at law and in equity to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

**LABOR ADVOCATE LAW FIRM**

/s/        *Jack J. Nichols*
By: Jack J. Nichols
**Lead Counsel: Cynthia Castanon**
Texas State Bar No. 24093492
Jack J. Nichols
Texas State Bar No. 24123945
4900 Fournace, Suite 500-C30
Bellaire, Texas 77401
Telephone: 713-952-2500
Electronic Service:
eservice@laboradvocatelaw.com

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 127446877 - Page 8 of 9

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Eservice LALF on behalf of Cynthia Castanon
Bar No. 24093492
eservice@laboradvocatelaw.com
Envelope ID: 116735091
Filing Code Description: Amended Filing
Filing Description: Plaintiff's First Amended Petition
Status as of 6/29/2026 4:33 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| eservice LALF | | eservice@laboradvocatelaw.com | 6/29/2026 4:03:03 PM | SENT |

Certified Document Number: 127446877 - Page 9 of 9



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   August 10, 2026

Certified Document Number:        127446877 Total Pages: 9

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Case 4:26-cv-06544    Document 1-1    Filed 08/11/26 in TXSD    Page 86 of 169

10/12/2023 6:16 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 80551653
By: Akpobari Pobari
Filed: 10/12/2023 6:16 PM

2023-47150 / Court: 157

CAUSE NO. _____

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| **RON HOOVER A.K.A. RON** | § | |
| **HOOVER MARINE CENTERS** | § | **HARRIS COUNTY, TEXAS** |
| **AND** | | |
| **JOHN BABCOCK** | | |
| *Defendants* | | |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, Thomas Winfield, files this Original Petition against Defendants, Ron Hoover

A.K.A Ron Hoover Marine Centers and John Babcock and shows the Court as follows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

1.Plaintiff intends to conduct discovery under TRCP 169 and 190.2 because the suit

involves monetary relief totaling $1,000,000.00, including court costs, prejudgment interest and

attorney's fees.

### II.
### PARTIES AND SERVICE

Plaintiff, Thomas Winfield, is an Individual who resides in Harris County, Texas.

Ron Hoover A.K.A. Ron Hoover Marine Centers, is a limited liability company with its

principal office and corporate headquarters located in Aransas County, Texas. Defendants may be

served with process by serving its registered agent for service, Jennifer Tillinghast, at 1510 W

Market St., Rockport, Texas 78387 or wherever they may be found and Plaintiff request a citation

be issued for this Defendant at this time.

Defendant, John Babcock (hereinafter, "Defendant") is an individual whose last known address 10755 Ocelot Lane; Houston, Texas 77034. Defendant may be served at this address or wherever he may be found. Plaintiff request a citation be issued for this Defendant at this time.

### III.
### JURISDICTION AND VENUE

3.1     Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3) because Defendant, John Babcock and Plaintiff, Thomas Winfield maintain their residence in Harris County.

3.2     Pursuant to Texas Rule of Civil Procedure 47, Plaintiff specifies that he is seeking monetary relief totaling $1,000,000.00, including court costs, prejudgment interest and attorney's fees.    Further, the amounts of the Plaintiff's damages are in excess of the jurisdictional minimums of this Court.  Many elements of damage, including pain, suffering and mental anguish in the past and future, past and future physical impairment, and future lost earning capacity, cannot be determined with mathematical precision.  Furthermore, the determination of many of these elements is peculiarly within the province of the jury. Plaintiff does not at this time seek any certain amounts of damages for any of these particular elements of damage but would instead rely upon the collective wisdom of the jury to determine an amount that would fairly and reasonably compensate her.  However, Plaintiff

2

reserves the right to either file a trial amendment or an amended pleading on this issue should subsequent evidence show this figure to be too high or too low.

3.3    The Court has jurisdiction over the controversy because the suit arises under the laws of the State of Texas, and because Plaintiff suffered damages within the jurisdictional limits of the Court.

**IV.**
**FACTS**

4.1    On or about September 26, 2023, Plaintiff was traveling Northbound on lane number one the block of the Gulf Freeway Service Road when Defendant, John Babcock in his work truck for Ron Hoover A.K.A. Ron Hoover Marine Centers struck Plaintiff's vehicle causing bodily injuries. Furthermore, Defendant, John Babcock was issued a citation; determined at fault for failure to yield right of way.

**V.**
**NEGLIGENCE CLAIMS AGAINST DEFENDANT**

Defendants had a duty to exercise a degree of care that reasonably careful person would use to avoid harm to others under circumstances similar to those described herein.

Plaintiff's injuries were proximately caused by Defendants' negligent, careless and reckless disregard of said duty.

3

The negligent, careless and reckless disregard of Defendants consisted of, but is not limited to, the following acts and omissions:

a.      In that Defendant, John Babcock failed to keep such distance away from Plaintiff's motor vehicle as a person using ordinary prudent care would have done;

b.      In that Defendant, John Babcock failed to keep a proper lookout for Plaintiff's safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances;

c.      In that Defendant, John Babcock failed to turn his motor vehicle in an effort to avoid the collision complained of;

d.      In that Defendant, John Babcock failed to stop his motor vehicle in an effort to avoid the collision complained of;

e.      In that Defendant, John Babcock was operating his motor vehicle at a rate of speed which was greater than that would have been operated by a person of ordinary prudence under the same or similar circumstances;

f.      In that Defendant, John Babcock failed to apply his brakes to his motor vehicle in a timely and prudent manner in order to avoid the collision in question; and

g.      In that Defendant, John Babcock failed to operate a motor vehicle as a person using ordinary prudent care would have done.

h.      In that Defendant, John Babcock failed to yield right of way striking Plaintiff's vehicle.

4

Unofficial Copy Office of Marilyn Burgess District Clerk

Each of these acts and omissions, singularly or in combination with others, constituted negligence and negligence per se.  Such acts and omissions proximately caused the occurrence made the basis of this suit and the resulting serious bodily injuries and permanent damages suffered by Plaintiff.

## VI.

## DAMAGES

As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff was caused to suffer serious bodily injuries, and to incur the following damages for which Plaintiff seeks monetary relief:

A. Reasonable medical care and expenses in the past;

B. Physical pain and suffering in the past;

C. Physical pain and suffering in the future;

D. Physical impairment in the past;

E. Physical impairment which will, in all reasonable probability, be incurred in the future;

F. Mental anguish in the past; and

G. Mental anguish in the future.

5

## VII.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII.

## REQUIRED DISCLOSURE

Pursuant to Texas Rule of Civil Procedure 194(a), each Defendants are required to disclose, within thirty (30) days of the filing of the first answer, the information or material described in Rule 194.2(b)1-12.  Any Defendant that is served or otherwise joined after the filing of the first answer must make their initial disclosures within thirty (30) days after being served or joined.

## IX.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff have and recover:

(a) Actual and statutory damages;

(b) Pre-judgment interest at the highest legal rate;

6

(c) Taxable costs of Court, to include Plaintiff's reasonable and necessary attorney's fees;

(d) Post-judgment interest at the highest legal rate; and

(e) Such other and further relief to which Plaintiff may be justly entitled, at law or in equity.

Respectfully submitted,

MORALES LAW FIRM

/S/ MOISES MORALES

BY: _____

Moises Morales III
Texas State Bar Number: 24098137
Email: morses@moraleslawfirm.net
Email: litigation@moisesmoraleslaw.com
4201 Main Street, Suite 200-247
Houston, Texas 77002
Tel: 832-494-5282
Fax: 832-202-2747
ATTORNEYS FOR PLAINTIFF

7

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 80551653
Filing Code Description: Petition
Filing Description: Petition ($350.00)
Status as of 10/13/2023 7:40 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 10/12/2023 6:16:15 PM | SENT |

11/20/2023 11:58 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81813014
By: Tiffany Jefferson
Filed: 11/20/2023 11:58 AM

## 2026-41505 / Court: 157

### CAUSE NO. 2023-71174

| | | |
|---|---|---|
| THOMAS WINFIELD<br>*Plaintiff* | § <br> § <br> § | IN THE DISTRICT COURT OF |
| VS. | § <br> § | HARRIS COUNTY, TEXAS |
| RON HOOVER A.K.A RON HOOVER MARINE CENTERS AND JOHN BABCOCK<br>*Defendant* | § <br> § <br> § | 61ST JUDICIAL DISTRICT |

### PLAINTIFF'S NOTICE OF NON-SUIT

COMES NOW, Thomas Winfield, Plaintiff in the above-styled matter, and hereby gives notice to the Court that, pursuant to TEX. R. CIV. P. 162, Plaintiff hereby non-suits all claims and causes of action against Defendants, Ron Hoover A.K.A Ron Hoover Marine Centers and John Babcock, with prejudice to refiling of the same, effective immediately upon the filing of this Notice. Each party shall bear their own costs of court.

No Order is required for a Non-Suit to be effective, pursuant to *Epps v. Fowler,* 351 S.W.3d 862, 868 (Tex. 2011). This filing hereby ends the above claims, without need of a signed Order.

Respectfully submitted,

**MORALES LAW FIRM**

By:     */s/ Moises Morales*
Moises Morales III
State Bar No. 24098137
4201 Main Street, Suite 200-247
Houston, Texas 77002
Tel:    (832) 245-5597
Fax:    (832) 202-2747
ECF:  litigation@moisesmoraleslaw.com

**ATTORNEYS FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on the 17th day of November, 2023.

*VIA E-service:*
Wesson H. Tribble
State Bar No. 20213960
wtribble@tribblelawfirm.com
Christopher M. Ervin
State Bar No. 24040872 cervin@tribblelawfirm.com
6371 Richmond Ave
Houston, Texas 77057
Telephone: (713) 622-0444
Facsimile: (713) 622-0555
**ATTORNEY FOR DEFENDANTS, RON HOOVER MARINE, INC. A.K.A. RON HOOVER RV AND MARINE CENTERS and JOHN BABCOCK**


*/s/ Moises Morales*
Moises Morales

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 81813014
Filing Code Description: Notice
Filing Description: PLAINTIFF&#8217;S NOTICE OF NON-SUIT
Status as of 11/20/2023 12:11 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 11/20/2023 11:58:09 AM | SENT |
| Moises Morales | | litigation@moisesmoraleslaw.com | 11/20/2023 11:58:09 AM | SENT |
| Moises MoralesIII | | moises@moisesmoraleslaw.com | 11/20/2023 11:58:09 AM | SENT |
| Moises Morales | | moises@moraleslawfirm.net | 11/20/2023 11:58:09 AM | SENT |
| Christopher Ervin | | cervin@tribblelawfirm.com | 11/20/2023 11:58:09 AM | SENT |
| Sana Mehmood | | smehmood@tribblelawfirm.com | 11/20/2023 11:58:09 AM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 11/20/2023 11:58:09 AM | SENT |

8/23/2024 5:08 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 91283433
By: Tiffany Jefferson
Filed: 8/23/2024 5:08 PM

**2026-41505 / Court: 157**

**CAUSE NO. 2023-711174**

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **61ST JUDICIAL DISTRICT** |
| | § | |
| **RON HOOVER A.K.A RON** | § | |
| **HOOVER MARINE CENTERS AND** | § | **HARRIS COUNTY, TEXAS** |
| **JOHN BABCOCK** | | |
| *Defendants* | | |

## MOTION TO RECONSIDER DISMISSAL

**TO THE HONORABEL JUDGE OF THIS COURT:**

Now Comes, Attorney, Moises Morales, III, hereby submits this Motion to Reconsider the Court's order dated November 20, 2023, which granted the Notice of Non-Suit with Prejudice. This Motion is filed to request that the Court reconsider and amend the order to reflect a Notice to Non-Suit without Prejudice.

## I. INTRODUCTION

On November 20, 2023, Attorney Moises Morales inadvertently filed a Notice of Non-Suit "with prejudice of filing the same." This was never the intention. Mr. Morales intended to file the Notice of Nonsuit "without" prejudice of filing the same. This was a clearly a clerical error as the Collision made basis of the suit had only occurred less than 2 months prior and the Plaintiff was probably still treating for his injuries at that time. This Motion is filed to correct that mistake and we respectfully request that the Court reconsider its dismissal based on the grounds outlined below.

## II. GROUNDS FOR RECONSIDERATION

1. **Clerical Error**

The filing of a Motion to Non-Suit with Prejudice was a clerical error. My intention

Unofficial Copy Office of Marilyn Burgess District Clerk

was to request a Non-suit without Prejudice, which would allow for the possibility of refiling the case in the future. The mistaken request for dismissal with prejudice was not aligned with my litigation strategy and was submitted due to failure to review the document prior to submission and clerical error.

### 2. Interest of Justice

Granting a non-suit without prejudice is consistent with the interests of justice. Allowing the dismissal without prejudice will not preclude the Plaintiff from pursuing the case in the future should new evidence or circumstances arise. This aligns with the principle of fairness and the appropriate management of legal claims. Fairness and the interest of justice has always been at the heart of the judiciary.

### 3. Absence of Prejudice to the Defendant

The Defendant will not suffer undue prejudice if the Court grants this motion to amend the previous order. A dismissal without prejudice does not affect the Defendant's substantive rights and allows for an equitable resolution of the case if the Plaintiff decides to refile.

## III. LEGAL STANDARD FOR RECONSIDERATION

Under Texas Rule of Civil Procedure 316, the Court has authority to correct clerical errors in their judgments or orders and does not impose a time limit for making such corrections. The Court retains jurisdiction to amend clerical errors in the original order at any time.

Under Texas Rule of Civil Procedure 329b, the court has the authority to modify, correct, or reform its judgment upon motion if a clerical error or inadvertent mistake is identified. In this case, reconsideration is warranted due to the clerical error in the initial filing. This rule also implicitly supports the Court has jurisdiction to amend the order.

## IV. REQUEST FOR RELIEF

Based on the grounds outlined above, I respectfully request that the Court:

1. Reconsider and vacate the order dated November 20, 2023, granting the Motion to Non-Suit With Prejudice.

2. Amend the order to reflect a Motion to Non-Suit Without Prejudice.

3. Provide any further relief that the Court deems just and appropriate.

## IV. CONCLUSION

I respectfully submit that correcting this clerical error and granting the Motion to Non-Suit Without Prejudice will serve the interests of justice and ensure fair handling of the case. I request that the Court grant the Amended Order on the day of Notice of Submission on September 2, 2024, at 8:00 a.m. for this Motion and allow an opportunity to present further arguments if necessary.

Respectfully submitted,

**MOISES MORALES LAW**

By:     /s/ Moises Morales
        Moises Morales III
        State Bar No. 24098137
        4201 Main Street, Ste. 200-247
        Houston, Texas 77002
        Tel:    (832) 245-5597
        Fax:    (832) 202-2747
        ECF:  litigation@moisesmoraleslaw.com

3

Unofficial Copy Office of Marilyn Burgess District Clerk

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in compliance with Rules 21 of the Texas Rules of Civil Procedure on the 23rd day of August, 2024.

/s/ Moises Morales
Moises Morales

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 91283433
Filing Code Description: Motion (No Fee)
Filing Description: MOTION TO RECONSIDER DISMISSAL
Status as of 8/26/2024 8:13 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 8/23/2024 5:08:36 PM | SENT |
| Moises Morales | | litigation@moisesmoraleslaw.com | 8/23/2024 5:08:36 PM | SENT |
| Moises MoralesIII | | moises@moisesmoraleslaw.com | 8/23/2024 5:08:36 PM | SENT |
| Moises Morales | | moises@moraleslawfirm.net | 8/23/2024 5:08:36 PM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |
| Trey Hardin | | mhardin@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |
| Tiffany Peters | | tpeters@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 8/23/2024 5:08:36 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

**EXHIBIT D**

9/18/2024 10:01 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92155376
By: Tiffany Jefferson
Filed: 9/18/2024 10:01 AM

# 2026-41505 / Court: 157

### CAUSE NO. 2023-71174

Pgs-1

ENPTY

| | | |
|---|---|---|
| THOMAS WINFIELD | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| RON HOOVER A.K.A RON | § | |
| HOOVER MARINE CENTERS | § | 61st  JUDICIAL  DISTRICT |
| AND JOHN BABCOCK | § | |

### ORDER DENYING MOISES MORALES' MOTION TO CORRECT
### A CLERICAL OMISSION/MISTAKE NUNC PRO TUNC IN A PREVIOUS ORDER

On this day, came on to be considered the above and foregoing, Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order, and Defendant's response, filed herein. Having considered the foregoing, the arguments of counsel, and the applicable law, this Honorable Court is of the opinion that Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order is DENIED.

SIGNED this _____ day of _____, 2024.

Signed:
9/24/2024

_____
JUDGE PRESIDING

Unofficial Copy Office of Marilyn Burgess District Clerk

9/6/2024 10:00 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 91717196
By: Kathy Givens
Filed: 9/6/2024 10:00 AM

**EXHIBIT E**

## 2026-41505 / Court: 157

### CAUSE NO. 2023 - 711174

| | | |
|---|---|---|
| **THOMAS WINFIELD** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **61ST JUDICIAL DISTRICT** |
| | § | |
| **RON HOOVER A.K.A RON** | § | |
| **HOOVER MARINE CENTERS AND** | § | **HARRIS COUNTY, TEXAS** |
| **JOHN BABCOCK** | | |
| *Defendants* | | |

### MOTION TO CORRECT A CLERICAL OMISSION/MISTAKE *NUNC PRO TUNC* IN A PREVIOUS ORDER

Comes now Moises Morales III, in the above-captioned cause, and respectfully moves that this Court grant an order authorizing the Clerk to enter on the minutes of this Court an Order *nunc pro tunc,* and as grounds for this Motion will show the following:

1.    On November 20, 2023, Attorney Moises Morales inadvertently filed a Notice of Non-Suit "with prejudice of filing the same." This was never the intention. Mr. Morales intended to file the Notice of Nonsuit "without" prejudice of filing the same. This was a clearly a clerical error as the Collision made basis of the suit had only occurred less than 2 months prior and the Plaintiff was probably still treating for his injuries at that time. This Motion is filed to correct that clerical mistake. Because of a clerical error, the following omission was made in the Order: Moises Morales inadvertently filed a Notice of Nonsuit "with prejudice" when the nonsuit should have read "without prejudice."

2.    If the matter set forth above is not included in the Order of this Court, the relief intended cannot be secured.

Wherefore, Plaintiff respectfully moves the Court to correct the Notice of Nonsuit to reflect the Nonsuit language that should have "without prejudice of filing the same."

*- Signature on next page -*

Unofficial Copy Office of Marilyn Burgess District Clerk

Respectfully submitted,

**MOISES MORALES LAW**

By:     */s/ Moises Morales*
           Moises Morales III
           State Bar No. 24098137
           4201 Main Street, Ste. 200-247
           Houston, Texas 77002
           Tel:    (832) 245-5597
           Fax:    (832) 202-2747
           ECF:litigation@moisesmoraleslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record in compliance with Rules 21 of the Texas Rules of Civil Procedure on the 6th day of September, 2024.

*/s/ Moises Morales*
Moises Morales

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Moises Morales on behalf of Moises Morales
Bar No. 24098137
litigation@moisesmoraleslaw.com
Envelope ID: 91717196
Filing Code Description: Motion (No Fee)
Filing Description: Motion to Correct Clerical Omission Nunc Pro Tunc
Status as of 9/6/2024 10:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Moises Morales | 24098137 | litigation@moisesmoraleslaw.com | 9/6/2024 10:00:58 AM | SENT |
| Moises Morales | | litigation@moisesmoraleslaw.com | 9/6/2024 10:00:58 AM | SENT |
| Moises MoralesIII | | moises@moisesmoraleslaw.com | 9/6/2024 10:00:58 AM | SENT |
| Moises Morales | | moises@moraleslawfirm.net | 9/6/2024 10:00:58 AM | SENT |
| Trey Hardin | | mhardin@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Tiffany Peters | | tpeters@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Patricia Barnes | | pbarnes@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Wesson Tribble | | wtribble@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |
| Brenda Engelhardt | | bengelhardt@tribblelawfirm.com | 9/6/2024 10:00:58 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

9/18/2024 10:01 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92155376
By: Tiffany Jefferson
Filed: 9/18/2024 10:01 AM

## 2026-41505 / Court: 157

### CAUSE NO. 2023-71174

Pgs-1

ENPTY

| | | |
|---|---|---|
| THOMAS WINFIELD | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| RON HOOVER A.K.A RON | § | |
| HOOVER MARINE CENTERS | § | 61st  JUDICIAL DISTRICT |
| AND JOHN BABCOCK | § | |

### ORDER DENYING MOISES MORALES' MOTION TO CORRECT A CLERICAL OMISSION/MISTAKE NUNC PRO TUNC IN A PREVIOUS ORDER

On this day, came on to be considered the above and foregoing, Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order, and Defendant's response, filed herein. Having considered the foregoing, the arguments of counsel, and the applicable law, this Honorable Court is of the opinion that Moises Morales' Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order is DENIED.

SIGNED this _____ day of _____, 2024.

Signed:
9/24/2024

_____
JUDGE PRESIDING

Unofficial Copy Office of Marilyn Burgess District Clerk

## 2026-41505 / Court: 157

## ASSIGNMENT OF CLAIM

This Assignment of Claim (the "Assignment") is entered into as of _____ (the "Effective Date"), by and between Moises Morales III, an individual, and The Moises Morales Law Firm, a Texas law firm with its principal office at 4201 Main Street, Ste. 249, Houston, Texas 77002 (collectively, the "Assignors"), and Thomas Winfield, an individual residing in Nashville, Tennessee (the "Assignee").

## RECITALS

**WHEREAS**, the Assignors represented the Assignee in connection with certain personal injury claims arising from a motor vehicle accident that occurred on or about September 26, 2023 (the "Underlying Accident");

**WHEREAS**, disputes arose regarding the Assignors' representation of the Assignee, leading to potential claims by the Assignee against the Assignors for legal malpractice and related causes of action (the "Malpractice Claims");

**WHEREAS**, the parties have entered into a separate Settlement and Mutual Release Agreement dated as of even date herewith (the "Settlement Agreement"), pursuant to which the Malpractice Claims are being settled;

**WHEREAS**, the Assignors may have claims against Everest National Insurance Company or its affiliates (collectively, "Everest"), including but not limited to claims for insurance coverage, indemnity, bad faith, breach of contract, violations of the Texas Insurance Code, or other related claims arising from or related to Everest's handling, denial, or failure to provide coverage for the Malpractice Claims or any liability arising therefrom (collectively, the "Everest Claims");

**WHEREAS**, as partial consideration for the settlement of the Malpractice Claims, the Assignors desire to assign all of their right, title, and interest in the Everest Claims to the Assignee, in accordance with Texas law, including but not limited to Texas Property Code § 12.014 and common law principles governing assignments;

**WHEREAS**, this Assignment is intended to be an absolute and irrevocable transfer of the Everest Claims, enabling the Assignee to pursue and enforce the Everest Claims in his own name and for his own benefit, subject to the terms of the Settlement Agreement regarding application of proceeds;

**NOW, THEREFORE**, in consideration of the mutual promises contained in the Settlement Agreement, the releases therein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Assignment**. The Assignors hereby absolutely, irrevocably, and unconditionally assign, transfer, convey, and set over to the Assignee all of the Assignors' right, title, interest, and standing in and to the Everest Claims, including without limitation:

a. Any and all causes of action, demands, rights, remedies, and claims for damages, including compensatory, punitive, exemplary, statutory, or other damages;

1

b. Any rights to insurance proceeds, indemnity, or reimbursement under any applicable insurance policies issued by Everest;

c. Any claims for breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code (including Chapters 541 and 542), or other statutory or common law claims related to insurance handling;

d. All accrued interest, costs, expenses, attorneys' fees, and other recoveries permissible under law;

e. The right to file suit, negotiate, settle, compromise, or otherwise pursue the Everest Claims in the Assignee's own name, as if the Assignee were the original owner thereof. This Assignment is made without recourse and is intended to be a present, absolute transfer of all interests in the Everest Claims, vesting in the Assignee full authority to enforce the Everest Claims as the real party in interest, pursuant to Texas Rule of Civil Procedure 39 and applicable law.

**2. Consideration**. This Assignment is made in partial consideration for the Assignee's agreement to settle and release the Malpractice Claims as set forth in the Settlement Agreement. The parties acknowledge that this consideration is adequate and sufficient under Texas law.

**3. No Warranties or Representations**. The Assignors make no warranties or representations, express or implied, regarding the validity, enforceability, value, or merits of the Everest Claims, the existence or amount of any insurance coverage, or the likelihood of recovery. The Assignee accepts this Assignment "as is" and assumes all risks associated with pursuing the Everest Claims.

**4. Cooperation**. The Assignors agree to cooperate reasonably with the Assignee in the pursuit of the Everest Claims, including but not limited to: (a) providing relevant documents, records, and information in their possession or control; (b) executing any necessary affidavits, declarations, or instruments to effectuate this Assignment; (c) making themselves available for interviews, depositions, or testimony as reasonably requested; and (d) not taking any action that would interfere with or prejudice the Assignee's pursuit of the Everest Claims. The Assignee shall reimburse the Assignors for any reasonable out-of-pocket expenses incurred in providing such cooperation.

**5. Application of Proceeds**. Any proceeds recovered from the Everest Claims shall be applied in accordance with the terms of the Settlement Agreement and the Promissory Note executed pursuant thereto, including deduction of the Assignee's reasonable attorneys' fees and expenses incurred in pursuing the Everest Claims.

**6. Governing Law and Venue**. This Assignment shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of laws principles. Any dispute between Assignor and Assignee arising from this Assignment shall be resolved in accordance with the dispute resolution provisions of the Settlement Agreement, including mandatory mediation at the Texas Justice Center prior to litigation. Venue for any litigation shall be exclusively in the state or federal courts located in Harris County, Texas.

2

**7. Entire Agreement.** This Assignment, together with the Settlement Agreement, constitutes the entire understanding between the parties regarding the Everest Claims and supersedes all prior agreements or understandings. This Assignment may not be modified except in a writing signed by all parties.

**8. Severability.** If any provision of this Assignment is held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

**9. Authority.** Each party represents and warrants that it has full authority to enter into this Assignment and that the individual signing on its behalf is duly authorized.

**10. Counterparts and Electronic Signatures.** This Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Electronic signatures shall be binding as originals.

**IN WITNESS WHEREOF**, the parties have executed this Assignment as of the Effective Date.

**ASSIGNORS:**

_Moises Morales_

Moises Morales III, Individually

THE MOISES MORALES LAW FIRM

By: _Moises Morales_

Moises Morales III, Owner and Authorized Signatory

**ASSIGNEE:**

_Thomas Winfield_

Thomas Winfield

3

## ACKNOWLEDGMENT FOR ASSIGNORS

STATE OF TEXAS    §
         §
COUNTY OF HARRIS   §

This instrument was acknowledged before me on ___1/21/26___ (date) by Moises

Morales III, individually and as Owner and Authorized Signatory of The Moises Morales Law

Firm.

_____
Notary Public, State of Texas
Printed Name: ___Mona Miles___
My Commission Expires: 2/01/2028
(Notarial Seal)

Unofficial Copy Office of Marilyn Burgess District Clerk

MONA MILES
NOTARY PUBLIC
STATE OF TEXAS
ID. 10605419
EXP. 02-01-2028

4

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 7F73522B-DE6A-45D6-9C67-72462052EC69 | | Status: Completed |
| Subject: 26_01_21 Winfield Assignment of Claim [morales signed].pdf | | |
| Source Envelope: | | |
| Document Pages: 4 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Thomas Winfield |
| AutoNav: Enabled | | tjwinfield1995@gmail.com |
| EnvelopeId Stamping: Disabled | | IP Address: 73.136.175.5 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Thomas Winfield | Location: DocuSign |
| 1/28/2026 11:02:35 AM | tjwinfield1995@gmail.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Thomas Winfield<br>tjwinfield1995@gmail.com<br>Security Level: Email, Account Authentication (None) | *[drawn signature]*<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 73.136.175.5<br>Signed using mobile | Sent: 1/28/2026 11:02:36 AM<br>Viewed: 1/28/2026 11:02:40 AM<br>Signed: 1/28/2026 11:04:29 AM<br>Freeform Signing |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via Docusign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 1/28/2026 11:02:36 AM |
| Certified Delivered | Security Checked | 1/28/2026 11:02:40 AM |
| Signing Complete | Security Checked | 1/28/2026 11:04:29 AM |
| Completed | Security Checked | 1/28/2026 11:04:29 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

Unofficial Copy Office of Marilyn Burgess District Clerk



**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY**

## 2026-41505 / Court: 157

### DECLARATIONS

**THIS IS A CLAIMS-MADE POLICY AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER PURSUANT TO THE TERMS HEREIN.  CLAIM EXPENSES SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS AND MAY COMPLETELY EXHAUST THE POLICY LIMITS.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

| NAMED INSURED AND ADDRESS | INSURER |
|---|---|
| **ITEM 1**<br>Morales Law Firm<br>4201 Main St<br>Ste. 200-247<br>Houston, TX 77002 | (hereinafter, "Insurer")<br>Everest National Insurance Company<br>100 Everest Way<br>Warren, NJ 07059 |
| **POLICY NUMBER** | **PRODUCER** |
| EML0050315-231 | Embroker Insurance Services, LLC<br>5214F Diamond Heights Blvd.<br>San Francisco, CA 94131 |

**ITEM 2**      POLICY PERIOD:      FROM  11/29/2023  TO  11/29/2024
12:01 A.M. LOCAL TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE

**ITEM 3**      AGGREGATE LIMIT OF LIABILITY

**A.** for the Policy Period (including Claim Expenses): $1,000,000
**B.** Each Claim (including Claim Expenses):  $1,000,000

**ITEM 4**      DEDUCTIBLE: $2,500

**ITEM 5**      COVERAGE EXTENSIONS

If any of the coverages described below are left blank or "N/A" is indicated, such coverage and any reference thereto is deleted from the Policy.

| COVERAGES | SUBLIMIT OF LIABILITY |
|---|---|
| **A.** CRISIS EVENT EXPENSES | $25,000 |
| **B.** DISCIPLINARY PROCEEDINGS EXPENSES<br>**1. Each Disciplinary Proceeding**<br>**2. All Disciplinary Proceeding Expenses** | <br>$25,000<br>$50,000 |
| **C.** SECURITY INCIDENT RESPONSE EXPENSES<br>**1. Each Security Incident**<br>**2. All Security Incident Response Expenses** | <br>$25,000<br>$25,000 |
| **D.** SUBPOENA COMPLIANCE EXPENSES | $25,000 |

Unofficial Copy Office of Marilyn Burgess District Clerk

LPL-CWF001A-1 0319                ©Everest Reinsurance Company, 2019                Page | 1

| E. LITIGATION PARTICIPATION EXPENSES | |
|---|---|
| 1. Per Day Litigation Participation Expenses | $500 |
| 2. Per Claim Litigation Participation Expenses | $25,000 |
| 3. All Litigation Participation Expenses | $50,000 |

**ITEM 6**   POLICY PREMIUM:  $2,332.00


TOTAL PREMIUM WITH TAXES & ASSESSMENTS: $2,332.00

**ITEM 7**   EXTENDED REPORTING PERIOD:

| **Additional Period:** | **Additional Premium:** |
|---|---|
| One (1) year | 100% of the Annualized Premium in ITEM 6 Above |
| Two (2) years | 150% of the Annualized Premium in ITEM 6 Above |
| Three (3) years | 200% of the Annualized Premium in ITEM 6 Above |
| Five (5) years | 250% of the Annualized Premium in ITEM 6 Above |

**ITEM 8**   RETROACTIVE DATE: 11/29/2023

**ITEM 9**   NOTICE TO INSURER:

Notice of Claims or Potential Claims:
Email: EverestInsuranceClaims@EverestRe.com
Fax: 1-866-283-4856
Telephone (toll free): 1-866-323-4501
Mail: Everest Insurance®
Attn: Lawyers' Professional Claims
100 Everest Way
Warren, NJ 07059

All Other Notices:
Email: Serviceteam@embroker.com
Telephone: 1-844-436-2765
Mail: Embroker Insurance Services LLC
5214F Diamond Heights Blvd.
Unit #1261
San Francisco, CA 94131

**ITEM 10**   FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE DATE THIS POLICY IS ISSUED:   See attached Schedule of Forms/Endorsements

**THIS DECLARATIONS PAGE, TOGETHER WITH THE APPLICATION, LAWYERS PROFESSIONAL LIABILITY POLICY AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.**

Unofficial Copy Office of Marilyn Burgess District Clerk

## SCHEDULE OF FORMS/ENDORSEMENTS

*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

| Form Name | Form Number | Endorsement No. |
|---|---|---|
| LAWYERS PROFESSIONAL LIABILITY POLICY DECLARATIONS | LPL-CWF001A-1 0319 | |
| LAWYERS PROFESSIONAL LIABILITY POLICY | LPL-CWF100A-1 0319 | |
| (TEXAS) CANCELLATION AND NONRENEWAL | EIL-TXF100A-1 0118 | 1 |
| TEXAS IMPORTANT NOTICE | EN-IL-5-TX-07-23 | 2 |
| (TEXAS) AMENDATORY | LPL-TXF200A-1 0319 | 3 |
| (TEXAS) EXTENDED REPORTING PERIOD | LPL-TXF202A-1 0319 | 4 |
| INDIVIDUAL INSURED RETROACTIVE DATE ENDORSEMENT | LPL-CWF316A-1 0319 | 5 |
| INSURING AGREEMENT AMENDED ENDORSEMENT | LPL-CWF317A-1 0319 | 6 |
| DEFENSE COUNSEL ENDORSEMENT | LPL-CWF341A-1 0319 | 7 |
| AMEND PREDECESSOR DEFINITION ENDORSEMENT | LPL-CWF347A-1 0622 | 8 |
| RELIANCE UPON OTHER APPLICATION ENDORSEMENT | LPL-CWF327B-1 0622 | 9 |
| ADVISORY NOTICE REGARDING TRADE OR ECONOMIC SANCTIONS | EIL-CWN010A-1 1020 | |

Unofficial Copy Office of Marilyn Burgess District Clerk

EIL CWF002A-1 0319          ©Everest Reinsurance Company, 2019

# EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY POLICY

**THIS IS A CLAIMS-MADE POLICY AND COVERS CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER PURSUANT TO THE TERMS HEREIN. AMOUNTS INCURRED AS CLAIM EXPENSES SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS INCLUDING JUDGMENTS AND SETTLEMENTS AND MAY COMPLETELY EXHAUST THE POLICY LIMITS.  PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance upon all information provided to and statements made to the Insurer, including those statements in the Application, which is made part hereof and deemed attached hereto in connection with the underwriting of this Policy, and subject to all terms, conditions and limitations of this Policy, including those in the Declarations, which is made part hereof, the Insurer and the Named Insured, on behalf of all Insureds, agree as follows:

**All definitions are in Section XX – DEFINITIONS below.**

## SECTION I – INSURING AGREEMENT

The Insurer shall pay on behalf of the Insured, all Loss in excess of the Deductible, resulting from any Claim first made against the Insured during the Policy Period and reported during the Policy Period or Extended Reporting Period, if exercised, arising out of a Wrongful Act committed on or after the Retroactive Date.

## SECTION II – COVERAGE EXTENSIONS

The Insurer shall reimburse the Insured for all  Expenses incurred by the Insured as referenced in Sections A-E below, subject to the respective Sublimits for each such Expense as set forth in ITEM 5 of the Declarations which shall be in addition to and not part of the Aggregate Limit of Liability referenced in ITEM 3.A of the Declarations. The Insurer shall have no duty to defend any Insured in connection with any Expense Event referenced in this Section.

### A. CRISIS EVENT EXPENSES

The Insurer will reimburse the Insured for all Crisis Event Expenses incurred as a result of all Crisis Events that first occur during the Policy Period, subject to the Sublimit of Liability referenced in ITEM 5.A of the Declarations.

### B. DISCIPLINARY PROCEEDINGS EXPENSES

The Insurer will reimburse the Insured for all Disciplinary Proceeding Expenses incurred in connection with all Disciplinary Proceedings first commenced against an Insured during the Policy Period, subject to the Sublimits of Liability referenced in ITEM 5.B of the Declarations. The Insurer shall not pay and there shall be no coverage for any fines, judgments, awards or settlements in connection with any Disciplinary Proceeding.

### C. SECURITY INCIDENT RESPONSE EXPENSES

The Insurer shall reimburse the Named Insured for any Security Incident Response Expenses incurred in connection with all Security Incidents first commenced against an Insured during the Policy Period, subject to the Sublimits of Liability referenced in ITEM 5.C of the Declarations.

### D. SUBPOENA COMPLIANCE EXPENSES

If the Insured gives the Insurer notice of a subpoena for documents or testimony arising out of Professional Services performed by such Insured, first received by the Insured during the Policy Period, the Insurer shall pay reasonable attorneys' fees and expenses associated with the response to such subpoena, subject to the Sublimit of Liability referenced in ITEM 5.D of the Declarations.

At the Insured's request, and upon the Insurer's receipt of a copy of the subpoena, the Insurer shall assign an attorney to provide advice regarding the production of documents, to prepare the Insured for sworn testimony and represent the Insured at their deposition, provided that: (i) the subpoena arises out of a lawsuit to which the Insured is not a party, and (ii) the Insured has not been engaged to provide advice or testimony in connection with the lawsuit. Coverage provided hereunder shall not include coverage for any Disciplinary Proceeding.

E.  **LITIGATION PARTICIPATION EXPENSES**

Upon the Insurer's request, the Insureds shall attend all Litigation Events relative to the defense of a Claim. The Insurer shall reimburse such Insureds for all Litigation Participation Expenses incurred in connection with such Litigation Events, subject to the Sublimits referenced in ITEM 5.E of the Declarations.

## SECTION III – EXCLUSIONS

This Policy does not apply to any Claim or Expense Event:

A.  **BENEFICIARY/DISTRIBUTEE**

based upon, arising out of or attributable to, or in consequence of any Loss sustained by an Insured in its capacity as a beneficiary or distributee of any trust or estate.

B.  **BODILY INJURY/PROPERTY DAMAGE**

based upon, arising out of or attributable to any Bodily Injury or Property Damage, provided this exclusion does not apply to Bodily Injury or Property Damage resulting from the Insured's rendering or failure to render Professional Services.

C.  **CAPACITY**

based upon, arising out of or attributable to an Insured's services or capacity as an officer, director, partner, trustee, manager, owner, or employee of a corporation, partnership, association, trust or fund, including a pension, welfare, profit sharing, mutual or investment fund or trust, or any other business enterprise or charitable organization of any kind other than the Named Insured, provided this exclusion shall not apply to Professional Services provided by the Insured to such other entity.

D.  **CONDUCT**

based upon, arising out of or attributable to:

1.  the gaining of any profit, remuneration, advantage to which the Insured was not legally entitled;

2.  any intentional, criminal, dishonest, malicious or deliberately fraudulent act, error or omission by and Insured;

If established by a final, non-appealable adjudication of the Claim in any judicial, administrative or alternative dispute resolution proceeding.

For purposes of determining the applicability of this exclusion, no fact pertaining to, knowledge possessed by or conduct of a natural person Insured shall be imputed to any other natural person Insured.

E.  **CONFIDENTIAL/PERSONAL INFORMATION**

based upon, arising out of or attributable to the access to or disclosure of any person or organization's confidential or personal information, including but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information or the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data; provided, however, this exclusion does not apply: (i) to the extent of coverage

otherwise provided by Section II.C of the Policy, or (ii) to a Claim arising out of Professional Services provided by an Insured to a client of the Named Insured.

### F.   CONTRACT

based upon, arising out of or attributable to any actual or alleged liability of the Insured pursuant to any written or oral contract or agreement, including any indemnification agreement, warranty, guarantee or promise,  provided that this exclusion does not apply to the extent the Insured would have been liable in the absence of such contract or agreement.

### G.   CONTROLLED ENTERPRISE

based upon, arising out of or attributable to any Professional Services rendered or that should have been rendered by an Insured to any Controlled Enterprise.

### H.   DESTRUCTION, DIMINUTION OR LOSS OF ASSETS

based upon, arising out of or attributable to any loss or destruction, or any diminution in the value of any asset in the Insured's care, custody or control, or out of the misappropriation of or failure to give an account of, or failure to produce upon legitimate demand, any asset in the Insured's care, custody or control, including the commingling of funds.

### I.   ERISA

based upon, arising out of or attributable to an Insured's actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or the Pension Protection Act of 2006, including any amendments, or any rules, regulations or orders issued thereto, or any similar provisions of any federal, state or local law.

### J.   INSURED V. INSURED

brought by or on behalf of an Insured against another Insured unless such Claim arises out of Professional Services by an Insured to such other Insured as a client of the Named Insured.

### K.   INTELLECTUAL PROPERTY

based upon, arising out of or attributable to any actual or alleged violation of any intellectual property rights or law, including but not limited to, the infringement of any copyright, title, slogan, patent, trademark, certification mark, service mark, service name, trade dress, trade secret, or misappropriation of trade secrets or ideas, provided this exclusion does not apply to a Claim arising out of Professional Services provided by an Insured to a client of the Named Insured.

### L.   PRIOR KNOWLEDGE

 based upon, arising out of or attributable to any fact, circumstance, situation or Wrongful Act, to which any Insured had knowledge as of the inception of the first lawyers professional liability policy issued by the Insurer  to the Named Insured and continuously renewed and maintained in effect prior to the inception date of this Policy, as referenced in ITEM 2 of the Declarations, that was reasonably likely to give rise to a Claim or Expense Event that would fall within the scope of coverage provided by this Policy.

### M. PRIOR NOTICE

based upon, arising out of or attributable to any fact, circumstance, situation, Wrongful Act which has been the subject of any notice given prior to the inception of this Policy under any lawyer's professional liability or other equivalent insurance policy to this Policy.

### N.  PUBLIC OFFICIAL/GOVERNMENT EMPLOYEE

based upon, arising out of or attributable to an Insured's services or capacity as a public official or employee of a governmental body, subdivision or agency.

## SECTION IV – NOTICE

A. As a condition precedent to their rights under the Policy, the Insureds shall give to the Insurer written notice of any Claim made against any Insured as soon as practicable, but in no event later than: (i) sixty (60) days after the end of the Policy Period, or (ii) the expiration of the applicable Extended Reporting Period, if exercised.

B. With respect to coverage under SECTION II-COVERAGE EXTENSIONS, the Insured shall provide written notice to the Insurer of any Expense Event as soon as practicable but no later than the expiration of the Policy Period or Extended Reporting Period, if exercised.   Notice to the Insurer of any Expense Event shall constitute a notice of circumstance pursuant to Section IV.C below, and any Claim subsequently made against any Insured arising out of such Expense Event shall be deemed under this Policy to be a Claim made during the Policy Period in which such specific Expense Event was first reported to the Insurer.

C. If during the Policy Period an Insured becomes aware of any Wrongful Act or circumstance that might reasonably be expected to result in a Claim against any Insured, and gives written notice to the Insurer of such potential Claim during the Policy Period including:

1. a description of the specific Wrongful Act or circumstance, including all relevant dates;

2. the names of the claimants and Insureds, to the extent known, involved in the potential Claim;

3. particulars as to the reasons for anticipating a Claim, including the manner in which the Insured first became aware of the specific Wrongful Act or circumstance;

then any Claim subsequently made against any Insured arising out of such Wrongful Act or circumstance shall be deemed under this Policy to be a Claim made during the Policy Period in which such specific circumstance or Wrongful Act was first reported to the Insurer.

D. Except as otherwise provided in this Policy, all notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party. Notice to the Insureds may be given to the Named Insured at the address shown in ITEM 1 of the Declarations. Notice to the Insurer shall be given to the respective address shown ITEM 9 of the Declarations.   Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal.

## SECTION V - DEFENSE, INVESTIGATION, & CONSENT TO SETTLE

A. **Defense of Claims**

The Insurer has the right and duty to defend any Claim made against an Insured to which this Policy applies, even if the allegations of the Claim are groundless, false or fraudulent.   However, the Insurer shall have no duty to defend any Insured against any Claim to which this insurance does not apply. The Insurer shall not appoint defense counsel in connection with any Claim without the consent of the Named Insured, such consent not to be unreasonably withheld or delayed.

The Insurer shall not be obligated to pay any Loss, or to undertake or continue the defense of any Claim, after the applicable Limit of Liability has been exhausted by the payment of Loss or a settlement agreed to by the Insurer, or after the applicable Limit of Liability has been deposited with, or becomes subject to control of, a court of competent jurisdiction. The duty to defend also terminates when all potentially covered Claims are dismissed or withdrawn.

Unofficial Copy Office of Marilyn Burgess District Clerk

If a Claim is subject to arbitration or mediation, the Insurer or defense counsel assigned by the Insurer shall be entitled to exercise all of the Insured's rights in the choice of arbitrators or mediators and in the conduct of the arbitration or mediation proceeding.

**B.   Pre-Claim Assistance**

If the Insured gives notice of a potential Claim pursuant to Section IV.C of the Policy, the Insurer may, at its sole discretion, pay any costs and expenses it incurs to investigate the potential Claim.  Such payment is not subject to a Deductible and shall be in addition to and not part of, the Aggregate Limit of Liability referenced in ITEM 3.A of the Declarations. Once such potential Claim becomes a Claim, all Loss incurred thereafter in connection with such Claim, shall be subject to a Deductible and shall be part of and not in addition to, the Aggregate Limit of Liability stated in ITEM 3.A of the Declarations.

**C.   Consent to Settle**

Except as provided in paragraph **D** below, the Insurer will not settle any Claim without the consent of the Insured, such consent not to be unreasonably withheld or delayed. As a condition precedent to coverage under this Policy, the Insured shall not admit liability for or settle any Claim, incur any Expenses or Claim Expenses, without the Insurer's prior written consent, such consent not to be unreasonably withheld.  The Insurer shall have the right to investigate and conduct negotiations and, with the written consent of the Named Insured, effect settlement of any Claim as the Insurer deems reasonable. The Insurer shall not be liable for any settlement, Loss or assumed obligations for which it has not given its prior written consent.

**D.**   If the Insurer recommends a settlement of a Claim within the Policy's applicable Limit of Liability which is acceptable to the claimant, and the Insureds refuse to consent to such settlement, then the Insurer's liability on account of such Claim shall not exceed the total sum of:

**1.**   the amount for which the Claim could have settled such Claim, plus Claim Expenses incurred up to the date of the Insured's refusal to consent to such settlement; and

**2.**   fifty percent (50%) of Loss incurred in connection with such Claim in excess of the amount referenced in paragraph 1 above.  The remaining fifty percent (50%) shall be borne by the Insured at its own risk and remain uninsured;

provided, however in no event shall the Insurer's liability exceed the applicable Limit of Liability set forth in ITEM 3.A and/or ITEM 3.B of the Declarations.

**E.   Collaborative Defense**

The Insured's Deductible as provided in ITEM 4 of the Declarations will be reduced by fifty percent (50%) for any Claim if:

**1.**   such Claim is settled or resolved as:

    a)   evidenced by a written settlement agreement; and

    b)   within 365 days of the date the Claim is reported to the Insurer pursuant to the terms and conditions of Section IV, and for an amount, acceptable to the Insurer; or

**2.**   such Claim is settled as a result of arbitration or mediation;

provided, however, the amount of the Deductible reduction shall not exceed $25,000 for any such Claim.

**F.   Cooperation**

The Insured shall cooperate with the Insurer. The Insured shall execute or cause to be executed all papers and render all assistance as is requested by the Insurer.  The Insured agrees not to take any action which in any way prejudices or increases the Insurer's exposure under the Policy.

Upon the Insurer's request, the Insured shall assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the

Insured. The Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

## SECTION VI – LIMIT OF LIABILITY & DEDUCTIBLE

### A.  Limit of Liability

**1.** The most the Insurer will pay for all Loss for all Claims covered by this Policy is the Aggregate Limit of Liability stated in ITEM 3.A of the Declarations. The most the Insurer will pay for all Loss for each Claim is the Each Claim Limit of Liability stated in ITEM 3.B of the Declarations.

**2.** The most the Insurer will pay for each respective Expense referenced in SECTION II-COVERAGE EXTENSIONS, is the respective Sublimit set forth in ITEMS 5.A-E of the Declarations, for each such Expense regardless of the number of payments sought, claimants or Insureds involved, or Expense Events that occur. Such amounts shall be in addition to and not part of the Aggregate Limit of Liability referenced in ITEM 3.A of the Policy.

**3.** Once the Aggregate Limit of Liability as shown in ITEM 3.A of the Declarations is exhausted by the Insurer's payment of Loss, the Insurer will have no further obligations of any kind under this Policy, and all such obligations, including with respect to any coverage provided under SECTION II, shall be completely fulfilled and extinguished.  The Insurer is entitled to pay Loss as it becomes due and payable by the Insureds, without consideration of other future payment obligations.

**4.** The Aggregate Limit of Liability for any Extended Reporting Period, if exercised, shall be part of and not in addition to the Aggregate Limit of Liability as set forth in ITEM 3.A of the Declarations.

### B.  Claim Expenses

Claim Expenses are part of and not in addition to the Limits of Liability as set forth in ITEM 3 of the Declarations and the payment by the Insurer of Claim Expenses reduces such Limits of Liability.

### C.  Deductible

The Deductible stated in ITEM 4 of the Declarations shall apply separately to each Claim.  The Insurer shall be liable only for Loss incurred by the Insured in excess of such Deductible.  Any payment of a Deductible in connection with a Claim shall not reduce any other applicable Deductible for any other Claim (that is not a Related Claim).  A Deductible shall be satisfied by monetary payments of Loss by the Named Insured or upon the Named Insured's failure to pay, jointly and severally by all Insureds.  Any Deductible shall be paid within thirty (30) days of written demand by the Insurer.  All other rights, duties, and obligations under the Policy shall remain the same regardless of whether or not the applicable Deductible has been satisfied.

### D.  Multiple Insureds, Claims and Claimants

The Limits of Liability shown in ITEM 3 of the Declarations is the most the Insurer will pay as Loss regardless of the number of Insureds, Claims or claimants.  All Related Claims shall be deemed a single Claim and only one Deductible shall apply to such single Claim.  Such single Claim shall be deemed to be first made on the date the earliest of such Related Claims is first made against any Insured regardless of whether such date is before or during the Policy Period.  The Insured shall provide notice to the Insurer of any subsequent Related Claim pursuant to Section IV.A above.  This Policy shall not cover any Loss incurred in connection with any subsequent Related Claim before such subsequent Related Claim is reported to the Insurer in accordance with Section IV.A of the Policy.

## SECTION VII – EXTENDED REPORTING PERIOD

### A.  Automatic Extended Reporting Period

If the Named Insured or Insurer cancels or non-renews this Policy, other than for non-payment of premium, the Insured shall have an Automatic Extended Reporting Period of ninety (90) days to commence

immediately after the expiration of the Policy, to report to the Insurer any Claim first made against any Insured during the Policy Period but only for Wrongful Acts taking place on or after the Retroactive Date and prior to the effective date of the cancellation or non-renewal.

**B.   Optional Extended Reporting Period**

**1.**   If the Insurer or the Named Insured cancels or non-renews this Policy, other than for non-payment of premium, then the Named Insured shall have the right, upon payment of the additional premium as set forth in ITEM 7 of the Declarations, to purchase an Extended Reporting Period as set forth as set forth in ITEM 7 of the Declarations, immediately following the effective date of such termination or non-renewal but only with respect to any Claim first made against any Insured during the Policy Period and reported in writing to the Insurer during the Extended Reporting Period, and only for Wrongful Acts taking place on or after the Retroactive Date and prior to the effective date of the cancellation or non-renewal.

2.   This right of extension will lapse unless written notice of such election, together with payment of the additional premium, is given by the Insureds to the Insurer within sixty (60) days following the effective date of cancellation or nonrenewal. The Extended Reporting Period is not cancellable by the Insurer and the entire additional premium for the Extended Reporting Period will be deemed fully earned at inception of the Extended Reporting Period.

3.   The first ninety (90) days of the **Optional Extended Reporting Period** shall run concurrent with the Automatic Extended Reporting Period referenced in Section VII.A above.

**C.   Non-Practicing Extended Reporting Period**

If an Insured as defined in Section XX.M.2 retires, or otherwise voluntarily ceases, permanently and totally, the Private Practice Of Law during the Policy Period, then such Insured shall have the right, upon payment of the additional premium as set forth in ITEM 7 of the Declarations, to purchase an Extended Reporting Period as set forth as set forth in ITEM 7 of the Declarations, to commence upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy or any optional Extended Reporting Period, but only for Wrongful Acts taking place on or after the Retroactive Date and prior to the effective date of the retirement or cessation.

This right of extension will lapse unless written notice of such election, together with payment of the additional premium, is given by the Insured to the Insurer within sixty (60) days following the effective date of retirement or cessation. The entire additional premium for the non-practicing Extended Reporting Period will be deemed fully earned at inception of the Extended Reporting Period; provided there shall be no additional premium for any Extended Reporting Period elected up to three (3) years if the Insured retires or ceases the Private Practice of Law during the Policy Period and has been insured by the Insurer under a primary lawyers professional liability policy for at least three (3) consecutive years.

 This Extended Reporting Period is provided until such Insured resumes the Private Practice of Law or until the death of such Insured in which case paragraph **D** below applies.

**D.   Upon Death or Disability Extended Reporting Period**

If a natural person Insured dies or becomes Totally and Permanently Disabled during the Policy Period, then upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy, or any optional Extended Reporting Period, such Insured shall be provided with a death or disability Extended Reporting Period as provided below:

**1.**   In the event of death, the estate, heirs, executors or administrators of such Insured must provide the Insurer with written proof of the date of death.  This Extended Reporting Period is provided to the estate, heirs, executors and administrators of such Insured until the executor or administrator of the estate of such Insured is discharged, but only with respect to any Wrongful Act of such Insured committed in their capacity as such.

**2.** If an Insured becomes Totally and Permanently Disabled, such Insured or Insured's legal guardian must provide the Insurer with written proof that such Insured is Totally and Permanently Disabled, including the date the disability commenced, certified by the Insured's physician.  The Insurer retains the right to contest the certification made by the Insured's physician.

No additional premium will be charged for any death or disability Extended Reporting Period.

E.  **All Extended Reporting Period Options**

1.  As a condition precedent to the right to purchase an Extended Reporting Period, the total premium that is due shall be paid within sixty (60) days of the effective date the cancellation or non-renewal.

2.  No Extended Reporting Period is available to any Insured who is disbarred, suspended or resigns from the Private Practice of Law in lieu of suspension, in any state where the Insured has a license or right to practice law.

3.  There shall be no coverage for any Claims otherwise subject to coverage under this Section VII.A-D, if there is any other insurance in effect that would apply to such Claims.

4.  No Extended Reporting Period is renewable.

5.  The Limit of Liability applicable to any Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period and the fact that the coverage provided by this Policy may be extended by the purchase of the Extended Reporting Period shall not in any way renew, replenish or increase the Aggregate Limit of Liability stated in ITEM 3.A of the Declarations nor change the scope of coverage available under this Policy.

6.  An offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this extension of coverage.

7.  All notices and premium payments made under this section shall be submitted to the Insurer by the Named Insured.

## SECTION VIII - FIRM CHANGES

If during the Policy Period there is a change of more than fifty percent (50%) of the Named Insured's total lawyer population (as of the effective date of the Policy Period), the Named Insured shall notify the Insurer of within sixty (60) days of such change.

**Acquisition of the Named Insured**

If, during the Policy Period, either of the following events occur:

**1.** the acquisition of the Named Insured, or of all or substantially all of its assets, by another entity; or

**2.** the merger or consolidation of the Named Insured into or with another entity such that the Named Insured is not the surviving entity;

then coverage under this Policy will continue in full force and effect until termination of this Policy, but only with respect to a Claim for a Wrongful Act or Interrelated Wrongful Acts taking place prior to such merger or acquisition.  As of the effective date of the merger of acquisition, coverage under this Policy will cease with respect to Claims for a Wrongful Act or Interrelated Wrongful Acts taking place after such merger or acquisition. This Policy may not be cancelled after the effective time of such merger or acquisition, and the entire premium for this Policy shall be deemed fully earned as of such time.

## SECTION IX - OTHER INSURANCE

If Loss resulting from any Claim is insured under any other valid and collectible lawyers professional liability, cyber liability or similar insurance to the insurance provided under this Policy, then this Policy shall apply only excess to the deductible, retention, if applicable, and limit of liability of such other insurance whether such other

insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this Policy.

## SECTION X - SUBROGATION

In the event of any payment under this Policy, the Insurer shall be subrogated to all of the Insured's rights of recovery against any person or organization, including any rights the Insured may have against any other Insured who personally participated or personally acquiesced in or remained passive after having knowledge of any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act, error or omission. The Insured shall do whatever is necessary to secure and collect upon such right.  The Insured shall do nothing to prejudice such rights.

## SECTION XI - BANKRUPTCY

Bankruptcy or insolvency of the Named Insured or any Insured shall not relieve the Insurer of any of its obligations under this Policy, nor deprive the Insured of any of its rights or defenses under this Policy.

## SECTION XII - REIMBURSEMENT OF THE INSURER

If the Insurer pays any Loss in excess of the applicable Limits of Liability (other than with respect to coverage provided under SECTION II-COVERAGE EXTENSIONS), or within the amount of any applicable Deductible, each Insured shall be liable to the Insurer for any and all such amounts, and, upon demand, shall pay such amounts within sixty (60) days of the Insurer's request.  If it is negotiated or determined that any Claim Expenses are not covered under this Policy, each Insured agrees to repay the Insurer the amount of such Claim Expenses within sixty (60) days of the Insurer's request.

## SECTION XIII - NAMED INSURED - SOLE AGENT

The Named Insured shall be the sole agent of all Insureds hereunder for the purpose of effecting or accepting any amendments to or cancellation of this Policy, for the purpose of receiving such notices as may be required by law and/or any provision(s) of this Policy, for the completing of any Application and the making of any representations, for the payment of any premium and the receipt of any return premium that may become due under this Policy, for the payment of any Deductible obligations that may become due under this Policy, and the exercising or declining to exercise any right under this Policy, including declining or exercising any Extended Reporting Period.

## SECTION XIV – TERRITORY, VALUATION AND CURRENCY

This Policy applies to Claims made or Wrongful Acts occurring anywhere in the world where permissible by law. If a judgment, settlement or amount of Loss under this Policy is stated in currency other than United States dollars, payment under this Policy will be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other Loss becomes payable.

## SECTION XV - ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this Policy shall be effective unless made by the Insurer via a written endorsement to this Policy. The titles and headings to the various sections, subsections and endorsements of this Policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## SECTION XVI - NO ACTION AGAINST THE INSURER

No action shall lie against the Insurer unless, as a condition precedent, there shall have been full compliance with all of the terms and conditions of this Policy. No person or organization shall have the right under this Policy to join the Insurer as a party to any action against any Insured to determine the liability of the Insured, nor shall the Insurer be impleaded by the Insureds or their legal representatives in any such action.

**SECTION XVII - CANCELLATION & NONRENEWAL**

A.  The Named Insured may cancel this Policy by mailing or delivering advance written notice of cancellation to the Insurer.

B.  The Insurer may cancel only for non-payment of premium. In such event, the Insurer shall mail or deliver written notice of cancellation to the Named Insured at least:

   1. Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   2. Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

C.  If this Policy is cancelled, as referenced in paragraphs A or B above, the Insurer shall send to the Named Insured a partial premium refund, computed pro rata.

D.  Any notice of cancellation shall state the effective date of cancellation. The Policy Period shall end on the effective date of the cancellation.

E.  If the Insurer decides to non-renews this Policy, the Insurer will mail or deliver to the Named Insured written notice of non-renewal at least 60 days prior to the end of the Policy Period.

F.  The Insurer shall send all notices required under this Section to the Named Insured at the address in ITEM 1 of the Declarations, and by mail or electronic mail to this Policy's broker of record, if any.  Proof of mailing will be sufficient proof of notice.

**SECTION XVIII – STATE AMENDATORY INCONSISTENCY**

It is agreed that to the extent there is an inconsistency between any terms and/or conditions of the Policy or any endorsement thereto, and any state amendatory endorsement attached to this Policy, then to the extent permitted by law, the Insurer will apply those terms and conditions that are more favorable to the Insured.

**SECTION XIX - ENTIRE CONTRACT**

By acceptance of this Policy, all Insured(s) agree that all statements made and information furnished to the Insurer are true, accurate and complete and that this Policy has been issued in reliance upon the truth and accuracy of such statements and information, subject to all of the terms and conditions of this Policy.

 

**SECTION XX – DEFINITIONS**

A.   Application means all materials and information, including all signed applications and any materials submitted therewith or incorporated therein, submitted by or on behalf of the Insureds to the Insurer in connection with the underwriting of this Policy.

B.   Bodily Injury means physical injury, sickness or disease sustained by a person, including death, mental anguish or emotional distress resulting therefrom.

C.   Claim means any:

1.   written demand against any Insured for monetary, non-monetary or injunctive relief, including a demand that the Insured toll or waive a statute of limitations, and a written demand or request for arbitration, mediation or other alternative dispute resolution, which shall be deemed first made upon the Insured's receipt of such demand; and

2.   civil proceeding against an Insured including any appeal therefrom,  commenced by and which shall be deemed first made upon the service upon, or receipt by, an Insured of a complaint or similar pleading;

for a Wrongful Act.

D.   Claim Expenses mean reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, including but not limited to the premium for appeal  bond, attachment bond or similar bond but without any obligation by the Insurer to apply for or furnish any such bonds. Claim Expenses do not include salaries, wages or expenses of any Insured including but not limited to, partners, principals, officers, directors, members or employees of the Insured.

E.   Controlled Enterprise means any entity other than the Named Insured, that at the time of the Wrongful Act or Expense Event;

a.   is a publically traded entity and 5% or more of its issued and outstanding securities or voting rights to elect or appoint a board of directors or an equivalent governing body is owned or controlled, individually or collectively, by one or more Insured, or any natural person Insured's spouse or domestic partner;

b.   is not a publically traded entity and 25% or more of the legal, beneficial or equitable ownership of such enterprise is owned or controlled, individually or collectively, by one or more of the Insureds or any natural person Insured's spouse or domestic partner;

Controlled Enterprise does not include any business enterprise in which the ownership, control, or management by an Insured is exclusively in a fiduciary capacity as an administrator, conservator, executor, trustee, guardian, receiver, or committee, or in a similar fiduciary capacity incidental to the practice of law by a Named Insured.

F.   Crisis Event means:

1.   the death, departure or debilitating illness of the sole proprietor, managing partner, or any practice group leader of the Named Insured;

2.   an incident of workplace violence at the offices of the Named Insured referenced in ITEM 1 of the Declarations; or

3.   the filing of an involuntary bankruptcy petition against the Named Insured.

G.   Crisis Event Expenses means reasonable fees incurred by the Named Insured and consented to by the Insurer, for necessary consulting services provided by a public relations firm in response to a Crisis Event.

H.   Disciplinary Proceeding means a formal investigation or proceeding regarding an Insured's adherence to professional standards of conduct before a court, state licensing board, peer review committee, bar association or other regulatory body.

Disciplinary Proceeding does not include any: (i) criminal proceedings or proceedings or hearings to determine the reasonableness of, or right or entitlement to, any fees or charges by any Insured, or (ii) any subpoena otherwise covered under Section II.D of the Policy.

I.  Disciplinary Proceeding Expenses means reasonable and necessary fees, costs and expenses incurred for legal work performed by attorneys other than any Insured, in connection with Disciplinary Proceedings.

J.  Expenses means Crisis Event Expenses, Disciplinary Proceeding Expenses, Security Incident Response Expenses, Litigation Participation Expenses, and reasonable attorney fees and expenses incurred in connection with the response to a subpoena, as referenced in SECTION II.D, above.

K.  Expense Event means any Crisis Event, Disciplinary Proceeding, Security Incident, Litigation Event or the Insured's receipt of a subpoena covered under Section II.D, above.

L.  Extended Reporting Period means the period of coverage as shown in ITEM 7 of the Declarations.

M.  Insured means:

1.  the Named Insured shown in the Declarations or any Predecessor;

2.  any past, present or future partner, officer, director, shareholder, attorney, or member of the Named Insured but only with respect to Professional Services rendered on behalf of the Named Insured or any Predecessor;

**3.**  an attorney acting as "Of Counsel" but only while performing Professional Services on behalf of the Named Insured;

4.  all non-lawyer employees, interns, volunteers or independent contractors but only with respect to liability arising from and in the course of their services on behalf of the Named Insured or any Predecessor; and

**5.**  the estates, heirs, executors, administrators, assigns and legal representatives of a natural person Insured in the event of such Insured's death, incapacity, insolvency or bankruptcy, but only in their capacity as such, and only to the extent that such Insured would otherwise be provided coverage under the Policy.

N.  Interrelated Wrongful Acts means any and all Wrongful Acts that have as a common nexus any fact, circumstance, event, transaction, cause or series of causally or logically connected facts, circumstances, events, transactions or causes.

O.  Litigation Events means all mediations, settlement conferences, arbitration proceedings, hearings, depositions and trials relative to the defense of any Claim.

P.  Litigation Participation Expenses means any actual loss of earnings and reasonable expenses incurred by an Insured in connection with a Litigation Event.

Q.  Loss means those amounts any Insured becomes legally obligated to pay as a result of a Claim, including but not limited to damages (including punitive, exemplary and multiple damages), judgments, settlements, Claim Expenses and any award of pre-judgment and post-judgment interest with respects to covered damages, judgments or settlements.  Solely with respect to coverage under SECTION II, Loss shall include Expenses.

The insurability of punitive, exemplary or multiple damages shall be determined under the internal laws of any jurisdiction most favorable to the Insureds, including the jurisdiction in which the Named Insured, the Insurer, this Policy or such Claim is located.

Loss does not include:

1.  the multiplied portion of multiplied awards;

2.  fines, penalties, taxes or sanctions imposed by law, other than as referenced above;

3.  any amount for which an Insured is absolved from payment by reason of any covenant, agreement, court order, or bankruptcy of any Insured;

4.  the return, reduction, restitution, withdrawal, forgiveness, waiver or offset of any legal fees, costs, expenses or receivables, paid to, incurred, charged or chargeable by, an Insured;

5.  the cost of correcting, re-performing or completing, any Professional Services by an Insured;

6.  the cost of complying with any injunctive or other non-monetary relief;

7.  amounts which are uninsurable by law.

R.  Named Insured means the entity referenced in ITEM 1 of the Declarations.

S.  Personal Injury means injury arising out of one or more of the following offenses:

1.  false arrest, unlawful detention, imprisonment, malicious prosecution, wrongful eviction, wrongful entry or trespassing; or

2.  invasion, infringement, interference with an individual's right to privacy or publicity, including but not limited to public disclosure of private facts  and intrusion or commercial approbation of name or likeness;

3.  libel, slander or public disclosure of other defamatory or disparaging material;

Personal Injury does not mean any oral or written publication, in any manner, which arises out of advertising broadcasting or telecasting activities conducted by, or on behalf of, the Insured.

T.  Policy Period means the period of time set forth in ITEM 2 of the Declarations, subject to its earlier cancellation or termination.

U.  Predecessor means any individual or entity engaged in Professional Services and identified in the Application that, prior to the inception of this Policy Period, the Named Insured became the successor in interest to greater than fifty-percent (50%) of such entity or individual's financial assets and liabilities.

V.  Private Practice of Law means the practice of law performed by an Insured for a fee, including hourly, contingent or lump sum, as a sole practitioner or as a partner, officer, director, stockholder-employee, associate, manager, member or employee, of a law firm, or any agreement to act as an independent contractor or "Of Counsel" to a law firm.  Private Practice of Law does not include the practice of law by an Insured on a pro bono basis.

W.  Professional Services means services provided to others by an Insured in their capacity as such:

1.  as a licensed attorney in good standing or notary public;

2.  as a mediator, arbitrator, or other neutral fact finder;

3.  as a title agent pursuant to a written agreement with a licensed title insurance company, and provided that such title insurance company is not an Insured under this Policy;

4.  as an administrator, conservator, executor, guardian, trustee, receiver, or in any similar court appointed fiduciary capacity, provided such services are performed in connection with and incidental to Professional Services provided by the Named Insured;

5.  as an author, but only for the publication or presentation of legal research papers and legal writing materials or the presenter of legal seminars or materials, but only where such services are performed without compensation or for compensation less than $10,000;

6.  as a member of a bar association or other ethics, peer review, accreditation, licensing or similar board, committee or organization;

7.  as a licensed attorney on a pro bono basis that is approved in writing in advance by the Named Insured or any Predecessor;

8.    as a lobbyist or government affairs advisor;

Professional Services do not include:

**(a)**  the providing or failure to provide any financial or investment advice or financial management;  or

**(b)**  services rendered as a real estate or insurance agent or broker or as a promoter, seller, and/or solicitor of securities, real estate or other investments.

X.    Property Damage means:

1.    physical injury to tangible property, including any resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.    loss of use of tangible property that has not been physically injured.  All such loss of use shall be deemed to occur at the time such loss of use first manifests itself;

For the purposes of this insurance, electronic data is not tangible property.  As used in this definition, electronic data means facts or programs stored as or on, created or used on, or transmitted to or from computer software including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Y.**    Related Claims means all Claims for Wrongful Acts or Interrelated Wrongful Acts, which in whole or part, allege, arise out of, are based upon, or are in consequence of, the same or related facts, circumstances, situations, transactions or events, or series of related facts, circumstances, situations, transactions or events, regardless of whether the Claim or Claims alleging such acts involves the same or different claimants, causes of action or are brought in the same or different jurisdictions.

**Z.**    Retroactive Date means the date specified in ITEM 8 of the Declarations.

AA.    Security Incident means the unauthorized access of, or use of, data containing private or confidential information in connection with the performance of Professional Services which results in the violation of any law or regulation pertaining to the protection of such confidential information.

**BB.**    Security Incident Response Expenses means any expenses incurred by the Insured to: 1) hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or 2) comply with state or local privacy laws requiring that notification and credit monitoring services are to be provided to individuals when the security, confidentiality or integrity of their personal information has been compromised.

CC.    Totally and Permanently Disabled means that the Insured has become so disabled as to be wholly unable to provide any Professional Services in such Insured's capacity and  such disability has existed continuously for not less than six (6) months and is expected to be continuous and permanent.  Totally and Permanently Disabled shall not include any condition which:

1.    is a result of war or acts of war, whether or not declared;

2.    occurred during active service in the armed forces of any country; or

3.    results from:

a.    intentionally self-inflicted Injuries; or

b.    attempted suicide, whether or not sane; or the abuse or misuse of an addictive substance.

DD.    Wrongful Act means any actual or alleged act, error, omission or breach of duty by an Insured in the rendering or failure to render Professional Services.  Wrongful Act also means any actual or alleged Personal Injury by an Insured committed in the rendering or failure to render Professional Services.

**Endorsement No. 1**

## (TEXAS) CANCELLATION AND NONRENEWAL *EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the Policy:

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The **CANCELLATION AND NONRENEWAL** Section of the Policy is amended to read in its entirety as follows:

**CANCELLATION AND NONRENEWAL**

The Named Insured may cancel this Policy or any Coverage Part, if applicable, by mailing or delivering to the Insurer advance written notice of cancellation. The Insurer may cancel this Policy, or any Coverage Part, if applicable, only for nonpayment of premium. In such event, the Insurer shall mail or deliver to the Named Insured written notice of cancellation at least twenty (20) days before the effective date of such cancellation, but such cancellation shall not become effective if the Insureds pay such premium in full during such twenty (20) day period. Under the provisions of the Texas Insurance Code, the Insurer will not cancel this Policy solely because the policyholder is an elected official.

Any notice of cancellation will state the effective date of cancellation and reason for cancellation. The Policy Period will end on that date. If this Policy is cancelled, the Insurer will send to the Named Insured the premium refund, computed pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund. The Insurer may decide not to renew this Policy except, that under the provisions of the Texas Insurance Code, the Insurer will not refuse to renew this Policy solely because the policyholder is an elected official. If the Insurer decides not to renew this Policy, the Insurer will mail or deliver to the Named Insured written notice of non-renewal at least sixty (60) days before the expiration date. If notice is mailed or delivered less than sixty (60) days before the expiration date, this Policy will remain in effect until the sixty-first (61st) day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew. Notice of non-renewal will state the reason for non-renewal.

   **ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

EIL-TXF100A-1 0118           ©Everest Reinsurance Company, 2019                    Page | 1

# TEXAS IMPORTANT NOTICE

## Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company. If you don't, you may lose your right to appeal.

**Everest National Insurance Company**

To get information or file a complaint with your insurance company:

**Call:  Customer Service at 1-800-438-4375**

**Toll-free:  1-800-438-4375**

Email:  consumercomplaint@everestre.com

Mail:  **Everest National Insurance Company**

100 Everest Way

Warren, NJ 07059

**The Texas Department of Insurance**

To get help with an insurance question or file a complaint with the state:

Call with a question:  1-800-252-3439

File a complaint:  www.tdi.texas.gov

Email:  ConsumerProtection@tdi.texas.gov

Mail:  Consumer Protection, MC: CO-CP, Texas Department of Insurance, P.O. Box 12030, Austin, TX 78711-2030

## ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

EN IL 5 TX 07 23               Copyright Everest Reinsurance Company, 2023               Page 1 of 2

Unofficial Copy Office of Marilyn Burgess District Clerk

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros. Si no lo hace, podría perder su derecho para apelar.

## Everest National Insurance Company

Para obtener información o para presentar una queja ante su compañía de seguros:

**Llame a: Customer Service** al **1-800-438-4375**

**Teléfono gratuito: 1-800-438-4375**

Correo electrónico: consumercomplaint@everestre.com

Dirección postal: **Everest National Insurance Company**

100 Everest Way

Warren, NJ 07059

## El Departamento de Seguros de Texas

Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

Llame con sus preguntas al: 1-800-252-3439

Presente una queja en: www.tdi.texas.gov

Correo electrónico: ConsumerProtection@tdi.texas.gov

Dirección postal: Consumer Protection, MC: CO-CP, Texas Department of Insurance, P.O. Box 12030, Austin, TX 78711-2030

Unofficial Copy Office of Marilyn Burgess District Clerk

## (TEXAS) AMENDATORY



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that **SECTION V – DEFENSE AND SETTLEMENT** is amended to include the following:

The Insurer will notify the Named Insured in writing of:

1. An initial offer to compromise or settle a Claim made or suit brought against any Insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a Claim made or suit brought against any Insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**.

_____
Authorized Representative

**Endorsement No. 4**

## (TEXAS) EXTENDED REPORTING PERIOD



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the Policy.

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

**SECTION VII – EXTENDED REPORTING PERIOD** is deleted and replaced by the following:

**SECTION VII – EXTENDED REPORTING PERIOD**

A.   **Automatic Extended Reporting Period**

An Automatic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the Policy Period and lasts for sixty (60) days with respect to any Claim arising from a Wrongful Act not previously reported to the Insurer. The Automatic Extended Reporting Period applies only to a Wrongful Act which occurred after the Retroactive Date and before the end of the Policy Period provided a Claim for such Wrongful Act is first made during the Automatic Extended Reporting Period.

The Automatic Extended Reporting Period does not apply to Claims that are covered under any subsequent insurance the Named Insured purchases, or that would be covered but for exhaustion of the amount of insurance applicable to such Claims. The Automatic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

The Automatic Extended Reporting Period does not extend the Policy Period or change the scope of coverage provided.

However, if the Optional Extended Reporting Period in paragraph B. below is purchased, the automatic Extended Reporting Period does not apply.

B.   **Optional Extended Reporting Period**

3.   If the Insurer or the Named Insured cancels or non-renews this policy, then the Named Insured shall have the right, upon payment of the additional premium as set forth in ITEM 7 of the Declarations, to purchase an extension of the coverage granted by this Policy with respect to any Claim first made against any Insured during the Policy Period and reported in writing to the Insurer during the Extended Reporting Period as set forth in ITEM 7 of the Declarations, but only with respect to any Wrongful Act taking place on or after the Retroactive Date and prior to the effective date of the cancellation or non-renewal.

4.   This right of extension will lapse unless written notice of such election, together with payment of the additional premium, is given by the Insureds to the Insurer within sixty (60) days following the effective date of cancellation or nonrenewal. The Extended Reporting Period is not cancellable by the Insurer and the entire additional premium for the Extended Reporting Period will be deemed fully earned at inception of the Extended Reporting Period.

E.    **Non-Practicing Extended Reporting Period**

If an Insured retires, or otherwise voluntarily ceases, permanently and totally, the Private Practice Of Law during the Policy Period and has been continuously insured by any lawyers professional liability carrier for at least three consecutive years, then such Insured shall be provided with an Extended Reporting Period commencing upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy or any Optional Extended Reporting Period.

This Extended Reporting Period is provided until such Insured resumes the Private Practice Of Law or until the death of such Insured in which case paragraph D below applies.

F.    **Upon Death or Disability Extended Reporting Period**

If a natural person Insured dies or becomes Totally and Permanently Disabled during the Policy Period, then upon the latter of the expiration of the Policy Period, any renewal or successive renewal of this Policy, or any optional Extended Reporting Period, such Insured shall be provided with a death or disability Extended Reporting Period as provided below:

**1.** In the event of death, the estate, heirs, executors or administrators of such Insured must provide the Insurer with written proof of the date of death.  This Extended Reporting Period is provided to the estate, heirs, executors and administrators of such Insured until the executor or administrator of the estate of such Insured is discharged, but only with respect to any Wrongful Act of such Insured committed in their capacity as such.

**2.** If an Insured becomes Totally and Permanently Disabled, such Insured or Insured's legal guardian must provide the Insurer with written proof that such Insured is Totally and Permanently Disabled, including the date the disability commenced, certified by the Insured's physician.  We retain the right to contest the certification made by the Insured's physician.

No additional premium will be charged for any death or disability Extended Reporting Period.

G.    **All Extended Reporting Period Options**

8. As a condition precedent to the right to purchase the **Optional** Extended Reporting Period, the total premium for this Policy must have been timely paid.

9. No Extended Reporting Period shall be available when any Insured's license or right to practice his or her profession is revoked or suspended by, or surrendered at the request of, any regulatory or judicial authority.

10. No Extended Reporting Period is renewable.

11. The Limit of Liability applicable to the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period and the fact that the coverage provided by this Policy may be extended by the purchase of the Extended Reporting Period shall not in any way renew, replenish or increase the aggregate Limit of Liability stated in ITEM 3 of the Declarations nor change the scope of coverage available under this Policy.

12. An offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this extension of coverage.

13. All notices and premium payments made under this section shall be submitted to the Insurer by the Named Insured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

LPL-TXF202A-1 0319          ©Everest Reinsurance Company, 2022          Page | 2



**Endorsement No. 5**

# INDIVIDUAL INSURED RETROACTIVE DATE ENDORSEMENT



*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The following EXCLUSION shall be added to Section III:

This Policy does not apply to any Claim or Expense Event based upon, arising out of or attributable to, directly or indirectly, in whole or in part, any Wrongful Act actually or allegedly committed by an **Individual   Insured** referenced in the **Schedule** below, prior to the corresponding **Retroactive Date** referenced therein.

## SCHEDULE

**INDIVIDUAL INSURED(S):**               **RETROACTIVE DATE:**

Moises Morales                                                11/29/2023


**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement No. 6**



## INSURING AGREEMENT AMENDED ENDORSEMENT

*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

**SECTION I** – **INSURING AGREEMENT** shall be replaced with the following:

The Insurer shall pay on behalf of the Insured, all Loss in excess of the Deductible, resulting from any Claim first made against the Insured during the Policy Period and reported during the Policy Period or Extended Reporting Period, if exercised, arising out of a Wrongful Act committed after the Retroactive Date, provided that:

(i)   as of the inception of the first lawyers professional liability policy issued by the Insurer to the Named Insured (and continuously renewed and maintained in effect prior to the inception date of this Policy, as referenced in ITEM 2 of the Declarations), no Insured had knowledge of any fact, circumstance, situation or Wrongful Act, that was reasonably likely to give rise to a Claim or Expense Event that would fall within the scope of coverage provided by this Policy; and

(ii)  no Insured gave notice of such Claim or Wrongful Act or a Related Claim, Interrelated Wrongful Act, or Expense Event to any prior insurer.

The EXCLUSIONS in Section III.L and III.M are deleted.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Unofficial Copy Office of Marilyn Burgess District Clerk

 

**Endorsement No. 7**

## DEFENSE COUNSEL ENDORSEMENT



*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following Policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The first paragraph of Section V.A shall be replaced with the following:

A.     **Defense of Claims**

The Insurer has the sole right and duty to defend any Claim made against an Insured to which this Policy applies, even if the allegations of the Claim are groundless, false or fraudulent.   The Insurer has the sole right to appoint defense counsel and to investigate any Claim or potential Claim.  However, the Insurer shall have no duty to defend any Insured against any Claim to which this insurance does not apply.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**.

Unofficial Copy Office of Marilyn Burgess District Clerk

**Endorsement No. 8**

## AMEND PREDECESSOR DEFINITION ENDORSEMENT



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that**:**

**SECTION XX.U.** Predecessor, is replaced with the following:

U. Predecessor means any individual or entity engaged in Professional Services that, prior to the inception of this Policy Period, the Named Insured became the successor in interest to greater than fifty-percent (50%) of such entity or individual's financial assets and liabilities.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Unofficial Copy Office of Marilyn Burgess District Clerk

**Endorsement No. 9**



## RELIANCE UPON OTHER APPLICATION
## ENDORSEMENT

*EVEREST*

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Morales Law Firm | EML0050315-231 | 11/29/2023 - 11/29/2024 | Everest National Insurance Company | 11/29/2023 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST ELEVATION® LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

Solely for the purposes of coverage provided under the Policy, it is hereby understood and agreed that:

The Insurer has relied upon the statements and representations made by Morales Law Firm in the Competitor, Agent or Broker's Application as accurate and complete as of the date of signature on the Competitor, Agent or Broker's Application. The Insureds extend any statements and representations made in the Competitor, Agent or Broker's Application to the Insurer of this Policy and also represent that the statements and representations made in the Competitor, Agent or Broker's Application were accurate and complete as of the date of signature on the Competitor, Agent or Broker's Application. All such statements and representations shall be deemed material to the risk assumed by the Insurer of this Policy and are the basis of and are to be considered as incorporated into and constituting part of this Policy.

Competitor, Agent or Broker's Application means the application of Morales Law Firm to Everest National Insurance Company, for coverage under Lawyers Professional Liability Policy, for the Policy Period of 11/29/2023 - 11/29/2024, signed on 10/30/2023.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

_____
Authorized Representative

Unofficial Copy Office of Marilyn Burgess District Clerk

# ADVISORY NOTICE REGARDING
# TRADE OR ECONOMIC SANCTIONS

No coverage is provided by this Notice nor can it be construed to replace any provisions of the policy. Please read the policy and review the Declarations page, if applicable, for complete information on the coverages provided.

This Notice provides information concerning possible impact on insurance coverage due to any applicable trade or economic sanctions law or regulation, including but not limited to, trade or economic sanctions laws or regulations of the United Nations, European Union, Switzerland, United Kingdom, Canada or the United States Treasury Department's Office of Foreign Assets Control.

**Please read this Notice carefully.**

If it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated any applicable trade or economic sanctions laws or regulations, including but not limited to those of the United Nations, European Union, Switzerland, United Kingdom, Canada or the United States Treasury Department's Office of Foreign Assets Control, this insurance will be considered a blocked or fro-zen contract and all provisions of this insurance are immediately subject to restrictions. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from the applicable regulator. Other limitations on the premiums and payments also apply.

Unofficial Copy Office of Marilyn Burgess Harris County District Clerk

EIL-CWN010A-1 1020                    ©Everest Reinsurance Company, 2020



**_EVEREST_**

---

## IN WITNESS

IN WITNESS WHEREOF, this policy is signed by officer of the Company shown on the declarations page of this policy.

For: Everest National Insurance Company

_____
President

_____
Secretary

---

EIL CWF001A-1 0319        © Everest Reinsurance Company, 2019



 

**2026-41505 / Court: 157**

November 25, 2025

Everest National Insurance Company
100 Everest Way
Warren, NJ 07059
EverestInsuranceClaims@EverestRe.com
Via U.S. Mail and email to EverestInsuranceClaims@EverestRe.com

Your Insured: Moises Morales III
Date of Loss: December 19, 2023
File No. 13-4339

> **Re:** **Demand Arising From Cause No. 2023-71174;** *Thomas Winfield v. Ron Hoover A.K.A. Ron Hoover Marine Centers and John Babcock, 61st Judicial District Court, Harris County, Texas*

Dear Adjuster:

Please be advised that our firm has been retained to represent the interests of Mr. Winfield for injuries sustained as a result of your insured's malpractice. We ask that all future correspondence or verbal communication be directed to our office and that there be no direct contact with our client in this matter. Please be advised our office does not grant recorded statements. If you have obtained a recorded statement of our client prior to our representation, we ask that a copy of the original tape or a transcribed copy of that statement be forwarded to our office on an immediate basis.

The evidence is abundantly clear that numerous acts of negligence occurred after November 29, 2023, the date you claim is the day coverage begins. For example, your insured negligently failed to file a motion to reconsider on December 19, 2023. Further, a motion for new trial should have been filed on or before December 19, 2023. Either of these actions would have preserved the trial court's plenary power. Then, a notice of appeal of the judgment with prejudice should have been filed by December 19, 2023 to preserve appeal. Finally, a bill of error should have been filed before the case was refiled on January 22, 2024 by new counsel Gallo Uwalaka Personal Injury Attorneys, PLLC.

Labor Advocate Law Firm
ccastanon@laboradvocatelaw.com
www.LaborAdvocateLaw.com

4900 Fournace Place Suite 500-C30
Bellaire, TX 77401
713-588-LALF (5253)



Prior to that filing, but after November 29, 2023, Mr. Morales should have discovered and communicated the erroneous filing to Gallo Uwalaka. We believe other negligent acts and omissions occurred after November 29, 2023. Each one of these acts or omissions, by itself, constitutes malpractice and negligence.[1]

We would also advise that it is our intention to obtain an assignment of Mr. Morales' first party claim against your agency and pursue it directly to assure our client's prompt and likely recovery. Therefore, if you continue to deny coverage, we intend to separately pursue it and seek attorney's fees. Your insured has graciously and truthfully admitted to liability. Therefore, given the negligent acts and omissions that occurred after November 29, 2023, continued denial would give rise to a bad faith claim, in addition to a traditional breach of contract claim.

During the pendency of this claim there will undoubtedly be medical and, perhaps, psychological information and documentation that you and your company will receive regarding our client. We expect, and require, that all information and all documentation will be kept strictly confidential and will not be revealed to anyone without express written and notarized permission from our client.

Respectfully,

Cynthia Castanon

CC:     Client
        Moises Morales, III

---

[1] Out of abundance of caution, we have agreed with your insured to extend a theoretical statute of limitations for the act occurring on November 20, 2023, but that should not in any way be construed as the only date negligent acts occurred.

Labor Advocate Law Firm
ccastanon@laboradvocatelaw.com
www.LaborAdvocateLaw.com

4900 Fournace Place Suite 500-C30
Bellaire, TX 77401
713-588-LALF (5253)

# EXHIBIT "3"

6/29/2026 3:11 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 116729254
By: Nathaly Espino
Receipt Number: 1115149  Filed: 6/29/2026 3:11 PM
Tracking Number: 74669576

COPY OF PLEADING PROVIDED BY PLT

CAUSE NUMBER: 202641505

| | |
|---|---|
| PLAINTIFF: WINFIELD, THOMAS | In the 157th Judicial |
| vs. | District Court of |
| DEFENDANT: EVEREST NATIONAL INSURANCE COMPANY | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: EVEREST NATIONAL INSURANCE COMPANY BY SERVING ITS REGISTERED AGENT CT CORPORATION SYSTEM

1999 BRYAN STREET          SUITE 900

DALLAS TX 75201

OR WHEREVER THEY MAY BE FOUND

Attached is a copy of PLAINTIFF'S ORIGINAL PETITION.

This instrument was filed on June 22, 2026, in the above numbered and styled cause on the docket in the above Judicial District Court of Harris County, Texas, in the courthouse in the City of Houston, Texas. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this June 22, 2026.



*Marilyn Burgess*
Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: TALITHA MCCARTY

Issued at request of:
NICHOLS, JACK JOSEPH
4900 FOURNACE PL., SUITE 500-C30
BELLAIRE, TX  77401
713-952-2500
Bar Number: 24123945

Certified Document Number: 127444161 - Page 1 of 3

## DECLARATION OF SERVICE/AUTHORIZED PERSON RETURN

| Cause No.<br>2026-41505 | Court:<br>157th | County:<br>Harris | Job:<br>CC.Winfield.06.24.26 |
|---|---|---|---|
| Plaintiff:<br>THOMAS WINFIELD | | Defendant:<br>EVEREST NATIONAL INSURANCE COMPANY | |
| Received by:<br>Kitty Estes on June 23, 2026 at 7:45 p.m. | | For:<br>LEGAL ADVOCATE LAW FIRM, PLLC | |
| To be served upon:<br>EVEREST NATIONAL INSURANCE COMPANY c/o Registered Agent, CT CORPORATION SYSTEM | | | |

I, Kitty Estes, state as follows: I am over the age of 18 years and am competent to make this Declaration of Service/Authorized Person Return. My address is 1722 Elmwood Blvd., Dallas, Texas 75224. I am not a party to this suit nor related or affiliated with any party herein and have no interest in the outcome of this matter. I am authorized and certified to serve process in the State of Texas. I declare under penalty of perjury that the facts stated herein are true and correct.

| Recipient Name/Address: | EVEREST NATIONAL INSURANCE COMPANY c/o Registered Agent, CT CORPORATION SYSTEM via Intake Specialist, Elizabeth West, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 |
|---|---|
| Manner of Service: | Via Personal, hand-delivery on June 24, 2026 at 10:50 a.m. |
| Document: | Citation/Plaintiff's Original Petition/Exhibits A, B, C, D, E, F, G, H and I |

Respectfully submitted,

_Kitty Estes_    6-24-2026

Kitty Estes          Date
PSC No. 19289   Expires: 12/31/2026

On behalf of:
JMH Civil Process & Legal Services
P. O. Box 541372
Houston, Texas 77254-1372
713.557.9961

Certified Document Number: 127444161 - Page 2 of 3

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Eservice LALF on behalf of Cynthia Castanon
Bar No. 24093492
eservice@laboradvocatelaw.com
Envelope ID: 116729254
Filing Code Description: No Fee Documents
Filing Description: Return of Service
Status as of 6/29/2026 3:22 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| eservice LALF | | eservice@laboradvocatelaw.com | 6/29/2026 3:11:25 PM | SENT |

Certified Document Number: 127444161 – Page 3 of 3



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 10, 2026

Certified Document Number:        127444161 Total Pages:  3

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT "4"

7/15/2026 11:57 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 117371804
By: Angelica Rodriguez
Filed: 7/15/2026 11:57 AM

## RETURN OF SERVICE

**State of Texas**                    **County of Harris**            **157th Judicial District Court**

Case Number: 2026-41505

Plaintiff:
**Thomas Winfield**

vs.

Defendant:
**Everest National Insurance Company**

Received by Barbara C. Stinnett on the 13th day of July, 2026 at 1:10 pm to be served on **Everest National Insurance Company c/o R/A: Corporation Service Company, 211 East 7th Street, suite 620, Austin, TX 78701**.

I, Barbara C. Stinnett, do hereby affirm that on the **14th day of July, 2026** at **1:44 pm, I:**

Delivered a true copy of the **Citation, Plaintiff's First Amended Petition** with the date of service endorsed thereon by me, to **Everest National Insurance Company c/o R/A: Corporation Service Company**, by delivering to its designated agent, **Neisha Gross**, at the address of **211 East 7th Street, suite 620, Austin, TX 78701, Travis County,** and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18. I am not a party to the suit, and I am a disinterested person with no interest in the outcome of the suit.

My name is Barbara C. Stinnett. My work address is 16 Tournament Way, # 23, The Hills TX 78738. I declare under penalty of penalty of perjury that the foregoing is true and correct. Executed in Travis County Texas

**Barbara C. Stinnett**
PSC-24711 06/30/2028

07/14/26
Date

**JMH Civil Process & Legal Services**
**P.O. Box 541372**
**Houston, TX 77254**
**(713) 557-9961**

Our Job Serial Number: SNN-2026000443
Ref: 2026-41505

Copyright © 1992-2026 DreamBuilt Software, Inc - Process Server's Toolbox V9 0a

Certified Document Number: 127722124 - Page 1 of 3

Receipt Number: 1116040
Tracking Number: 74677978

**COPY OF PLEADING PROVIDED BY PLT**

CAUSE NUMBER: 202641505

| | |
|---|---|
| PLAINTIFF: WINFIELD, THOMAS | In the 157th Judicial |
| vs. | District Court of |
| DEFENDANT: EVEREST NATIONAL INSURANCE COMPANY | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: EVEREST NATIONAL INSURANCE COMPANY MAY BE SERVED BY SERVING CORPORATION SERVICE

211 EAST 7TH STREET SUITE 620

AUSTIN TX 78701

  Attached is a copy of PLAINTIFF'S FIRST AMENDED PETITION.

This instrument was filed on June 29, 2026, in the above numbered and styled cause on the docket in the above Judicial District Court of Harris County, Texas, in the courthouse in the City of Houston, Texas. The instrument attached describes the claim against you.

  YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.  In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit.  These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org.

  ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this July 9, 2026.



*Marilyn Burgess*

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: IRIS COLLINS

Issued at request of:
NICHOLS, JACK JOSEPH
4900 FOURNACE PL.
BELLAIRE, TX  77401
713-952-2500
Bar Number: 24123945

Certified Document Number: 127722124 - Page 2 of 3

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Eservice LALF on behalf of Cynthia Castanon
Bar No. 24093492
eservice@laboradvocatelaw.com
Envelope ID: 117371804
Filing Code Description: No Fee Documents
Filing Description: Service Return
Status as of 7/15/2026 12:15 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| eservice LALF | | eservice@laboradvocatelaw.com | 7/15/2026 11:57:19 AM | SENT |

Certified Document Number: 127722124 - Page 3 of 3



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 10, 2026

Certified Document Number:        127722124 Total Pages:  3

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT "5"

8/10/2026 4:29 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 118440166
By: Angelica Rodriguez
Filed: 8/10/2026 4:29 PM

CAUSE NO. 2026-41505

| | | |
|---|---|---|
| THOMAS WINFIELD | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| v. | § | |
| | § | |
| EVEREST NATIONAL INSURANCE | § | HARRIS COUNTY, TEXAS |
| COMPANY | § | |
| | § | |
| *Defendants* | § | |
| | § | |
| | § | |
| | § | |
| | § | 157th JUDICIAL DISTRICT |

## DEFENDANT EVEREST NATIONAL INSURANCE COMPANY'S
## ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

Defendant Everest National Insurance Company ("Everest") files its Original Answer and

Affirmative Defenses and, in support thereof, would show as follows:

### I.    GENERAL DENIAL

As authorized by Tex. R. Civ. P. 92, Everest denies all matters pled by Plaintiff Thomas

Winfield ("Plaintiff") and requests that the Court require Plaintiff to prove the charges and

allegations by a preponderance of the evidence as required by the Constitution and the laws of the

State of Texas, as well as substantive and procedural laws of the United States, or otherwise, as

may be appropriate.

### II.    AFFIRMATIVE DEFENSES

1.    All of Plaintiff's claims against Everest arise out of Plaintiff's pre-suit legal

malpractice claim against the Morales Law Firm (the "Malpractice Claim"). Plaintiff seeks

coverage for the Malpractice Claim under Policy No. EML0050315-231 issued to Morales Law

Firm for the policy period of November 29, 2023 to November 29, 2024 (the "Policy").  As a

result, all of Plaintiff's claims against Everest are subject to all of the terms, definitions, provisions,

conditions, endorsements, exclusions and limitations contained in the Policy. Therefore, Everest specifically pleads all terms, definitions, provisions, conditions, endorsements, exclusions and limitations of the Policy as if set forth herein, and Everest denies that coverage is owed to the Morales Law Firm or Plaintiff for the Malpractice Claim and pleads all such provisions of the Policy that may be shown to be applicable.

2.     For further answer and/or in the alternative, should it be necessary, Plaintiff is not a Named Insured nor qualifies as an Insured, as defined by the Policy, and thus Plaintiff lacks standing to assert any contractual and extra-contractual claims against Everest based on its denial of coverage for the Malpractice Claim against the Morales Law Firm

3.     Plaintiff's claims are subject to all of the terms, conditions, and limitations contained in the Policy.  For further answer, should it be necessary, Everest asserts that there is no ambiguity in the Policy as there is only one reasonable interpretation of the terms, conditions, and limitations.

4.     Plaintiff's claims against Everest are barred under the Policy because the date of the alleged attorney malpractice occurred prior to the inception date of the Policy.

5.     For further answer, should it be necessary, Plaintiffs' claims are subject to all of the terms, conditions and limitations contained in the Policies. Plaintiffs can only be entitled to any coverage under the Policies if they can first establish that Plaintiff is entitled to coverage under Everest's Policy. To that extent, the Policy contains the following Insuring Agreement and relevant limitations, conditions, exclusions and Endorsements; including, but not limited to, the following:

**INSURING AGREEMENT AMENDED ENDORSEMENT (Endorsement No. 6)**

2

***

**SECTION I – INSURING AGREEMENT** shall be replaced with the following:

The **Insurer** shall pay on behalf of the **Insured,** all **Loss** in excess of the **Deductible**, resulting from any Claim first made against the Insured during the Policy Period and reported during the Policy Period or Extended Reporting Period, if exercised, arising out of a Wrongful Act committed on or after the Retroactive Date.

(i)     as of the inception of the first lawyers professional liability policy issued by the Insurer to the Insured (and continuously renewed and maintained in effect prior to the inception date of this Policy, as referenced in ITEM 2 of the Declarations), no Insured had knowledge of any fact, circumstance, situation or Wrongful Act, that was reasonably likely to give rise to a Claim or Expense Event that would fall within the scope of coverage provided by this Policy; and

(ii)    no Insured gave notice of such Claim or Wrongful Act or a Related Claim, Interrelated Wrongful Act, or Expense Event to any prior insurer.

The **EXCLUSIONS** in Section III. L. and III. M. are deleted.

***

**SECTION III- EXCLUSIONS**

The **Policy** contains an **Individual Insured Retroactive Date Endorsement (Endorsement No. 5)** that states, in relevant part, as follows:

***

The following EXCLUSION shall be added to Section III:

This Policy does not apply to any Claim or Expense Event based upon, arising out of or attributable to, directly or indirectly, in whole or in part, any Wrongful Act actually or allegedly committed by an Individual Insured referenced in the Schedule below, prior to the corresponding Retroactive Date referenced therein.

SCHEDULE
INDIVIDUAL INSURED(S):          RETROACTIVE DATE:

Moises Morales                          11/29/2023
***

**SECTION IV – NOTICE**

C. If during the Policy Period an Insured becomes aware of any Wrongful Act or circumstance that might reasonably be expected to result in a Claim against any

3

Insured, and gives written notice to the Insurer of such potential Claim during the Policy Period including:

1. a description of the specific Wrongful Act or circumstance, including all relevant dates;

2. the names of the claimants and Insureds, to the extent known, involved in the potential Claim;

3. particulars as to the reasons for anticipating a Claim, including the manner in which the Insured first became aware of the specific Wrongful Act or circumstance;

then any Claim subsequently made against any Insured arising out of such Wrongful Act or circumstance shall be deemed under this Policy to be a Claim made during the Policy Period in which such specific circumstance or Wrongful Act was first reported to the Insurer.

## SECTION V – CONSENT TO SETTLE

C. Consent to Settle Except as provided in paragraph D below, the Insurer will not settle any Claim without the consent of the Insured, such consent not to be unreasonably withheld or delayed. As a condition precedent to coverage under this Policy, the Insured shall not admit liability for or settle any Claim, incur any Expenses or Claim Expenses, without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall have the right to investigate and conduct negotiations and, with the written consent of the Named Insured, effect settlement of any Claim as the Insurer deems reasonable. The Insurer shall not be liable for any settlement, Loss or assumed obligations for which it has not given its prior written consent.

## SECTION XX – DEFINITIONS

C. **Claim** means any:

1. written demand against any **Insured** for monetary, non-monetary or injunctive relief, including a demand that the **Insured** toll or waive a statute of limitations, and a written demand or request for arbitration, mediation or other alternative dispute resolution, which shall be deemed first made upon the **Insured's** receipt of such demand; and

2. civil proceeding against an **Insured** including any appeal therefrom, commenced by and which shall be deemed first made upon the service upon, or receipt by, an **Insured** of a complaint or similar pleading; for a **Wrongful Act.**

*** 

M.    **Insured** means:

4

1. the **Named Insured** shown in the Declarations or any Predecessor;

2. any past, present or future partner, officer, director, shareholder, attorney, or member of the **Named Insured** but only with respect to **Professional Services** rendered on behalf of the **Named Insured** or any **Predecessor**;

3. an attorney acting as "Of Counsel" but only while performing **Professional Services** on behalf of the **Named Insured**;

4. all non-lawyer employees, interns, volunteers or independent contractors but only with respect to liability arising from and in the course of their services on behalf of the **Named Insured** or any **Predecessor**; and

5. the estates, heirs, executors, administrators, assigns and legal representatives of a natural person **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only in their capacity as such, and only to the extent that such **Insured** would otherwise be provided coverage under the Policy.

***

Q. **Loss** means those amounts any **Insured** becomes legally obligated to pay as a result of a Claim, including but not limited to damages (ncluding punitive, exemplary and multiple damages), judgments, settlements, **Claim Expenses** and any award of pre-judgment and post-judgment interest with respects to covered damages, judgments or settlements. Solely with respect to coverage under SECTION II, Loss shall include Expenses…[1]

R.      **Named Insured** means: Named Insured means the entity referenced in ITEM 1 of the Declarations.

***

---

[1] Relevant portion of the definition of loss inserted without full definition for expenses.

5

**Y.**    **Related Claims** means all **Claims** for **Wrongful Acts** or Interrelated Wrongful Acts, which in whole or part, allege, arise out of, are based upon, or are in consequence of, the same or related facts, circumstances, situations, transactions or events, or series of related facts, circumstances, situations, transactions or events, regardless of whether the **Claim** or **Claims** alleging such acts involves the same or different claimants, causes of action or are brought in the same or different jurisdictions.

***

DD. **Wrongful Act** means any actual or alleged act, error, omission or breach of duty by an Insured in the rendering or failure to render **Professional Services**. **Wrongful Act** also means any actual or alleged **Personal Injury** by an **Insured** committed in the rendering or failure to render **Professional Services**.

## SECTION XV - ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this Policy shall be effective unless made by the Insurer via a written endorsement to this Policy. The titles and headings to the various sections, subsections and endorsements of this Policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## SECTION XVI - NO ACTION AGAINST THE INSURER

No action shall lie against the Insurer unless, as a condition precedent, there shall have been full compliance with all of the terms and conditions of this Policy. No person or organization shall have the right under this Policy to join the Insurer as a party to any action against any Insured to determine the liability of the Insured, nor shall the Insurer be impleaded by the Insureds or their legal representatives in any such action.

6.    For further answer, should it be necessary, Plaintiff has failed to state a claim upon which relief can be granted.  Specifically, Plaintiff has failed to sufficiently describe a cause of action under the Texas Deceptive Trade Practices Act and/or the Texas Insurance Code, breach of contract or common law bad faith.

7.    For further answer, should it be necessary, a bona fide/legitimate dispute exists precluding Plaintiff's recovery of damages under extra-contractual theories including common law

6

duty of good faith and fair dealing and for violations of the Texas Insurance Code, the Texas Business and Commerce Code or any other statutory or common law authority.

8.      For further answer, should it be necessary, Everest is not liable in whole or in part for any damages Plaintiff may have suffered, which Everest denies, because Everest's actions or inactions were not a proximate or producing cause of any damages, injury or loss allegedly suffered by Plaintiff.

9.      Pleading further, if such be necessary, Everest specifically reserves the right to assert further affirmative defenses as this litigation proceeds.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Everest prays Plaintiff take nothing by reason of this suit, and that Everest recovers its costs and for such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

WALKER WILCOX MATOUSEK LLP

By: */s/ Stephen O. Venable*
    Stephen O. Venable
    State Bar of Texas No. 24056471
    Toby J. Gammill
    State Bar of Texas No. 24054415
    1001 McKinney Street, Suite 2000
    Houston, Texas 77002
    Telephone: (713) 654-8001
    Telecopy: (713) 343-6571
    Email:  svenable@walkerwilcox.com
            tgammill@walkerwilcox.com

ATTORNEYS FOR DEFENDANT EVEREST NATIONAL INSURANCE COMPANY

## CERTIFICATE OF SERVICE

7

I hereby certify that I have caused a true and correct copy of the foregoing instrument to be served upon the following counsel of record herein via the court's electronic filing and notice and/or email on this 10th day of August 2026.

*/s/ Stephen O. Venable*
Stephen O. Venable

# EXHIBIT "6"

**Harris County Docket Sheet**

# 2026-41505

**COURT:**  157th

**FILED DATE:**  6/22/2026

**CASE TYPE:**  Debt/Contract - Other



### WINFIELD, THOMAS

Attorney: NICHOLS, JACK JOSEPH

### vs.

### EVEREST NATIONAL INSURANCE COMPANY

| Docket Sheet Entries | |
|---|---|
| Date | Comment |

**HCDistrictclerk.com**    WINFIELD, THOMAS vs. EVEREST NATIONAL    8/10/2026
INSURANCE COMPANY
Cause: 202641505        CDI: 7        Court: 157

## SUMMARY

CASE DETAILS                                CURRENT PRESIDING JUDGE

| | | | |
|---|---|---|---|
| **File Date** | 6/22/2026 | **Court** | 157th |
| **Case (Cause) Location** | | **Address** | 201 CAROLINE (Floor: 11) |
| **Case (Cause) Status** | Active - Civil | | HOUSTON, TX 77002 |
| **Case (Cause) Type** | SWORN ACCOUNT | | Phone:8329272400 |
| **Next/Last Setting Date** | N/A | **JudgeName** | TANYA GARRISON |
| **Jury Fee Paid Date** | N/A | **Court Type** | Civil |

**HCDistrictclerk.com**  WINFIELD, THOMAS vs. EVEREST NATIONAL INSURANCE COMPANY  8/10/2026

Cause: 202641505  CDI: 7  Court: 157

### DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 127722124 | Service Return-Everest Insurance | | 07/15/2026 | 3 |
| 127444161 | Citation (Executed) | | 06/29/2026 | 3 |
| 127446877 | Plaintiff's First Amended Petition | | 06/29/2026 | 9 |
| 127446975 | Plaintiff's First Amended Petition | | 06/29/2026 | 9 |
| 127306395 | Plaintiff's Original Petition | | 06/22/2026 | 9 |
| ·> 127306397 | Exhibit A - Plaintiffs Original Petition | | 06/22/2026 | 8 |
| ·> 127306398 | Exhibit B - Plaintiffs Notice of Non-suit | | 06/22/2026 | 3 |
| ·> 127306399 | Exhibit C - Motion to Reconsider Dismissal | | 06/22/2026 | 5 |
| ·> 127306400 | Exhibit D - Order Denying Moises Morales Motion to Correct a Clerical Omission Mistake | | 06/22/2026 | 1 |
| ·> 127306402 | Exhibit E - Motion to Correct a Clerical Omission/Mistake Nunc Pro Tunc in a Previous Order | | 06/22/2026 | 4 |
| ·> 127306405 | Exhibit F - Order Denying Moises Morales' Motion to Correct a Clerical Omission | | 06/22/2026 | 1 |
| ·> 127306407 | Exhibit G - Assignment of Claim | | 06/22/2026 | 5 |
| ·> 127306408 | Exhibit H - Policy Declarations | | 06/22/2026 | 32 |
| ·> 127306410 | Exhibit I - Letter to Everest National Insurance Company | | 06/22/2026 | 2 |